IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **PACEM SOLUTIONS INTERNATIONAL, LLC**<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>**U.S. SMALL BUSINESS ADMINISTRATION,**<br><br>　　　-and-<br><br>**ISABELLA CASILLAS GUZMAN, IN HER CAPACITY AS ADMINISTRATOR, U.S. SMALL BUSINESS ADMINISTRATION**<br><br>　　　Defendants. | Civil Action No.: _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

　　　Plaintiff, PACEM SOLUTIONS INTERNATIONAL, LLC, by counsel and for its Complaint against the Defendants, states as follows:

**NATURE OF THE CASE**

　　　1.　　This case arises out of Defendants' failure to disburse funds on a loan subsidy already approved for payment by Defendant U.S. Small Business Administration (the "SBA") under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act" or the "Act").

**JURISDICTION AND VENUE**

　　　2.　　This Court has subject matter jurisdiction pursuant to 28 U. S. C. § 1331 because this case arises under the CARES Act, in relevant part 15 U. S. C. § 9001 *et seq*. This Court also has jurisdiction pursuant to 28 U.S.C. § 1361.

1

3. Additionally, this Court has jurisdiction to review agency action under 5 U.S.C. § 702, which provides, in part: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

4. In addition, pursuant to 15 U.S.C. § 634(b), jurisdiction is conferred upon any United States District Court to determine controversies against the Administrator of SBA.

5. Further, this Court has jurisdiction to grant declaratory or injunctive relief pursuant to 28 U.S.C. § 2202 and Rule 65 of the Federal Rules of Civil Procedure.

6. Venue is proper in this District pursuant to 28 U. S. C. § 1391 because the action involves a Defendant that is an officer or employee of the United States, and "a substantial part of the events or omissions giving rise to the claim occurred" in this District. 28 U. S. C. § 1391(b)(2). Venue is also proper under 28 U. S. C. § 1391 because the plaintiff resides in the District and no real property is the subject of this action. For these reasons, venue is also proper in the Alexandria Division.

## PARTIES

7. PACEM Solution International LLC ("PACEM") is a Virginia limited liability company with a principal place of business at 2941 Fairview Park Drive, Suite 350, Falls Church, Virginia, 22042.

8. PACEM was formed in 2014 as a Virginia LLC. PACEM offers cutting-edge approaches to consultancy, training, and risk management to government and commercial customers across the globe.

9. Defendant SBA is a federal agency created and authorized pursuant to 15 U.S.C. § 633 *et seq*.

10. Defendant Isabella Casillas Guzman is Administrator of the SBA ("Administrator") and is sued solely in her official capacity as Administrator of the SBA.

## FACTS

### I. The Passage of the CARES Act

11. The outbreak of COVID-19 and the government's response to that virus decimated the American economy. To help mitigate the economic damage and keep small businesses afloat during these unprecedented times, the Congress passed, and on March 27, 2020 the President of the United States signed, the Coronavirus Aid, Relief, and Economic Security Act, Public Law 116-136, and since then Congress and the President have modified it to meet the needs of the public and small businesses in response to the evolving coronavirus crisis.

12. From the time of its passage, the CARES Act has stated its purpose and justification in relevant part:

> (b) SENSE OF CONGRESS.—It is the sense of Congress that—
>
> (1) all borrowers are adversely affected by COVID–19;
>
> (2) relief payments by the Administration are appropriate for all borrowers; and
>
> (3) in addition to the relief provided under this Act, the Administration should encourage lenders to provide payment deferments, when appropriate, and to extend the maturity of covered loans, so as to avoid balloon payments or any requirement for increases in debt payments resulting from deferments provided by lenders during the period of the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the Coronavirus Disease 2019 (COVID–19).

Public Law 116–136, Mar. 27, 2020, 15 U.S.C. § 9011(b).

13. At the time of its enactment, section 1112(c)(1) of the CARES Act stated:

(c) PRINCIPAL AND INTEREST PAYMENTS.—

> (1) IN GENERAL.—The Administrator shall pay the principal, interest, and any associated fees that are owed on a covered loan in a regular servicing status—
>
> > (A) with respect to a covered loan made before the date of enactment of this Act and not on deferment, for the 6-month period beginning with the next payment due on the covered loan;
> >
> > (B) with respect to a covered loan made before the date of enactment of this Act and on deferment, for the 6-month period beginning with the next payment due on the covered loan after the deferment period; and
> >
> > (C) with respect to a covered loan made during the period beginning on the date of enactment of this Act and ending on the date that is 6 months after such date of enactment, for the 6-month period beginning with the first payment due on the covered loan.

Public Law 116–136, Mar. 27, 2020, 134 Stat. 309.

14. As detailed herein, PACEM had a "covered loan" at the time of enactment of the CARES Act and was eligible for six loan subsidy payments. Through its lender, PACEM applied for, and its lender received from SBA, two of the six monthly subsidy payments for which PACEM was eligible under the CARES Act. This suit seeks relief requiring SBA to make the four remaining payments, which should have been made monthly in the period from approximately June 2020 to September 2020.

15. On December 27, 2020, the CARES Act was amended to continue the debt relief program requiring the Administrator to pay the principal, interest, and any associated fees on covered loans, and certain details and provisions of the statute were modified. This suit seeks the relief that was available to PACEM by statute—but unlawfully withheld—in the time period June 2020 to September 2020, under the initial, March 27, 2020, version of the statute. Any substantive differences between the versions of the statute are not at issue in the case, as PACEM would remain eligible for the four remaining subsidy payments under the relevant sections of the

current version of the Act, 15 U.S.C. § 9011(c).

**II.      PACEM Has a Covered Loan and is Eligible for and Receives CARES Act Payments**

16.     As part of financing its operations and ongoing activities, on August 10, 2018, PACEM signed a promissory note in the form of a "FINANCING AND SECURITY AGREEMENT" through Access National Bank. This loan was subsequently designated SBA Loan No. 2843337007.

17.     In or about May of 2019, Access National Bank merged with Union Bank & Trust, forming Atlantic Union Bank, which continued to service PACEM's SBA Loan No. 2843337007.

18.     On March 27, 2020, the CARES Act became law. At the time of passage of the CARES Act, PACEM's loan with Atlantic Union Bank, as amended, was a "covered loan" under the definition of the CARES Act, and PACEM was eligible for six monthly subsidy payments as specified in the CARES Act.

19.     Sometime between April 10, 2020, and April 23, 2020, PACEM, through its lender, applied to the SBA for the subsidy payment benefit granted it by the CARES Act.

20.     Upon receipt, the SBA processed PACEM's application, and by its actions manifestly agreed that the PACEM loan was a covered loan under the statute and SBA's procedures. It is known that SBA agreed that PACEM had a covered loan and qualified for the subsidy payments, because SBA commenced making the required CARES Act subsidy payments to PACEM's lender to the credit of PACEM. Specifically, on or about June 1, 2020, SBA made the CARES Act subsidy payments to PACEM's lender for both the April 2020 and May 2020 time periods, constituting two of the six payments that PACEM is entitled to under the Act.

21.     After making the payments covering these two time periods, CARES Act subsidy

payments from the SBA to PACEM stopped without warning or explanation from the SBA.

22. PACEM made multiple inquiries through its Lender, including multiple e-mails to SBA in August and September 2020, to ascertain why the four remaining statutory payments were not made, and to have them resumed. PACEM submitted a comment to the SBA ombudsman regarding the issue, which was answered on May 19, 2021, by reference to an SBA memorandum dated May 7, 2021, which stated that "The loan has been in default since late April 2020, which was reported to the Agency by the Lender in May 2020," and "The current status of the loan is 'Disbursed in Liquidation'." This explanation nearly one year after the fact was the first that PACEM learned of the apparent error in SBA's records, as the loan was not in default as asserted by SBA.

23. In part in reliance on PACEM's eligibility for the CARES Act subsidy payments, on or about May 28, 2021, PACEM's loan with Atlantic Union Bank was refinanced with a loan from Waygar Capital, Inc.

24. PACEM has made repeated efforts and attempts to correct SBA's ministerial error regarding the status of its eligible loan and to get SBA to make the statutorily required four additional CARES Act subsidy payments, including sending multiple e-mails, making phone calls, contacting the ombudsman as referenced above, FOIA requests, and submission of a lengthy "Form 95" claim form to SBA on June 28, 2022. In response to an e-mail from PACEM's outside counsel dated August 19, 2022, following up on communications from PACEM's Chief Legal Officer to SBA, counsel for SBA stated merely that "SBA is still reviewing the submission from PACEM Solution . . .."

25. PACEM continued to communicate with SBA representatives through December of 2022 seeking a response to the "Form 95" claim.

26. In a December 23, 2022, phone conversation with Plaintiff's counsel, Arelene M. Embrey, Trial Attorney, US Small Business Administration advised that PACEMs' Form 95 submission had been denied. The basis for the denial was a determination that PACEM was ineligible to receive Section 1112 payments under the CAREs Act because of, among other things, PACEM's loan and payment history.

27. Thereafter, PACEM, through counsel, made multiple attempts to secure documents establishing the basis for the SBA's determination that PACEM was not eligible for the Section 1112 payments. To date, nothing substantive has been provided.

28. Despite PACEMS's documented eligibility for the loan payment subsidy and repeated efforts to correct the SBA's ministerial record and prompt SBA to resume making payments, to date SBA has not made the remaining four subsidy payments to PACEM. There appears to exist no SBA documentation that identifies or details the reasoning behind the denial.

29. If a Form 95 claim is denied, 13 CFR 114.109 requires notification of such denial be provided to the claimant in writing by certified or registered mail.

30. Under the Federal Tort Claims Act, a complainant has the right to file a suit not later than six months after notification of denial is mailed.

31. PACEM did not receive at any time either prior or subsequent to the December 23, 2022, phone conference with Ms. Embry, notification from the SBA of the denial of their Form 95 claim via certified or registered mail as is required under 13 CFR 114.109.

## COUNT I
### Deprivation of Plaintiff's Rights Under the CARES Act
### DEFENDANTS SBA and ADMINSTRATOR

32. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 to 31.

33. A court reviewing an agency action "shall hold unlawful and set aside" any action "in excess of statutory jurisdiction, authority, or limitations, or *short of statutory right*." 5 U.S.C. § 706(2)(C) (emphasis added).

34. The text of the CARES Act is clear and unambiguous as to which businesses are eligible for loan subsidy payments under 15 U.S.C. § 9011. PACEM's loan was a "covered loan" under the Act, and PACEM was eligible for a total of six-monthly subsidy payments.

35. Congress made CARES Act subsidy loan payments available to *all* businesses who meet the considerations set out in the statute. SBA only made two of the six required payments under the Act. Accordingly, SBA, through its actions and failure to act, has deprived Plaintiff PACEM the receipt of its full statutory rights under the CARES Act.

36. As a direct and proximate result of the SBA's continuing failure to provide PACEM with the full benefit all of its rights under the CARES Act, the Defendants will cause Plaintiff irreparable harm including, but not limited to, financial loss and business ruination.

37. The Plaintiff has been damaged and will continue to be damaged by Defendants' conduct. No adequate remedy at law is available that could fully compensate Plaintiff for its damages.

38. The Plaintiff is entitled to declaratory and injunctive relief requiring Defendants to provide Plaintiff with the full measure of its rights as specified in the CARES Act, and specifically requiring SBA to make the four remaining CARES Act subsidy payments.

### COUNT II
### Unlawfully Withheld Agency Action
### Under the Administrative Procedures Act
### Defendants Failed to Carry Out a Ministerial Duty
### DEFENDANTS SBA AND ADMINISTRATOR

39. Plaintiff realleges and incorporates by reference the allegations contained in

paragraphs 1 to 38.

40. The Administrative Procedure Act requires that a reviewing court "compel agency action unlawfully withheld or unreasonably delayed[.]"  5 U.S.C. § 706(1).

41. The CARES Act directs SBA to make loan subsidy payments to all small businesses who qualify for the benefit under the statute.

42. Congress did not grant SBA any discretion to discriminate against or refuse to provide statutory benefits to individual businesses, such as PACEM, that qualify under the Act.

43. The SBA's failure to make the four remaining unpaid CARES Act subsidy payments to the credit of Plaintiff PACEM is unlawfully withheld agency action.

44. Plaintiff is entitled to relief under 5 U.S.C. § 706(1) by way of ordering the Defendants to perform the nondiscretionary act of administering CARES Act loan subsidy payments according to the text of the CARES Act and disbursing the four remaining subsidy payments on behalf of Plaintiff PACEM.

### COUNT III
### Mandamus
### The Individual Defendant
### Failed to Carry Out a Ministerial Duty
### DEFENDANT ADMINISTRATOR

45.  Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 to 44.

46. The "ancient remedy" of mandamus will apply in extraordinary circumstances "to compel the fulfillment of a duty which is ministerial, plainly and positively ascertained, and free of doubt."  *Grice v. Colvin*, 97 F. Supp. 3d 684, 705 (D. Md. 2015) (citations omitted).

47. A writ of mandamus is proper when three elements are present: "(1) a clear right in the plaintiff to the relief sought; (2) a clear duty on the part of the defendant to do the act in

question; and (3) no other adequate remedy available." *Grice*, 97 F. Supp. 3d at 705 (citation omitted).

48. Plaintiff has satisfied all three elements. Plaintiff has a clear statutory right. The Act creates a clear duty on the part of the Defendants to administer the CARES Act according to law and to disburse subsidy payments to eligible parties who seek it. There is no other adequate remedy available to Plaintiff to secure its rights under the CARES Act by which the Plaintiff can compel the Defendants to carry out their statutorily imposed ministerial duty.

49. Plaintiff has a clear right under the CARES Act to the relief sought, and the equitable writ of mandamus is proper and appropriate in this circumstance. Congress directed the SBA to administer statutory loan subsidies based on the nondiscretionary criteria set forth in the CARES Act. The Plaintiff meets that criteria and is entitled to have its loan subsidy payments processed in like manner as all other applicants who meet the criteria that Congress established.

50. Plaintiff PACEM is entitled to mandamus relief ordering the Defendant Administrator to administer and process the Plaintiff's four unpaid loan subsidy payments as required by the terms of the CARES Act.

**COUNT IV**
**Due Process Under the 5th Amendment**
**and the Administrative Procedures Act**
**Defendants Failed to Provide Fair Notice and an Opportunity to be Heard**
**DEFENDANTS SBA AND ADMINISTRATOR**

51. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 to 50.

52. The Administrative Procedure Act provides that, "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms

of an agency action. The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, . . ..." 5 U.S.C. §706(2)(B).

53. The Administrative Procedure Act, also "establishes a scheme of 'reasoned decision making.' *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.,* 463 U.S. 29, 52, 103 S.Ct. 2856, 2871, 77 L.Ed.2d 443 (1983). Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational. Courts enforce this principle with regularity when they set aside agency regulations which, though well within the agencies' scope of authority, are not supported by the reasons that the agencies adduce." *Allentown Mack Sales & Serv., Inc. v. N.L.R.B.*, 522 U.S. 359, 374, 118 S. Ct. 818, 826–27, 139 L. Ed. 2d 797 (1998).

54. The Fifth Amendment to the United States Constitution provides, *inter alia*, that, "No person shall be . . . deprived of life, liberty, or property, without due process of law."

55. The U.S. Supreme Court has recently explained that "Perhaps the most basic of due process's customary protections is the demand of fair notice." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1225 (2018) (Gorsuch, J., concurring) (citing, *inter alia*, Note, Textualism as Fair Notice, 123 Harv. L. Rev. 542, 543 (2009) ("From the inception of Western culture, fair notice has been recognized as an essential element of the rule of law."); *see Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) ("For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner'." (internal citations omitted)).

56. Defendants provided PACEM neither "fair notice" nor "an opportunity to be heard . . . at a meaningful time and in a meaningful manner" in connection with Defendants' decision to withhold disbursement of the four remaining subsidy payments on behalf of Plaintiff PACEM.

57. Plaintiff is entitled to relief under 5 U.S.C. § 706(2) by way of an order holding unconstitutional Defendants' failure to provide PACEM with "fair notice" and "an opportunity to be heard . . . at a meaningful time and in a meaningful manner" in connection with Defendants' decision to withhold disbursement of the four remaining subsidy payments on behalf of Plaintiff PACEM.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against each of the Defendants and prays that this Court award the following relief against Defendants:

A. Declaratory judgment that Plaintiff PACEM is entitled to four additional loan subsidy payments in the proper amounts under the CARES Act;

B. Declaratory judgment that the actions of Defendants in failing to make the four additional loan subsidy payments to PACEM under the CARES Act are contrary to law;

C. Declaratory judgment that the actions of Defendants in failing to make the four additional loan subsidy payments to PACEM under the CARES Act are arbitrary and capricious;

D. Declaratory judgment that the actions of Defendants in failing to provide PACEM with "fair notice" and "an opportunity to be heard . . . at a meaningful time and in a meaningful manner" in connection with Defendants' decision to withhold disbursement of the four remaining subsidy payments on behalf of Plaintiff PACEM was unconstitutional.

E.      Preliminary and permanent injunction ordering Defendants, to the extent not already done based on the approval of the first two loan subsidy payments to PACEM or otherwise, to set aside, maintain, and preserve all funds necessary to make the four additional loan subsidy payments, including principal and interest as specified under the Act, to which PACEM is entitled under the CARES Act.

F.      Writ of mandamus ordering the individual Defendant Administrator to fulfill Defendant's duties to administer the CARES Act subsidy loan payments according to law and to make the four additional loan subsidy payments, including principal and interest as specified under the Act, for which Plaintiff PACEM is eligible;

G.      Award Plaintiff attorneys' fees, costs, and expenses and other relief as available under the Equal Access to Justice Act;

H.      Award Plaintiff the costs of this action and additional reasonable attorneys' fees and expenses as this Court deems just and proper; and

I.      Grant Plaintiff such other and further relief as this Court deems just and proper.

Dated:  December 12, 2023

Respectfully submitted,
PACEM Solution International LLC
By Counsel

 /s/ Milton C. Johns_____
Milton C. Johns, VSB No. 42305
**Executive Law Partners PLLC**
11130 Fairfax Blvd., Suite 303
Fairfax, VA  22030
T: (571) 500-1010
F: (571) 408-8102
mjohns@xlppllc.com