

| | |
|---|---|
| **From:** | Jessica A. Childs |
| **To:** | LR Loan Servicing Center |
| **Cc:** | David Talebian |
| **Subject:** | 1290801_URGENT : 7a Loan payments missing_2843337007 |
| **Date:** | Thursday, August 27, 2020 11:46:03 AM |
| **Attachments:** | image001.jpg |
| **Importance:** | High |

CAUTION - The sender of this message is external to the SBA network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@sba.gov.

Good Morning,

I have been trying to get in touch with someone who could assist in advising why we have not received any more payments on the below loan in question. We received the April and May payments and that is it. Can you please advise why we are not receiving payments anymore? This loan is now 86 days past due in our system. We need to get this cleared up as soon as possible. Thanks!

Pacem Solutions SBA #2843337007
Funds past due now are $2,388,065,.61
Regular monthly payment is $796,021.87

**Jessica Childs**
Loan Services Rep II

**T** 804.632.1817 Ext. 1817
24010 Partnership Blvd., Ruther Glen, VA 22546


cid:image004.jpg@01D5A9F2.C9B06CA0

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain information that is confidential or proprietary. If you are not the intended recipient or receive this message in error, the sender does not intend delivery to you and does not waive any protections or other rights pertaining to this message and any attachments. Please contact the sender immediately by reply e-mail and delete the original message, including any attachments.

| | |
|---|---|
| **From:** | Campbell, Carvis J. |
| **To:** | "Jessica A. Childs" |
| **Subject:** | RE: 1290801_URGENT : 7a Loan payments missing_2843337007 |
| **Date:** | Tuesday, September 1, 2020 11:48:00 AM |
| **Attachments:** | image002.png |
| | image003.jpg |

It appears the loan has been misreported and showing delinquent, which may have resulted in not receiving payments. You can try to correct the reporting discrepancies with Colson but there is no guarantee payments will be retroactive. As you may know, the program payments will stop in September 2020 if the first payment was provided by SBA in April.

Carvis J. Campbell
Loan Specialist
Little Rock Commercial Loan Servicing Center
**U.S. Small Business Administration**
(501) 324-5871, ext. 226
(202) 481-6275 (fax)
carvis.campbell@sba.gov



Home Page | Twitter | Instagram | Facebook | YouTube | LinkedIn | Email Alerts

**How are we doing? Please click here to give us your feedback!**

DISCLAIMER:
The information being provided above is derived solely from Agency records that are submitted by the Agency's participant lenders engaged in making SBA loans.  This information is collected by the lenders from SBA loan applicants who provide it on a voluntary basis.  It is then forwarded by the lenders to SBA.  Since the information is provided by the loan applicants on a voluntary basis, it is not necessarily inclusive of all SBA borrowers, nor can its accuracy be verified by the Agency. Accordingly, SBA cannot make any representation as to the completeness or accuracy of the information provided.

**From:** Jessica A. Childs <Jessica.Childs@atlanticunionbank.com>
**Sent:** Thursday, August 27, 2020 10:46 AM
**To:** LR Loan Servicing Center <lrsc.servicing@sba.gov>
**Cc:** David Talebian@AtlanticUnionBank.com>
**Subject:** 1290801_URGENT : 7a Loan payments missing_2843337007
**Importance:** High

CAUTION - The sender of this message is external to the SBA network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@sba.gov.

Good Morning,

I have been trying to get in touch with someone who could assist in advising why we have not received any more payments on the below loan in question. We received the April and May payments and that is it. Can you please advise why we are not receiving payments anymore? This loan is now 86 days past due in our system. We need to get this cleared up as soon as possible. Thanks!

Pacem Solutions SBA #2843337007
Funds past due now are $2,388,065,.61
Regular monthly payment is $796,021.87

**Jessica Childs**
Loan Services Rep II

**T** 804.632.1817 Ext. 1817
24010 Partnership Blvd., Ruther Glen, VA 22546



This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain information that is confidential or proprietary. If you are not the intended recipient or receive this message in error, the sender does not intend delivery to you and does not waive any protections or other rights pertaining to this message and any attachments. Please contact the sender immediately by reply e-mail and delete the original message, including any attachments.

| From: | Lynn Harrison |
|---|---|
| To: | Theobald, Kari A. |
| Cc: | James R. Baldwin; Kwame Asiedu |
| Subject: | 1112 Payment: Loan 2843337007 - Follow up to Dec 3rd Info Request PACEM |
| Date: | Wednesday, January 27, 2021 11:39:02 AM |
| Attachments: | image001.png |
| | image002.png |

CAUTION - The sender of this message is external to the SBA network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@sba.gov.

Dear Ms. Theobald,

I am writing in response to questions you raised in your December email (copied below) to Ms. Childs of Atlantic Union Bank, successor by merger to Access National Bank (Bank) regarding the possibility of additional 1112 section payments from the loan to PACEM Solution International LLC (PSI). As previously indicated to you, the Bank's response has been delayed due to turnover in Bank employees associated with this relationship (including, the account officer and portfolio manager) and the need to gather information.

This turnover presents somewhat of a gap in "corporate knowledge" on this account. Thus, the Bank's primary explanation and support for the 6th Amendment and its terms, are contained in the 6th credit memo. Subsequent to the account officer's departure in early December, the Bank collected documents and notes in the file and also requested documents from the borrower supporting the ability to repay the indebtedness per the terms of the 6th Amendment including, the borrower's belief that the restart on the $65MM Iraq contract was imminent at the time the borrower entered into the 6th Amendment. The various approvals and notes, including amendments, were previously provided by Ms. Childs. Additional documents, which may be sent in multiple emails, include:

- Documents relating to contracts with – Australia, U.S. Department of Homeland Security, Iraq MOI Certificate and Iraq Annex 5 to contract, Kingdom of Saudi Arabia Embassy for security services (2 documents), Oracle, and Ukraine (2 documents).
- Forecasts –
  - actual through Jan. 2020 and forecasts through year end Dec. 2020.
  - Actual through June 2020 with updated forecast through year end Dec. 2020

The contracts noted above were discussed in the 6th credit memo. The borrower-prepared forecasts reflect various "PACEM" entities which have common ownership through Cory Mills (the borrower's principal).

Based upon a conversation in early January with the borrower, Mr. Mills seemed to indicate that contracts had been further delayed, for "another 4 to 5 weeks". Additionally, the borrower has indicated that the source of funds for the last 2 payments (approximately $1.5MM principal plus

interest) due under the 6   Amendment, assuming the SBA makes the first 4 payments, would come from Waygar Capital, a Canadian company which has provided financing to PACEM entities.

The 6th Amendment matured December 1, 2020.  Although the Bank has been communicating with the borrower since maturity, the uncertainty of whether the SBA will approve the borrower's request for payments or any type of subsidy payments under the CARES Act makes next steps by the Bank a little challenging (e.g. place in liquidation and exercise remedies or seek to modify, and in either case, for what amount).

Any guidance that you can provide the Bank would be appreciated.  We can make ourselves available for a zoom call to discuss if that would be of assistance.  Of course, if the SBA needs any further information to make a determination, please let us know.

I will send you a secure email with the forecasts and Transcript.  Please let me know if you do not receive these as some software filters out secure emails or places them in the "junk" folder.  Also, some of the contract documents are in excess of our outgoing email size limitations.  Can you use share file (see icon below)?  Alternatively, can you provide a link I could use to send them to you?  I will attempt to send the ones that aren't limited to size.



Thank you for your consideration.

Lynn
**Lynn S. Harrison,** Senior Vice President
**T**: 540.548.7292  **Ext. 3003** | **C**: 804-517-2095

---

**From:** Theobald, Kari A. <Kari.Theobald@sba.gov>
**Sent:** Thursday, December 3, 2020 9:19 AM
**To:** Jessica A. Childs <Jessica.Childs@atlanticunionbank.com>
**Subject:** 1112 Payment: Loan 2843337007

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.
Good Afternoon Ms. Childs,

Thank you for the narrative to the loan activity.

Unfortunately, the narrative is overlapping and without cause/date for Amendment 6.

Please provide a narrative for the Amendment 6 as the description is broad for the life of the loan and not specific to the amendment.

Were there specific documents supporting the Borrower's need for the Amendment?

Did the Borrower supply proof of contracts or signed agreements, confirming these recent laws support the changes to their financial situation?

What did the Lender obtain to document the borrower could pay with these new changes to Amendment 6 (please demonstrate)?

Also, please send the signed Transcript of Account.

Under the CARES Act Subsidy loan payment, there are 6 months of payment. The Lender is to notify the borrower they can obtain this 6 months of payments.

Without an SBA financial evaluation of the loan; in a cursory review, the lender's modification of terms during a pandemic, creates 6 subsidy payments of $775,000 equaling $4,650,000.

The lender's convenient timing in modification to the terms fittingly could pay the loan in full.

If a borrower claims these funds, what amount is the lender anticipating to collect as the last 2 payments from the borrower?

Kari Theobald
Supervisory Loan Officer
Little Rock Commercial Loan Servicing Center
**U.S. Small Business Administration**
(501) 324-5871
kari.theobald@sba.gov

*Title: SBA logo - Description: SBA-Hor-2*



Home Page | Twitter | Instagram | Facebook | YouTube | LinkedIn | Email Alerts

DISCLAIMER:

The information being provided above is derived solely from Agency records that are submitted by the Agency's participant lenders engaged in making SBA loans. This information is collected by the lenders from SBA loan applicants who provide it on a voluntary basis. It is then forwarded by the lenders to SBA. Since the information is provided by the loan applicants on a voluntary basis, it is not necessarily inclusive of all SBA borrowers, nor can its accuracy be verified by the Agency. Accordingly, SBA cannot make any representation as to the completeness or accuracy of the information provided.

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain information that is confidential or proprietary. If you are not the intended recipient or receive this message in error, the sender does not intend delivery to you and does not waive any protections or other rights pertaining to this message and any attachments. Please contact the sender immediately by reply e-mail and delete the original message, including any attachments.

| | |
|---|---|
| **From:** | Scott W. Foley |
| **To:** | Theobald, Kari A. |
| **Cc:** | "Lynn Harrison" |
| **Subject:** | RE: 1112 Payment: Loan 2843337007 |
| **Date:** | Friday, February 12, 2021 3:37:55 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | Credit Memo-5-22-20 saved to FCM.PDF |

CAUTION - The sender of this message is external to the SBA network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@sba.gov.

Dear Ms. Theobald,

Pursuant to Lynn's prior email, attached please find the credit memo for the 6th Amendment that contains the narrative, contract updates and forecast on pages 6 -10.  Kindly note that the first  5 pages of the credit memo contains information imported by the Bank's software from data fields from other systems.  For this reason, there is some information that is not complete and/or not accurate.  For example, (a) the total loans/loan exposure is overstated on the renewals or modifications as the existing loans are listed plus the new requests (modifications) are listed and (b) the value for other collateral is not listed (i.e. in subject case value for only on piece of security is listed in each case).  Regardless, the users at the Bank know how to spot these items and read/interpret the information.  Lynn can call you to walk you through and questions you may have when trying to read/interpret this information.

By separate email, we will send you recent communications with the Borrower relating to the Notice sent to the Borrower on January 27th (as the Bank was taking steps to place into liquidation status in E-Tran).

If you have any questions or require any further information from the Bank, please let us know.  We look forward to hearing from you.

**Scott W. Foley**
**Chair, Banking & Financial Services Group**

---

| | |
|---|---|
| 250 West Pratt Street | **Direct:**  410.385.4234 |
| Suite 2000 | **Mobile:** 443.676.0661 |
| Baltimore, MD 21201 | |



---

**From:** Theobald, Kari A. [mailto:Kari.Theobald@sba.gov]
**Sent:** Friday, January 29, 2021 7:40 PM
**To:** Scott W. Foley <swf@shapirosher.com>
**Cc:** 'Lynn Harrison' <Lynn.Harrison@AtlanticUnionBank.com>; Amy J. Sukeena

&lt;ajs@shapirosher.com&gt;
**Subject:** 1112 Payment: Loan 2843337007

Hello Mr. Foley,

Thank you for the information.
I received 13 documents, 10 PDF's and 3 Excel documents.
Appreciate your quick response in uploading.
Have a great weekend!

Kari Theobald
Supervisory Loan Officer
Little Rock Commercial Loan Servicing Center
**U.S. Small Business Administration**
(501) 324-5871
kari.theobald@sba.gov

*Title: SBA logo - Description: SBA-Hor-2*



[Home Page](#) | [Twitter](#) | [Instagram](#) | [Facebook](#) | [YouTube](#) | [LinkedIn](#) | [Email Alerts](#)

DISCLAIMER:
The information being provided above is derived solely from Agency records that are submitted by the Agency's participant lenders engaged in making SBA loans.  This information is collected by the lenders from SBA loan applicants who provide it on a voluntary basis.  It is then forwarded by the lenders to SBA.  Since the information is provided by the loan applicants on a voluntary basis, it is not necessarily inclusive of all SBA borrowers, nor can its accuracy be verified by the Agency.
Accordingly, SBA cannot make any representation as to the completeness or accuracy of the information provided.

**Atlantic Union Bank**

PACEM Solution International LLC - PP

May 22, 2020, 5:08 PM EDT
Generated by Nicole Rainey

# Product Package Details

| | | | |
|---|---|---|---|
| Product Package Name | PACEM Solution International LLC - PP | Primary Officer | David Talebian |
| Risk Rating | 5 | Team Leader/Manager | Adam Ostrach |
| Total Loan Facilities Amount | $9,365,449.13 | Total Credit Exposure | $8,750,777.00 |
| Number of Loan Facilities | 6 | ACH Exposure | |
| New Money | $0.00 | Total Deposits | |

# Approval History

| Status | Actual Approver | Requested Approver | Approval Date |
|---|---|---|---|
| **Approved on 5/22/2020 4:59 PM** | | | |
| Status | **Actual Approver** | **Requested Approver** | **Approval Date** |
| **Approved** | Heather Romagnoli | Heather Romagnoli | 5/22/2020 4:59 PM |
| Approver Comments | Approving 6 month term out of loan #1080085275 as anticipated, and in compliance with SBA Loan Authorization. | | |
| **Approved** | Adam Ostrach | Adam Ostrach | 5/22/2020 4:49 PM |
| Approver Comments | No Comments Provided | | |
| **Approved** | David Talebian | David Talebian | 5/21/2020 12:31 PM |
| Approver Comments | No Comments Provided | | |
| **Started** | Richard Heveron | Richard Heveron | 5/21/2020 12:18 PM |
| Approver Comments | Submitting Request For Approval... | | |
| **Approved on 3/13/2020 1:58 PM** | | | |
| Status | **Actual Approver** | **Requested Approver** | **Approval Date** |
| **Approved** | Heather Romagnoli | Heather Romagnoli | 3/13/2020 1:58 PM |
| Approver Comments | Approving the RR change to a 5 for loans #1080085275 and #1080094616, the waiver of the DSCR for 2018 and 2019, and the extension of the interest only period for 120 days until 6/15/2020. | | |
| **Approved** | Mark Moore | Mark Moore | 3/13/2020 11:40 AM |
| Approver Comments | No Comments Provided | | |
| **Approved** | David Talebian | David Talebian | 3/13/2020 11:37 AM |
| Approver Comments | No Comments Provided | | |
| **Started** | Michael Yee | Michael Yee | 3/13/2020 11:35 AM |
| Approver Comments | Submitting Request For Approval... | | |
| **Approved on 3/13/2020 11:28 AM** | | | |
| Status | **Actual Approver** | **Requested Approver** | **Approval Date** |
| **Approved** | Mark Moore | Mark Moore | 3/13/2020 11:28 AM |
| Approver Comments | No Comments Provided | | |
| **Approved** | David Talebian | David Talebian | 3/13/2020 11:13 AM |
| Approver Comments | No Comments Provided | | |
| **Started** | Michael Yee | Michael Yee | 3/13/2020 7:45 AM |
| Approver Comments | Submitting Request For Approval... | | |
| **Approved on 2/19/2020 4:30 PM** | | | |
| Status | **Actual Approver** | **Requested Approver** | **Approval Date** |
| **Approved** | Heather Romagnoli | Heather Romagnoli | 2/19/2020 4:30 PM |
| Approver Comments | Approving $350,000 cash secured Letter of Credit. | | |
| **Approved** | Mark Moore | Mark Moore | 2/19/2020 4:27 PM |
| Approver Comments | No Comments Provided | | |
| **Approved** | David Talebian | David Talebian | 2/19/2020 2:12 PM |

Commercial Banking Credit Memo 5.0

**Atlantic Union Bank**

PACEM Solution
International LLC
- PP

| Approver Comments | No Comments Provided | | |
|---|---|---|---|
| Started | Michael Yee | Michael Yee | 2/19/2020 2:09 PM |
| Approver Comments | Submitting Request For Approval... | | |

# Loan Information

## 1080085275-PACEM SOLUTION INTERNATIONAL LLC-

| | | | |
|---|---|---|---|
| Loan Name | 1080085275-PACEM SOLUTION INTERNATIONAL LLC- | Loan Officer | David Talebian |
| Loan Number | 1080085275_M1 | Risk Rating | 5.00 |
| Loan Amount | $4,650,000.00 | Loan Purpose | permanent working capital |
| NAICS Code | 541618 | Loan Term (Months) | 6 |
| Amortized Term (Months) | 6 | Maturity Date | 11/15/2020 |
| Payment Type | Installment | Payment Schedule | @ Maturity |
| Interest Only Months | 0 | Interest Rate | 5.25000000% |
| Pricing Basis | Variable | Index | WALL STREET PRIME |
| Spread (%) | 2.00000000% | Rate Floor | 0.00000000% |
| Rate Ceiling | 99.99999000% | Interest Rate Adjustment Frequency | Daily |
| Transaction ROE | | Relationship ROE | |
| Total Collateral Pledged | $5,000,000.00 | Reg O Loan | ☐ |
| Current LTV | 110.71% | COVID Modification Codes | No COVID related Action |
| COVID Days Past Due | No COVID related status | | |

| Collateral Type | UBT Collateral Code | Address | Collateral Value | Advance Rate | Advance Rate Override | Current Lendable Value | Amount Pledged | Total Prior Lien Amount | Description |
|---|---|---|---|---|---|---|---|---|---|
| Real Estate-1-4 Family-Single Fam Home detached - Acreage | R9231 | 1198 WINDROCK DR MCLEAN, VA 22102-0000 | $4,200,000.00 | 80.00% | | $3,360,000.00 | $5,000,000.00 | $0.00 | 1198 WINDROCK COURT MCLEAN VA 22102 |
| UCC-Accounts-Business /Commercial Assets | U8011 | 00000-0000 | $0.00 | 0.00% | | $0.00 | $0.00 | $0.00 | UCC- VA- B/A- PACEM SOLUTIONS INTERNATIONAL L |
| Possessory-Life Insurance-Life Insurance | M8571 | 00000-0000 | $0.00 | 95.00% | | $0.00 | $0.00 | $0.00 | ASSIGN OF LIFE INS- CORY MILLS IN THE AMOUNT |
| Possessory-Life Insurance-Life Insurance | M8571 | 00000-0000 | $0.00 | 95.00% | | $0.00 | $0.00 | $0.00 | ASSIGN OF LIFE INS- RANA ALSAADI IN THE AMOUN |
| Real Estate-Warehouse-Owner-Occupied Warehouse/Industrial | R9652 | 4700 Providence Rd Perry, FL 32347 | | 85.00% | | | $0.00 | $0.00 | 2nd DOT 4700 Providence Rd |

## Policy Exceptions

| Policy Exception Name | Type | Exception status | Relationship | Severity | Policy Exception Mitigants |
|---|---|---|---|---|---|
| Underwriting DSC < 1.0 | Commercial Credit Policy | Mitigated | | Critical | DSCR under 1.0 |

## Borrowing Structure

| Borrower Type | Relationship Name | Contingent Type | Contingent Percentage | Contingent Amount |
|---|---|---|---|---|



PACEM Solution International LLC - PP

| Borrower | PACEM SOLUTION INTERNATIONAL LLC | Joint & Several | 100.00% |
| Guarantor | CORY LEE MILLS | Joint & Several | 100.00% |
| Guarantor | RANA ALSAADI | Joint & Several | 100.00% |

## 1080094616-PACEM ESTATE HOLDINGS LLC-

| | | | |
|---|---|---|---|
| Loan Name | 1080094616-PACEM ESTATE HOLDINGS LLC- | Loan Officer | David Talebian |
| Loan Number | 1080094616_M1 | Risk Rating | 5.00 |
| Loan Amount | $4,000,000.00 | Loan Purpose | purchase OORE |
| NAICS Code | 531390 | Loan Term (Months) | 44 |
| Amortized Term (Months) | 180 | Maturity Date | 10/1/2023 |
| Payment Type | | Payment Schedule | Monthly |
| Interest Only Months | 0 | Interest Rate | 4.50000000% |
| Pricing Basis | Variable | Index | WALL STREET PRIME |
| Spread (%) | 0.25000000% | Rate Floor | 0.00000000% |
| Rate Ceiling | 99.99999000% | Interest Rate Adjustment Frequency | Daily |
| Transaction ROE | | Relationship ROE | |
| Total Collateral Pledged | $15,377,777.84 | Reg O Loan | ☐ |
| Current LTV | 52.63% | COVID Modification Codes | |
| COVID Days Past Due | | | |

| Collateral Type | UBT Collateral Code | Address | Collateral Value | Advance Rate | Advance Rate Override | Current Lendable Value | Amount Pledged | Total Prior Lien Amount | Description |
|---|---|---|---|---|---|---|---|---|---|
| UCC-General Intangibles-Miscellaneous Undefined | Miscellaneous Undefined1 | 00000-0000 | $0.00 | 0.00% | | $0.00 | $3,844,444.46 | $0.00 | ASSIGNMENT OF LIFE INSURANCE - LIFE INSURANCE |
| UCC-General Intangibles-Miscellaneous Undefined | Miscellaneous Undefined1 | 00000-0000 | $0.00 | 0.00% | | $0.00 | $3,844,444.46 | $0.00 | ASSIGNMENT OF LIFE INSURANCE - LIFE INSURANCE |
| Real Estate-Office-Owner-Occupied Office/Warehouse | R9641 | 4700 PROVIDENCE ROAD PERRY, FL 32347-0000 | $7,600,000.00 | 85.00% | | $6,460,000.00 | $3,844,444.46 | $0.00 | DOT & ASSIGNMENT OF RENTS - 4700 PROVIDENCE R |
| UCC-Accounts-Business /Commercial Assets | U8011 | 00000-0000 | $0.00 | 0.00% | | $0.00 | $3,844,444.46 | $0.00 | UCC -FL- PACEM SOLUTION INTERNATIONAL LLC. |

## Borrowing Structure

| Borrower Type | Relationship Name | Contingent Type | Contingent Percentage | Contingent Amount |
|---|---|---|---|---|
| Borrower | PACEM ESTATE HOLDINGS LLC | Joint & Several | 100.00% | |
| Guarantor | PACEM SOLUTION INTERNATIONAL LLC | Joint & Several | 100.00% | |
| Guarantor | CORY LEE MILLS | Joint & Several | 100.00% | |
| Guarantor | RANA ALSAADI | Joint & Several | 100.00% | |

## $15M Cash Secured LC PACEM Solution

| | | | |
|---|---|---|---|
| Loan Name | $15M Cash Secured LC PACEM Solution | Loan Officer | Michael Yee |
| Loan Number | | Risk Rating | 1.00 |
| Loan Amount | $15,449.13 | Loan Purpose | LC for security deposit on |

**Atlantic Union Bank**

PACEM Solution International LLC - PP

| | | | |
|---|---|---|---|
| NAICS Code | 541618 | Loan Term (Months) | lease |
| Amortized Term (Months) | 0 | Maturity Date | 12 |
| Payment Type | | Payment Schedule | Monthly |
| Interest Only Months | 12 | Interest Rate | 8.25000000% |
| Pricing Basis | Variable | Index | WSJ Prime |
| Spread (%) | 4.00000000% | Rate Floor | |
| Rate Ceiling | | Interest Rate Adjustment | Daily |
| | | Frequency | |
| Transaction ROE | | Relationship ROE | |
| Total Collateral Pledged | $15,449.13 | Reg O Loan | ☐ |
| Current LTV | 100.00% | COVID Modification Codes | |
| COVID Days Past Due | | | |

| Collateral Type | UBT Collateral Code | Address | Collateral Value | Advance Rate | Advance Rate Override | Current Lendable Value | Amount Pledged | Total Prior Lien Amount | Description |
|---|---|---|---|---|---|---|---|---|---|
| Possessory-Savings/CD's-100% secured Savings Acct-UBSH Family | D7331 | No Address Provided | $15,449.13 | 100.00% | | $15,449.13 | $15,449.13 | $0.00 | TBD Cash Secured Account |

## Borrowing Structure

| Borrower Type | Relationship Name | | Contingent Type | Contingent Percentage | Contingent Amount |
|---|---|---|---|---|---|
| Borrower | PACEM SOLUTION INTERNATIONAL LLC | | Joint & Several | 100.00% | |

| Fee Number | Fee Type | Amount | Amount Paid | Amount Remaining | Date Collected |
|---|---|---|---|---|---|
| FEE-008402 | Origination 12 Months or Less | $154.50 | | $154.50 | |
| FEE-008401 | Doc Prep Fee | $400.00 | | $400.00 | |

# SWAP Information

# RISK RATING DISCUSSION/CONFIRMATION

Risk rating is a 5. Risk rating will be further evaluated once the MOI contract begins and updated financials are received.

# Covenant Management

---

| | | | |
|---|---|---|---|
| Relationship Name | PACEM Solution International LLC | Covenant Type | Business Tax Return |
| Frequency | Annually | Last Evaluation Date | |
| Last Evaluation Status | | Date of Statement Required | 12/31/2019 |
| Active | ✓ | Financial Indicator Value | |
| Definitions | Within 30 days of filing | | |

---

| | | | |
|---|---|---|---|
| Relationship Name | Cory & Rana Mills | Covenant Type | Personal Tax Return |
| Frequency | Annually | Last Evaluation Date | |
| Last Evaluation Status | | Date of Statement Required | 12/31/2019 |

Commercial Banking Credit Memo 5.0      Page 4 of 10

**Atlantic Union Bank**

PACEM Solution International LLC - PP

| | | | |
|---|---|---|---|
| Active | ✓ | Financial Indicator Value | |
| Definitions | Within 30 days of filing | | |

---

| | | | |
|---|---|---|---|
| Relationship Name | Cory & Rana Mills | Covenant Type | Personal Financial Statement |
| Frequency | Annually | Last Evaluation Date | |
| Last Evaluation Status | | Date of Statement Required | 9/15/2019 |
| Active | ✓ | Financial Indicator Value | |
| Definitions | Within 30 days of request | | |

---

| | | | |
|---|---|---|---|
| Relationship Name | PACEM Solution International LLC | Covenant Type | Interim Business Financial Statement |
| Frequency | Monthly | Last Evaluation Date | 5/20/2020 |
| Last Evaluation Status | Exception | Date of Statement Required | 5/31/2020 |
| Active | ✓ | Financial Indicator Value | |
| Definitions | Within 20 days of month end | | |

---

| | | | |
|---|---|---|---|
| Relationship Name | PACEM Solution International LLC | Covenant Type | Debt Service Coverage Operating Company Post Distribution |
| Frequency | Annually | Last Evaluation Date | 3/27/2020 |
| Last Evaluation Status | Waived | Date of Statement Required | 12/31/2020 |
| Active | ✓ | Financial Indicator Value | |
| Definitions | Borrower will maintain a debt coverage ratio of not less than 1.35 to 1.00 at all times. Debt coverage ratio shall mean EBITDA (the sum of (a) net profit (or loss), plus (b) interest expense and income tax provisions for such period, plus (c) expense associated with any unfunded capital expenditure, minus (f) any gain relating to the accumulated effect of any change in accounting method, plus (g) any loss relating to the accumulated effect of any change in accounting method, each item in clauses (a) through (g) calculated pursuant to GAAP for such period. Debt Service means for any period of determination thereof an amount equal to the total aggregate amount of all payments or principal and | | |

PACEM Solution
International LLC
- PP

interest with respect to
indebtness of Borrower
scheduled to be due and
payable during such period.

---

| | | | |
|---|---|---|---|
| Relationship Name | PACEM Solution International LLC | Covenant Type | Annual Review Financial Statement |
| Frequency | Annually | Last Evaluation Date | |
| Last Evaluation Status | | Date of Statement Required | 12/31/2018 |
| Active | ✓ | Financial Indicator Value | |
| Definitions | Within 150 days of year end | | |

---

| | | | |
|---|---|---|---|
| Relationship Name | PACEM Estate Holdings LLC | Covenant Type | Business Tax Return |
| Frequency | Annually | Last Evaluation Date | |
| Last Evaluation Status | | Date of Statement Required | 12/31/2018 |
| Active | ✓ | Financial Indicator Value | |
| Definitions | Within 30 days of filing | | |

---

| | | | |
|---|---|---|---|
| Relationship Name | | Covenant Type | Annual Loan Review |
| Frequency | Annually | Last Evaluation Date | 7/12/2018 |
| Last Evaluation Status | | Date of Statement Required | |
| Active | ✓ | Financial Indicator Value | |
| Definitions | | | |

# COVENANT COMPLIANCE NARRATIVE

2018 and 2019 covenants were waived and reset for testing in 2020. A $2,500 fee was assessed. Based on 2020 budget Borrower has a DSCR of 3.04x (with the subject SBA Loan amortized over 6 months, $22,222 payments on the FL mortgage, and estimated Waygar debt)

# LOB MODIFICATION TEMPLATE

PACEM Solution International, LLC ("PACEM") was approved for a 12 month, $5MM SBA 7a Loan @ WSJP + 2% to provide permanent working capital to build out, purchase equipment, and fund initial overhead costs associated with their new munitions manufacturing facility in Florida. The loan is secured with a 1 DOT on the Guarantor's primary residence (located in McLean, VA) valued at $4.2MM per appraisal dated 5/23/18, and 2nd DOT (behind AUB's $3.6MM 1st DOT) on the Borrower's munitions facility located in Perry, FL valued at $7.6MM per appraisal dated 9/2018, and a 1st Position UCC lien on Business Assets of PACEM.

The loan has been extended from its original 12 month maturity of 8/15/19 to 6/15/20 due to a delay in starting their largest contract with the Iraq Ministry of Interior ("MoI"). The SBA Guaranty fee was paid by the Borrower in Aug 2019 and the SBA Guaranty now covers the loan for up to 10 years. The loan has also been paid down from its original balance to $4,650,000. This request is to term out the current balance on the loan over 6 months starting with the 6/15/20 payment the new maturity will be 11/15/20.

Per the Borrower's financials (spreads attached) they had a drop in revenue due to intention initial delay of bringing manufacturing in-house. PACEM displays revenues of $8.2MM and $13.7MM in 2018 and 2019, with net income of -$7.3MM and -$10.1MM as the Borrower has focused on building out their munitions facility in Florida and purchase the necessary equipment for their manufacturing (as seen in the increase of total assets from $14MM in 2017 to $43MM in 2019). This was all done strategically and the losses were expected. As soon as the contract with the MOI begins, which is expected end of May/first week of June, the Borrower expects revenues

PACEM Solution
International LLC
- PP

in excess of $80MM (consistent with 2016 and 2017 performance) and significant profitability. The Borrower has provided projections for 2020 that indicate revenues of $143MM and projected net income of $32MM. Revenue that they expect to start in May 2020 from their munitions contracts with Iraq-MOI and Saudi Arabia-MoD contribute the most towards the expected revenue ($99.8MM).

PACEM generates revenue in 3 different divisions of their company: Solutions, Defense, and Amtec Less Lethal. Solutions offers services and their 2020 income will be generated from sources like Ukraine ($3MM), UAE Embassy ($3MM), Oracle ($20M), and the DHS ($238M). Defense produces munitions and their 2020 income will be generated from sources like the Iraq-MOI and Saudi Arabi-MoD (as referenced above), and the Australian Federal Police ($10.4MM). Amtec offers less lethal products and their 2020 income will be generated from sources like Ukraine-MoD ($2MM), Kuwait-MoI/MoD ($2.7MM), Domestic sales which have been consistently producing $350M a month, and Mexico-Rippel Effect ($785M). Even without the Iraq-MoI, PACEM is expected to generate $77MM in revenue. By 12/31/20 the Borrower expects to have total assets of $76MM, liabilities of $50MM and equity of $26MM.

In the attached spreads the unexplained adjustment to retained earnings on the balance sheet is related to the acquisition of Amtec Less Lethal Systems and the recording of those entries. This is expected to be fully reconciled once BDO completes their Audited financials. Although the drop in revenue and subsequent losses as a result of moving manufacturing in-house were anticipated, it was expected that the IRAQ MOI begin in Q4 2019. As a result of the delay and a 2019 loss the Bank is downgraded the subject SBA loan to a risk rating of 5. The Bank is also downgraded the PACEM Estate Holdings Loan 1080094616 to a risk rating of 5.

**COVID-19 Impact:** PACEM manufacturing plant in Florida is up and running. There has been minimal impact to staff, as they already had to wear masks and protective equipment before, but now are being more cautious. PACEM did receive a PPP loan for roughly $1MM. The below is a summary of their 4 largest contracts, 2 have been impacted by COVID and have been delayed until further notice, the other 2 including the Iraq MOI contract is not being affected by COVID and manufacturing for those contracts is underway.

**Contract updates:**

**Customer:** Iraq Ministry of Interior

**Status Summary from Pacem:**

March 6:

   o  Iraq has completed the contract for the remaining $65M (original attached)

   o  Iraq End User has completed the DSP83 and Pacem will submit the DSP5 Export Approval upon the appointment of the new Iraq cabinet (attached)

   o  Iraq provided Pacem with the option to await the full $65M at the beginning of 2020 budget (end of March), or to take the remaining $18,612,521. They opted to get Iraq financially committed to the $18M and submitted their performance bond for the full amount (5%) $3.3M

   o  Trade Bank of Iraq (TBI) has been in SWIFT contact with Citizens Bank to re-establish the LC and plus up amount

   o  Pacem expects the new government to be appointed by President Barham Saleh in the coming weeks

March 24:

   o  Iraq is now potentially looking to conduct a non-confidence vote for newly selected PM, Adnan al-Zurfi. The idea is to return Adel Mahdi to his PM role through 2021 elections. Pacem contract was originally approved and cash allocated under Mahdi, but does not make any difference as they have received legal & financial stamps putting their contract into law (890,324 40mm HV).

April 9

   o  Prime Minister Adnan al-Zurfi has stepped down.

May 7:

   o PM Designate is Mustafa al-Khadimi, has been confirmed as was 15 ministers in his cabinet on May 6th, 2020. This is a great step and first cabinet since signing of PACEM annex.
   o  Pacem expecting funding shortly thereafter.
   o  No Covid impact

**Atlantic Union Bank**

PACEM Solution
International LLC
- PP

**Customer**: Kingdom of Saudi Arabia

**Status Summary from Pacem**:

March 6:

o   Pacem has submitted and completed all necessary technical and commercial responses.

o   Pacem conducted a successful in country demonstration in Tabruk and has been fully approved by the technical and engineering committee.

o   Pacem was contacted by the KSA Embassy, D.C. to start discussions and should have contract draft end of next week.

o   The KSA contracting office has submitted Pacem notice that they have been approved and awarded 1.5M M430A1 HV HEDP 40x53mm under their "emergency budget". This does not include the 500,000 still pending for KSA land forces that will be signed in April.

March 24:

o   The KSA contract was confirmed on HRH Prince Khaled's desk at MoD but they have not been in MoD for approx. 8 days. This contract has been fully vetted and approved.

April 9

o   Contract remains on HRH Prince Khaled's desk, delayed due to COVID-19 impact.
o   Oil price drop will not affect contract award.  Situation with Yemen (KSA will be supplying ammunition) may increase M430A1 quantity.

May 7

o Delayed due to COVID 19 impact

---

**Customer** Ukraine

**Status Summary from Pacem**:

March 6:

o   Pacem's in country legal team and director has completed all of the necessary certifications. This has been a 6-month process through the Medvev Research Center to verify the safety, stand-off, lethality, etc. of Pacem munitions

o   Pacem is now certified to supply the M430A1 and M433 as the only company certified to provide to STE or the NGU

o   Current order is 300,000 M430A1 and 100,000 M433

o   Pacem will receive the contract and funding in April

March 24:

o   The Ukraine government and STE closed for 14 days last Tuesday (March 17).

April 9 Update

o   No update; COVID-19 shutdown

May 7

o   Still delayed due to COVID-19

---

**Customer**: Australian Defense Forces

PACEM Solution
International LLC
- PP

**Status Summary from Pacem**:

March 6:

- o  Pacem has completed all submissions and the ADF has cancelled work with previous supplier

- o  ADF has issued and completed the change supplier order

- o  ADF has sent staff to review the facility and set up a 5-year agreement. Pacem has been in discussion through their Australia based staff and have settled on 3 flights of 139,000 per year supply for M430A1 at $53.00. They are currently negotiating the M433 requirements

- o  Pacem received the draft contract agreement from ASDEFCON. The capability manager (LEOSPO's customer for all intents and purposes) with Army Headquarters has confirmed M430A1 will be a requirement for a minimum of 10 years. Two ADF programs, Land 159 and Land 4108 are programs to test the lethality of ADF land capability.

- o  Pacem anticipates first order being placed and ready for delivery by end of Q2

March 24:

- o  Received email from Australia that contract ready for signature end of March/ first-week of April. This came from the Sustainment Department of ADF.

April 9

- o  Received e-mail from Australian Embassy in Washington, DC (Mandy Sauders) stating that draft contract has been signed off (approved) by Australian Defense Force in Canberra and should be issued to Pacem this week.
- o  Also noted that New Zealand has a 40mm requirement; do not yet know quantity or timing. They have stated at least a $2M USD order for 40mm and LL in next 60-days.
- o  No Covid impact

PACEM Solution
International LLC
- PP

| PACEM Companies | | | |
|---|---|---|---|
| Statement of Operations – FORECAST | | | |
| Summary | | | |
| | | | **FORECAST** |
| | | | **2020** |
| **Ordinary Income/Expense** | | | |
| | Income | | |
| | | Defense Munitions | 127,846,776 |
| | | Less Lethal Products | 9,795,149 |
| | | Solutions Services | 5,025,638 |
| | Total Income | | 142,667,563 |
| | Cost of Goods Sold | | |
| | | Defense Munitions | 76,900,280 |
| | | Amtec Vendor Note | |
| | | Less Lethal Products | 6,366,946 |
| | | Solutions Services | 2,509,700 |
| | Total COGS | | 85,776,926 |
| | Gross Profit | | 56,890,637 |
| | | | 39.88% |
| | | Operating Expense | |
| | | Defense Munitions | 2,215,627 |
| | | Less Lethal Products | 2,083,378 |
| | | Solutions Services | 4,191,242 |
| | | | |
| | | Total Expense | 8,490,247 |
| **Total Ordinary Income (EBITDA)** | | | 48,400,390 |
| | | | 33.93% |
| **Other Income/Expense** | | | |
| | Other Income | | |
| | | Currency Gain (Loss) | |
| | | Interest Income | |
| | | Defense | 1,110 |
| | | Less Lethal | – |
| | | Solutions | 530 |
| | Total Other Income | | 1,641 |
| | Other Expense | | |
| | | Bad Debts | |
| | | Depreciation Expense | |
| | | Defense | 424,308 |
| | | Less Lethal | 1,968 |
| | | Solutions | 201,360 |
| | | Income Tax Expense | 12,627,338 |
| | | Interest Expense–Access | 192,028 |
| | | Interest Expense–Waygar | 1,677,480 |
| | | Investment Expenses | 165,900 |
| | | Officer Compensation | 800,000 |
| | Total Other Expense | | 16,090,442 |
| **Net Other Income** | | | (16,088,801) |
| **Net Income** | | | **32,311,589** |

## SIXTH AMENDMENT TO PROMISSORY NOTE AND WAIVER AGREEMENT

THIS SIXTH AMENDMENT TO PROMISSORY NOTE AND WAIVER AGREEMENT (this "Agreement") is made this 22 day of May, 2020 by and between PACEM SOLUTION INTERNATIONAL LLC, a Virginia limited liability company (the "Borrower") and ATLANTIC UNION BANK, its successors and assigns (the "Lender").

## RECITALS

A.    The Lender has made a term loan (loan number 1080085275) (the "Loan") to the Borrower, which Loan is currently evidenced by that certain SBA Promissory Note dated August 15, 2018, from the Borrower in favor of the Lender in the principal amount of $5,000,000 (as amended from time to time, the "Note"). The Note is secured by, among other things, that certain (a) Deed of Trust dated August 10, 2018 from CORY MILLS, a resident of McLean, Virginia and RANA Z. AL SAADI to certain trustees named therein for the benefit of the Lender, and (b) Supplemental Mortgage, Assignment, Security Agreement and Fixture Filing dated May 17, 2019, by Pacem Estate Holdings LLC, a Florida limited liability company, as mortgagor in favor of the Lender, as mortgagee.

B.    The Borrower has requested, and the Lender has agreed to amend the principal repayment provisions of the Note, on the condition, among others, that this Agreement be executed, modifying the principal repayment terms of the Note as hereinafter more fully set forth.

C.    Capitalized terms used herein and not defined shall each have the meaning given to such terms in the Note.

NOW, THEREFORE, THIS AGREEMENT WITNESSETH:

That in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Lender and the Borrower covenant and agree as follows:

1.    The present principal balance of the Note is $4,650,000 and such sum is due and owing, subject to the terms of repayment hereinafter set forth, without defense or offset.

2.    The Note shall be payable as follows:

(i)    The unpaid principal balance of the Note shall be payable in six (6) equal monthly installments of principal each in the amount of $775,000, plus interest on the unpaid principal balance, commencing on June 1, 2020 and on the first day of each month hereafter until maturity; and

(ii)    Unless sooner paid, the unpaid principal sum of the Note, together with all accrued and unpaid interest shall be due and payable in full on December 1, 2020.

42351244v1 221027.000071

3. <u>Limitation of Waiver</u>. This Agreement shall be construed in connection with and as part of the Financing Documents and all terms, conditions, representations, warranties, covenants and agreements set forth in the Financing Documents are hereby ratified and confirmed and shall remain in full force and effect.

4. <u>Events of Default</u>. In addition to those Events of Default specifically enumerated in the Financing Documents, the failure to comply with the terms of any covenant or agreement contained herein shall constitute an Event of Default and shall entitle the Lender to exercise all rights and remedies provided to the Lender under the terms of any of the other Financing Documents as a result of the occurrence of the same.

5. <u>Ratification</u>. The terms, provisions and covenants of the Note and each of the other Financing Documents delivered in connection with the Note are in all respects hereby ratified and confirmed and remain in full force and effect.

6. <u>Conforming Changes</u>. All references in the Deed of Trust to the Note shall be deemed to refer to the Note as amended as of the date hereof.

7. <u>Not a Discharge of Note</u>. It is expressly agreed that the indebtedness evidenced by the Note has not been extinguished or discharged hereby. The Borrower and the Lender agree that the execution of this Agreement is not intended to and shall not cause or result in a novation with regard to the Note.

8. <u>Counterparts and Headings</u>. This Agreement may be executed in one or more counterparts, each of which shall be considered an original for all purposes; provided, however, that all such counterparts shall together constitute one and the same instrument. The descriptive headings of the various provisions of this Agreement are inserted for convenience of reference only and shall not be deemed to affect the meaning or construction of any of the provisions hereof.

9. <u>PDF</u>. Signatures transmitted by electronic mail in PDF format shall be legal and binding and have the same legal effect as if an original of this Agreement had been delivered. Borrower agrees that it shall be bound by any signature (whether original or electronic) sent by electronic mail and is aware that other parties will rely on such signature and does hereby waive any defenses to the enforcement of the terms of this Agreement based on the foregoing forms of signature.

[Signatures begin on the following page]

42351244v1 221027.000071

2

WITNESS the signatures and seals of the Borrower and the Lender the day and year first above written.

WITNESS:

PACEM SOLUTION INTERNATIONAL LLC

By:_____(SEAL)
Cory L. Mills
Member

42351244v1 221027.000071

## AGREEMENT OF GUARANTORS

Each of the undersigned is a "Guarantor" under an Unconditional Guarantee, dated August 15, 2018 (as amended, modified, substituted, extended and renewed from time to time, the "Guaranty"), in favor of the Lender.  In order to induce the Lender to enter into the foregoing Sixth Amendment, each of the undersigned (a) consents to the transactions contemplated by, and agreements made by the Borrower under, the foregoing Sixth Amendment, and (b) ratifies, confirms and reissues the terms, conditions, promises, covenants, grants, assignments, security agreements, agreements, representations, warranties and provisions contained in the Guaranty.

WITNESS signature and seal of the undersigned as of the date of the Sixth Amendment.

WITNESS:



_____                                    _____ (SEAL)
                                                                    Rana Z. Al Saadi

_____                                    _____ (SEAL)
                                                                    Cory L. Mills

## FIFTH AMENDMENT TO PROMISSORY NOTE AND WAIVER AGREEMENT

THIS FIFTH AMENDMENT TO PROMISSORY NOTE AND WAIVER AGREEMENT (this "Agreement") is made this _19_ day of March, 2020 by and between PACEM SOLUTION INTERNATIONAL LLC, a Virginia limited liability company (the "Borrower") and ATLANTIC UNION BANK, its successors and assigns (the "Lender").

### RECITALS

A.    The Lender has made a term loan (loan number 1080085275) (the "Loan") to the Borrower, which Loan is currently evidenced by that certain SBA Promissory Note dated August 15, 2018, from the Borrower in favor of the Lender in the principal amount of $5,000,000 (as amended from time to time, the "Note"). The Note is secured by, among other things, that certain (a) Deed of Trust dated August 10, 2018 from CORY MILLS, a resident of McLean, Virginia and RANA Z. AL SAADI to certain trustees named therein for the benefit of the Lender, and (b) Supplemental Mortgage, Assignment, Security Agreement and Fixture Filing dated May 17, 2019, by Pacem Estate Holdings LLC, a Florida limited liability company, as mortgagor in favor of the Lender, as mortgagee.

B.    As of December 31, 2019, the Borrower was in default for failing to comply with the Debt Service Coverage Ratio (the "**Existing Default**").

C.    The Borrower has requested, and the Lender has agreed to waive the Existing Default and amend the principal repayment provisions of the Note, on the condition, among others, that this Agreement be executed, modifying the principal repayment terms of the Note as hereinafter more fully set forth.

D.    Capitalized terms used herein and not defined shall each have the meaning given to such terms in the Note.

NOW, THEREFORE, THIS AGREEMENT WITNESSETH:

That in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Lender and the Borrower covenant and agree as follows:

1.    The present principal balance of the Note is $4,650,000 and such sum is due and owing, subject to the terms of repayment hereinafter set forth, without defense or offset.

2.    The Note shall be payable as follows:

(i)    Interest only on the unpaid principal balance of the Note shall be payable on first day of each month hereafter until maturity; and

(ii)    Unless sooner paid, the unpaid principal sum of the Note, together with all accrued and unpaid interest shall be due and payable in full on June 15, 2020.

41575669v2 221027.000071

3.     Lender hereby waives the Existing Defaults.  Lender's agreement to waive the Existing Defaults shall in no way obligate Lender to make any other modifications to the Loan Agreement or to waive Borrower's compliance with any other terms of the Financing Documents, and shall not limit or impair Lender's right to demand strict performance of all other terms and covenants as of any date.  The waiver set forth above shall not be deemed or otherwise construed to constitute a waiver of any other provision of this Agreement or the Loan Agreement in connection with any other transaction.

4.     <u>Limitation of Waiver</u>.

(i)     The waiver set forth in Section 3, above, is effective for the purposes set forth herein and shall be limited precisely as written and shall not be deemed to (a) be a consent to any amendment, waiver or modification of any other term or condition of any Financing Document, or (b) otherwise prejudice any right or remedy which Lender may now have or may have in the future under or in connection with any Financing Document.

(ii)     This Agreement shall be construed in connection with and as part of the Financing Documents and all terms, conditions, representations, warranties, covenants and agreements set forth in the Financing Documents are hereby ratified and confirmed and shall remain in full force and effect.

5.     In addition to those Events of Default specifically enumerated in the Financing Documents, the failure to comply with the terms of any covenant or agreement contained herein shall constitute an Event of Default and shall entitle the Lender to exercise all rights and remedies provided to the Lender under the terms of any of the other Financing Documents as a result of the occurrence of the same.

6.     The agreements of the Lender under this Agreement are subject to the satisfaction in the Lender's sole discretion of each of the following terms and conditions, time being of the essences set

(i)     the Borrower shall pay to Lender the following nonrefundable fees: (y) an extension fee in the amount of $2,500 for extending the Loan and (z) a waiver fee in the amount of $2,500 for the waiver of Existing Default, and all costs, fees and expenses incurred by Lender in connection with this Agreement, including, without limitation the Lender's legal fees and expenses; and

(ii)     the Borrower shall cause each guarantor of the Note to execute and deliver to the Lender the Agreement of Guarantor, attached to this Agreement.

7.     The terms, provisions and covenants of the Note and each of the other Financing Documents delivered in connection with the Note are in all respects hereby ratified and confirmed and remain in full force and effect.

8.     All references in the Deed of Trust to the Note shall be deemed to refer to the Note as amended as of the date hereof.

41575669v2 221027.000071

9.      It is expressly agreed that the indebtedness evidenced by the Note has not been extinguished or discharged hereby.  The Borrower and the Lender agree that the execution of this Agreement is not intended to and shall not cause or result in a novation with regard to the Note.

10.      This Agreement may be executed in one or more counterparts, each of which shall be considered an original for all purposes; provided, however, that all such counterparts shall together constitute one and the same instrument.

[Signatures begin on the following page]

## AGREEMENT OF GUARANTORS

Each of the undersigned is a "Guarantor" under an Unconditional Guarantee, dated August 15, 2018 (as amended, modified, substituted, extended and renewed from time to time, the "Guaranty"), in favor of the Lender.  In order to induce the Lender to enter into the foregoing Fifth Amendment, each of the undersigned (a) consents to the transactions contemplated by, and agreements made by the Borrower under, the foregoing Fifth Amendment, and (b) ratifies, confirms and reissues the terms, conditions, promises, covenants, grants, assignments, security agreements, agreements, representations, warranties and provisions contained in the Guaranty.

WITNESS signature and seal of the undersigned as of the date of the Fifth Amendment.

WITNESS:



Rana Z. Al Saadi

Cory L. Mills

WITNESS the signatures and seals of the Borrower and the Lender the day and year first above written.

WITNESS:

PACEM SOLUTION INTERNATIONAL, LLC

By

Cory L. Mills
Member

(SEAL)

## FOURTH AMENDMENT TO PROMISSORY NOTE

THIS FOURTH AMENDMENT TO PROMISSORY NOTE (this "Agreement") is made this 25 day of November, 2019 by and between PACEM SOLUTION INTERNATIONAL LLC, a Virginia limited liability company (the "Borrower") and ATLANTIC UNION BANK, as successor to ACCESS NATIONAL BANK, its successors and assigns (the "Lender").

### RECITALS

A. The Lender has made a term loan (the "Loan") to the Borrower, which Loan is currently evidenced by that certain SBA Promissory Note dated August 15, 2018, from the Borrower in favor of the Lender in the principal amount of $5,000,000 (as amended from time to time, the "Note"). The Note is secured by, among other things, that certain (a) Deed of Trust dated August 10, 2018 from CORY MILLS, a resident of McLean, Virginia and RANA Z. AL SAADI to certain trustees named therein, for the benefit of the Lender, and (b) Supplemental Mortgage, Assignment, Security Agreement and Fixture Filing dated May 17, 2019, by Pacem Estate Holdings LLC, a Florida limited liability company, as mortgagor in favor of the Lender, as mortgagee.

B. The Borrower has requested, and the Lender has agreed to amend the principal repayment provisions of the Note, on the condition, among others, that this Agreement be executed, modifying the principal repayment terms of the Note as hereinafter more fully set forth.

C. Capitalized terms used herein and not defined shall each have the meaning given to such terms in the Note.

NOW, THEREFORE, THIS AGREEMENT WITNESSETH:

That in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Lender and the Borrower covenant and agree as follows:

1. The present principal balance of the Note is $4,750,000 and such sum is due and owing, subject to the terms of repayment hereinafter set forth, without defense or offset.

2. The Note shall be payable as follows:

(i) Interest only on the unpaid principal balance of the Note shall be payable on first day of each month hereafter until maturity;

(ii) On the date of this Agreement, the Borrower shall make a principal payment in the amount of $100,000; and

(iii) Unless sooner paid, the unpaid principal sum of the Note, together with all accrued and unpaid interest shall be due and payable in full on February 15, 2020.

4065206/x2.221027.009071

3.    The agreements of the Lender under this Agreement are subject to the satisfaction in the Lender's sole discretion of each of the following terms and conditions, time being of the essence:

(i)    the Borrower shall pay all costs, fees and expenses incurred by Lender in connection with this Agreement, including, without limitation the Lender's legal fees and expenses; and

(ii)    the Borrower shall cause each guarantor of the Note to execute and deliver to the Lender the Agreement of Guarantor, attached to this Agreement.

4.    The terms, provisions and covenants of the Note and each of the other loan documents delivered in connection with the Note are in all respects hereby ratified and confirmed and remain in full force and effect.

5.    All references in the Deed of Trust to the Note shall be deemed to refer to the Note as amended as of the date hereof.

6.    It is expressly agreed that the indebtedness evidenced by the Note has not been extinguished or discharged hereby. Upon receipt of the $100,000 payment pursuant to Section 2(ii) above, the unpaid principal balance of the Note shall be $4,650,000. The Borrower acknowledges and agrees that such sum is due and owing to the Lender without offset or defense of any kind or nature. The Borrower and the Lender agree that the execution of this Agreement is not intended to and shall not cause or result in a novation with regard to the Note.

7.    This Agreement may be executed in one or more counterparts, each of which shall be considered an original for all purposes; provided, however, that all such counterparts shall together constitute one and the same instrument.

[Signatures begin on the following page]

2

WITNESS the signatures and seals of the Borrower and the Lender the day and year first above written.

WITNESS:

PACEM SOLUTIONS INTERNATIONAL LLC

By: _____ (SEAL)
Cory L. ██████
Member



## AGREEMENT OF GUARANTORS

Each of the undersigned is a "Guarantor" under an Unconditional Guarantee, dated August 15, 2018 (as amended, modified, substituted, extended and renewed from time to time, the "Guaranty"), in favor of the Lender. In order to induce the Lender to enter into the foregoing Fourth Amendment, each of the undersigned (a) consents to the transactions contemplated by, and agreements made by the Borrower under, the foregoing Fourth Amendment, and (b) ratifies, confirms and reissues the terms, conditions, promises, covenants, grants, assignments, security agreements, agreements, representations, warranties and provisions contained in the Guaranty.

WITNESS signature and seal of the undersigned as made as of the date of the Fourth Amendment.

WITNESS:

_____    ██████████████ (SEAL)
                           Rana Z. Al'Saadi

_____    ██████████████ (SEAL)
                           Cory L. _____



## THIRD AMENDMENT TO PROMISSORY NOTE

THIS THIRD AMENDMENT TO PROMISSORY NOTE (this "Agreement") is made this 3oₜₕday of July, 2019 by and between PACEM SOLUTION INTERNATIONAL LLC, a Virginia limited liability company (the "Borrower") and ATLANTIC UNION BANK, as successor to ACCESS NATIONAL BANK, its successors and assigns (the "Lender").

### RECITALS

A.       The Lender has made a term loan (the "Loan") to the Borrower, which Loan is currently evidenced by that certain SBA Promissory Note dated August 15, 2018, from the Borrower in favor of the Lender in the principal amount of $5,000,000 (as amended from time to time, the "Note"). The Note is secured by among other things that certain (a) Deed of Trust dated August 10, 2018 from CORY MILLS, a resident of McLean, Virginia and RANA Z. AL SAADI to certain trustees named therein for the benefit of the Lender and (b) Supplemental Mortgage, Assignment, Security Agreement and Fixture Filing dated May 17, 2019, by Pacem Estate Holdings LLC, a Florida limited liability company, as mortgagor in favor of the Lender, as mortgagee.

B.       The Borrower has requested, and the Lender has agreed, to among other things, amend the principal repayment provisions of the Note, on the condition, among others, that this Agreement be executed, modifying the principal repayment terms of the Note as hereinafter more fully set forth.

C.       Capitalized terms used herein and not defined shall each have the meaning given to such terms in the Note.

NOW, THEREFORE, THIS AGREEMENT WITNESSETH:

That in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Lender and the Borrower covenant and agree as follows:

1.       The present principal balance of the Note is $5,000,000 and such sum is due and owing, subject to the terms of repayment hereinafter set forth, without defense or offset.

2.       The Note shall be payable as follows:

(i)       Interest only on the unpaid principal balance of the Note shall be payable on first day of each month hereafter until maturity;

(ii)      On the date of this Agreement, the Borrower shall make a principal payment in the amount of $250,000; and

(iii)     Unless sooner paid, the unpaid principal sum of the Note, together with all accrued and unpaid interest shall be due and payable in full on November 15, 2019.

3. The agreements of the Lender under this Agreement are subject to the satisfaction in the Lender's sole discretion of each of the following terms and conditions, time being of the essence:

(i) the Borrower shall pay the full balance of the SBA guarantee fee, in the amount of $155,000;

(ii) the Borrower shall pay all costs, fees and expenses incurred by Lender in connection with this Agreement, including, without limitation: (a) a nonrefundable amendment fee to the Lender in the amount of $1,500 and (b) the Lender's legal fees and expenses;

(iii) the Borrower shall cause each guarantor of the Note to execute and deliver to the Lender the Agreement of Guarantor, attached to this Agreement.

4. The terms, provisions and covenants of the Note and each of the other loan documents delivered in connection with the Note are in all respects hereby ratified and confirmed and remain in full force and effect.

5. All references in the Deed of Trust to the Note shall be deemed to refer to the Note as amended as of the date hereof.

6. It is expressly agreed that the indebtedness evidenced by the Note has not been extinguished or discharged hereby. Upon receipt of the $250,000 payment pursuant to Section 2(ii) above, the unpaid principal balance of the Note shall be $4,750,000. The Borrower acknowledges and agrees that such sum is due and owing to the Lender without offset or defense of any kind or nature. The Borrower and the Lender agree that the execution of this Agreement is not intended to and shall not cause or result in a novation with regard to the Note.

7. This Agreement may be executed in one or more counterparts, each of which shall be considered an original for all purposes; provided, however, that all such counterparts shall together constitute one and the same instrument.

[Signatures begin on the following page]

WITNESS the signatures and seals of the Borrower and the Lender the day and year first above written.

WITNESS:

PACEM SOLUTION INTER[...] LLC

By: _____

Cory L. Mills
Member

3

## AGREEMENT OF GUARANTORS

Each of the undersigned is a "Guarantor" under an Unconditional Guarantee, dated August 15, 2018 (as amended, modified, substituted, extended and renewed from time to time, the "Guaranty"), in favor of the Lender. In order to induce the Lender to enter into the foregoing Third Amendment, each of the undersigned (a) consents to the transactions contemplated by, and agreements made by the Borrower under, the foregoing Third Amendment, and (b) ratifies, confirms and reissues the terms, conditions, promises, covenants, grants, assignments, security agreements, agreements, representations, warranties and provisions contained in the Guaranty.

WITNESS signature and seal of the undersigned as of the date of the Third Amendment.

WITNESS:



Rana Z. Al Saadi

Cory L. Mills

39491757v2 221027.000071

## SECOND AMENDMENT TO PROMISSORY NOTE

THIS SECOND AMENDMENT TO PROMISSORY NOTE (this "Agreement") is made this 17th day of May, 2019 by and between PACEM SOLUTION INTERNATIONAL LLC, a Virginia limited liability company (the "Borrower") and ACCESS NATIONAL BANK, a division of Union Bank & Trust (the "Lender").

## RECITALS

A.     The Lender has made a term loan (the "Loan") to the Borrower, which Loan is currently evidenced by that certain SBA Promissory Note dated August 15, 2018, from the Borrower in favor of the Lender in the principal amount of $5,000,000 (as amended from time to time, the "Note"). The Note is secured by among other things that certain Deed of Trust dated August 10, 2018 from CORY MILLS, a resident of McLean, Virginia and RANA Z. AL SAADI (the "Grantors") to certain trustees named therein for the benefit of the Lender.

B.     The Borrower has requested, and the Lender has agreed, to amend the principal repayment provisions of the Note on the condition, among others, that this Agreement be executed, modifying the principal repayment terms of the Note as hereinafter more fully set forth.

C.     Capitalized terms used herein and not defined shall each have the meaning given to such terms in the Note.

NOW, THEREFORE, THIS AGREEMENT WITNESSETH:

That in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Lender and the Borrower covenant and agree as follows:

1.     The present principal balance of the Note is $5,000,000 and such sum is due and owing, subject to the terms of repayment hereinafter set forth, without defense or offset.

2.     The Note shall be payable as follows:

(i)     Interest only on the unpaid principal balance of the Note shall be payable on May 1, 2019 and on June 1, 2019;

(ii)     On July 1, 2019 and August 1, 2019, principal and interest shall be payable in two (2) equal payments each in the amount of $2,523,722.23; and

(iii)     Unless sooner paid, the unpaid principal sum of the Note, together with all accrued and unpaid interest shall be due and payable in full on August 15, 2019.

3.     The agreements of the Lender under this Agreement are subject to the satisfaction in the Lender's sole discretion of each of the following terms and conditions, time being of the essence:

38647633v5 221027.000071

        (i)     the Borrower shall cause Pacem Estates Holding LLC ("Pacem Estates") to execute and deliver to Lender, a Supplemental Mortgage, Assignment, Security Agreement and Fixture Filing (the "Florida Mortgage") on the real property and improvements described therein and located in Taylor County, Florida (the "Florida Property");

        (ii)    the Borrower shall pay all costs, fees and expenses incurred by Lender in connection with this Agreement and the taking, perfection, preservation, protection and/or release of the Florida Mortgage, including, without limitation: (a) all filing and/or recording taxes or fees; (b) all title insurance premiums; (c) all costs of Lien and record searches; and (d) the Lender's legal fees and expenses;

        (iii)   the Borrower shall cause each guarantor of the Note to execute and deliver to the Lender the Agreement of Guarantor, attached to this Agreement; and

        (iv)   the Lender and Waygar Capital, Inc. shall have entered into an intercreditor agreement in form and substance satisfactory to the Lender.

4.     The Borrower hereby covenants and agrees that until the Loan has been repaid in full, no funds will be deposited into deposit account number ▮▮▮▮9576 held by the Borrower with Citizens Bank, N.A. other than (i) payments made under contract no. (F-9/2015) made between the Republic of Iraq Ministry of Interior and the Borrower and (ii) up to a balance of $25,000 deposited in the ordinary course of business and used for Borrower's customary business needs.

5.     The terms, provisions and covenants of the Note and each of the other loan documents delivered in connection with the Note are in all respects hereby ratified and confirmed and remain in full force and effect.

6.     All references in the Deed of Trust to the Note shall be deemed to refer to the Note as amended as of the date hereof.

7.     It is expressly agreed that the indebtedness evidenced by the Note has not been extinguished or discharged hereby. The Borrower and the Lender agree that the execution of this Agreement is not intended to and shall not cause or result in a novation with regard to the Note.

8.     This Agreement may be executed in one or more counterparts, each of which shall be considered an original for all purposes; provided, however, that all such counterparts shall together constitute one and the same instrument.

[Signatures begin on the following page]

WITNESS the signatures and seals of the Borrower and the Lender the day and year first above written.

WITNESS:

PACEM SOLUTION INTERNATIONAL LLC

_Noorah Z Hayes_

By:_____(SEAL)
        Cory L. Mills
        Member

## AGREEMENT OF GUARANTORS

Each of the undersigned is a "Guarantor" under an Unconditional Guarantee, dated August 15, 2018 (as amended, modified, substituted, extended and renewed from time to time, the "Guaranty"), in favor of the Lender.  In order to induce the Lender to enter into the foregoing Agreement, each of the undersigned (a) consents to the transactions contemplated by, and agreements made by the Borrower under, the foregoing Agreement, and (b) ratifies, confirms and reissues the terms, conditions, promises, covenants, grants, assignments, security agreements, agreements, representations, warranties and provisions contained in the Guaranty.

WITNESS signature and seal of the undersigned as of the date of the Agreement.

WITNESS:

Noorah Z Hayes

_____ (SEAL)
Rana Z. Al Saadi

Noorah Z Hayes

_____ (SEAL)
Cory L. Mills

38647633v5 221027.000071

<u>AMENDMENT TO PROMISSORY NOTE</u>

THIS AMENDMENT TO PROMISSORY NOTE (this "Agreement") is made this _21_ day of March, 2019 and is effective as of March 1, 2019 by and between PACEM SOLUTION INTERNATIONAL LLC, a Virginia limited liability company (the "Borrower") and ACCESS NATIONAL BANK, a division of Union Bank & Trust of Richmond, Virginia (the "Lender"; Union Bank & Trust is not a national bank and is not regulated by the Office of the Comptroller of the Currency) (the "Lender").

<u>RECITALS</u>

A.    The Lender has made a term loan (the "Loan") to the Borrower, which Loan is currently evidenced by that certain SBA Promissory Note dated August 15, 2018, from the Borrower in favor of the Lender in the principal amount of $5,000,000 (the "Note"). The Note is secured by that certain Deed of Trust dated August 10, 2018 from CORY MILLS, a resident of McLean, Virginia and RANA Z. AL SAADI (the "Grantors") to certain trustees named therein for the benefit of the Lender.

B.    The Borrower has requested, and the Lender has agreed, to amend the principal repayment provisions of the Note on the condition, among others, that this Agreement be executed, modifying the principal repayment terms of the Note as hereinafter more fully set forth.

C.    Capitalized terms used herein and not defined shall each have the meaning given to such terms in the Note.

NOW, THEREFORE, THIS AGREEMENT WITNESSETH:

That in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Lender and the Borrower covenant and agree as follows:

1.    The present principal balance of the Note is $5,000,000 and such sum is due and owing, subject to the terms of repayment hereinafter set forth, without defense or offset.

2.    Notwithstanding anything set forth in the Note to the contrary, the unpaid principal balance of the Note shall be payable in principal and interest payments of $1,269,854 every month, beginning May 1, 2019 and on the first day of each month thereafter.

3.    The unpaid principal sum of the Note, together with all accrued and unpaid interest shall be due and payable in full on August 15, 2019.

4.    The terms, provisions and covenants of the Note are in all other respects hereby ratified and confirmed and remain in full force and effect.

5.    All references in the Note to the Deed of Trust shall be deemed to refer to such documents as the same have also been amended as of the date hereof.

38077433v1 221027.000071

6.      It is expressly agreed that the indebtedness evidenced by the Note has not been extinguished or discharged hereby.  The Borrower and the Lender agree that the execution of this Agreement is not intended to and shall not cause or result in a novation with regard to the Note.

7.      This Agreement may be executed in one or more counterparts, each of which shall be considered an original for all purposes; provided, however, that all such counterparts shall together constitute one and the same instrument.

<p style="text-align:center">[Signatures begin on the following page]</p>

WITNESS the signatures and seals of the Borrower and the Lender the day and year first above written.

WITNESS:

PACEM SOLUTION INTERNATIONAL LLC



By: _____ (SEAL)
Cory L. Mills
Member

## AGREEMENT OF GUARANTORS

Each of the undersigned is a "Guarantor" under an Unconditional Guarantee, dated August __, 2018 (as amended, modified, substituted, extended and renewed from time to time, the "Guaranty"), in favor of the Lender. In order to induce the Lender to enter into the foregoing Agreement, each of the undersigned (a) consents to the transactions contemplated by, and agreements made by the Borrower under, the foregoing Agreement, and (b) ratifies, confirms and reissues the terms, conditions, promises, covenants, grants, assignments, security agreements, agreements, representations, warranties and provisions contained in the Guaranty.

WITNESS signature and seal of the undersigned as of the date of the Agreement.

WITNESS:



_____ (SEAL)
Rana Z. Al Snadi

_____ (SEAL)
Cory L. Mills

38077433v1 221027.000071



U.S. Small Business Administration

# AUTHORIZATION
# (SBA 7(A) GUARANTEED LOAN)

| SBA Loan # | 28433370-07 |
|---|---|
| SBA Loan Name | Pacem Solution International LLC |
| Approval Date | August 8, 2018 |

Lender:

Access National Bank
1800 Robert Fulton Drive, Suite#310
Reston VA, VA 20191

U. S. Small Business Administration (SBA):

Washington District Office
740 15th Street, N.W., 3rd Floor
Washington, DC 20005

SBA approves, under Section 7(a) of the Small Business Act as amended, Lender's application, received August 10, 2018, for SBA to guarantee 90.00% of a loan ("Loan") in the amount of $5,000,000.00 to assist:

Borrower:

1. Pacem Solution International LLC
   2941 Fairview Park Drive, Suite 550
   Falls Church, VA 22042

All requirements in the Authorization which refer to Borrower also apply to any Co-Borrower.

A.  **THE GUARANTEE FEE IS $11,250.00.**

Lender must have paid the guarantee fee prior to SBA signing this Authorization. Any Lender with authority to sign this Authorization on behalf of SBA certifies that it has paid the guarantee fee to the Small Business Administration prior to signing this Authorization. No guarantee exists if Lender has not paid the guarantee fee in full. SBA will not refund the guarantee fee after the date of this Authorization except as provided in SBA Standard Operating Procedures. Payment of the guarantee fee is not contingent upon disbursement. Lender may collect this fee from Borrower upon receipt by Lender of the Authorization. Borrower may use Loan proceeds to reimburse Lender for the guarantee fee.

B.  **ONGOING SERVICING FEE**

1.  Lender agrees to pay SBA an ongoing fee equal to 0.550 of one percent per year of the guaranteed portion of the outstanding balance.

2.  Lender may not charge or otherwise pass through this fee to Borrower.

C.  **IT IS LENDER'S SOLE RESPONSIBILITY TO:**

1.  Close the Loan in accordance with the terms and conditions of this Authorization.

2.  Obtain valid and enforceable Loan documents, including obtaining the signature or written consent of any obligor's spouse if such consent or signature is necessary to bind the marital community or create a valid lien on marital property.

3.  Retain all Loan closing documents.  Lender must submit these documents, along with other required documents, to SBA for review if Lender requests SBA to honor its guarantee on the Loan, or at any time SBA requests the documents for review.

D.  **REQUIRED FORMS**

1.  Lender may use its own forms except as otherwise instructed in this Authorization. Lender must use the following SBA forms for the Loan:

       SBA Form 147, Note
       SBA Form 1050, Settlement Sheet
       SBA Form 159 (7(a)), Compensation Agreement, for each required agent
       SBA Form 722, Equal Opportunity Poster
       SBA Form 148, Guarantee

2.  Lender may use computer-generated versions of mandatory SBA Forms, as long as the text is identical.

E.  **CONTINGENCIES**—SBA issues this Authorization in reliance on representations in the Loan application, including supporting documents.  The guarantee is contingent upon Lender:

1.  Having and complying with a valid SBA Loan Guarantee Agreement (SBA Form 750 or SBA Form 750B for short-term loans) and any required supplemental guarantee agreements, between Lender and SBA;

2.  Having paid the full guarantee fee in the time and manner required by this Authorization and the SBA Standard Operating Procedures (SOP);

3.  Complying with the current SOP;

4.  Completing disbursement no later than 3 months from the approval date of this Authorization, unless the disbursement period is extended by proper SBA procedures.  (The final disbursement period cannot exceed 48 months from the approval date of this Authorization.  Any undisbursed balance remaining after 48 months will be automatically cancelled by SBA);

5.  Having no evidence since the date of the Loan application, or since any preceding disbursement, of any unremedied adverse change in the financial condition, organization, management, operation, or assets of Borrower or Operating Company which would warrant withholding or not making any further disbursement; and,

6.  Satisfying all of the conditions in this Authorization.

F.  **NOTE TERMS:**

1.  **Maturity**:  This Note will mature in 1 year from date of Note.

---

2.   **Repayment Terms**:

Lender must insert onto SBA Note, Form 147, to be executed by Borrower, the following terms, without modification.  Lender must complete all blank terms on the Note at time of closing:

The interest rate on this Note will fluctuate.  The initial interest rate is 7.00% per year.  This initial rate is the prime rate in effect on the first business day of the month in which SBA received the loan application, plus 2.00%.  The initial interest rate must remain in effect until the first change period begins unless reduced in accordance with SOP 50 10.

Borrower must pay a total of 6 payments of interest only on the disbursed principal balance beginning one month from the month this Note is dated and every month thereafter; payments must be made on the first calendar day in the months they are due.

Borrower must pay principal and interest payments of $850,544.05 every month, beginning seven months from the month this Note is dated; payments must be made on the first calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted quarterly (the "change period").

The "Prime Rate" is the prime rate in effect on the first business day of the month (as published in a national financial newspaper or website) in which SBA received the application, or any interest rate change occurs.  Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.00% above the Prime Rate.  Lender will adjust the interest rate on the first calendar day of each change period.  The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The spread as identified in the Note may not be changed during the life of the Loan without the written agreement of the Borrower.

For variable rate loans, the interest rate adjustment period may not be changed without the written consent of the Borrower.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default.  If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

**Loan Prepayment:**

Notwithstanding any provision in this Note to the contrary:

**Borrower may prepay this Note.**  Borrower may prepay 20% or less of the unpaid principal balance at any time without notice.  If Borrower prepays more than 20% and the Loan has been sold on the secondary market, Borrower must:

---

a.   Give Lender written notice;

b.   Pay all accrued interest; and

c.   If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 1 year from date of Note.

**Late Charge:**  If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

3.   Lender must include valid confession of judgment clauses in the Note for borrower(s) resident in Virginia.

## G.   USE OF PROCEEDS

1.   $2,839,000.00 for working capital.

2.   $2,061,000.00 to purchase equipment.

3.   $100,000.00 to purchase fixtures.

All amounts listed above are approximate.  Lender may not disburse Loan proceeds solely to pay the guarantee fee.  Lender may disburse to Borrower, as working capital only, funds not spent for the listed purposes as long as those funds do not exceed 10% of the specific purpose authorized or $10,000.00, whichever is less.  An Eligible Passive Company may not receive working capital funds.

The loan must be made for a sound business purpose and must benefit the small business, and one 7(a) loan may not be split into two 7(a) loans merely to benefit the Lender. 13 CFR 120.120 and 120.130(e)

Lender must document that Borrower used the loan proceeds for the purposes stated in this Authorization.  Lender and Borrower must complete and sign SBA Form 1050 at the time of first disbursement.  Lender must document the first and all subsequent disbursements by attaching required documentation to the original SBA Form 1050 and must maintain the documentation in the Loan file, following procedures described in SOP 50 10.

H.  **COLLATERAL CONDITIONS**

Lender must obtain a lien on 100% of the interests in the following collateral and properly perfect all lien positions:

1.  **Guarantee on SBA Form 148,** by Cory Mills and Rana Alsaadi, resident in Virginia.

    Secured by:

    a.  **First Deed of Trust (including water rights, if any and assignment of rents) on land and improvements** located at 1198 Windrock Court. This property is residential.
        (1)  Subject to no other liens.
        (2)  Written waiver of homestead.  (Residential property only.)
        (3)  Statement of non-homestead.  (Residential property only.)
        (4)  Evidence of title and priority of lien must be based upon:
            (a)  ALTA Loan Policy, insuring lender and assigns.

    b.  **First Perfected Security Interest, subject to no other liens, in the following personal property** (including any proceeds and products), whether now owned or later acquired, wherever located:
        Equipment; Fixtures; Inventory; Chattel Paper; General Intangibles;
        (1)  Lender must obtain a written agreement from all Lessors (including sublessors) agreeing to: (1) Subordinate to Lender Lessor's interest, if any, in this property; (2) Provide Lender written notice of default and reasonable opportunity to cure the default; and (3) Allow Lender the right to take possession and dispose of or remove the collateral.
        (2)  Lender must obtain a list of all equipment and fixtures that are collateral for the Loan. For items with a unit value of $5,000 or more, the list must include a description and serial number, if applicable.
        (3)  Lender must obtain an appropriate Uniform Commercial Code lien search evidencing all required lien positions. If UCC search is not available, another type of lien search may be substituted.

The following language must appear in all lien instruments including Mortgages, Deeds of Trust, and Security Agreements:

> *"The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners.  If the United States is seeking to enforce this document, then under SBA regulations:*
>
> *a)  When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.*
>
> *b)  Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes.  By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.*

*Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument."*

**Virginia Mandatory Provision**—Lender must include valid confession of judgment clauses in guarantees signed by Virginia residents.

I. **ADDITIONAL CONDITIONS**

1. **Insurance Requirements**

   Prior to disbursement, Lender must require Borrower to obtain the following insurance coverage and maintain this coverage for the life of Loan:

   a. **Flood Insurance.** Based on the Standard Flood Hazard Determination (FEMA Form 81-93):

      (1) If any portion of a building that is collateral for the Loan is located in a special flood hazard area, Lender must require Borrower to obtain flood insurance for the building under the NFIP.

      (2) If any equipment, fixtures, or inventory that is collateral for the loan ("Personal Property Collateral") is in a building any portion of which is located in a special flood hazard area and that building is collateral for the Loan, Lender must require Borrower to also obtain flood insurance for the Personal Property Collateral under the NFIP.

      (3) If any equipment, fixtures, or inventory that is collateral for the loan ("Personal Property Collateral") is in a building any portion of which is located in a special flood hazard area and that building is not collateral for the Loan, Lender must require Borrower to obtain available flood insurance for the Personal Property Collateral. Lender may waive SBA's requirement for flood insurance for the Personal Property Collateral when the building is not collateral for the Loan, but only if Lender, using prudent lending standards, puts a written determination into the loan file that flood insurance is either not available or not economically feasible.

      Insurance coverage must be in amounts equal to the lesser of the insurable value of the property or the maximum limit of coverage available. Insurance coverage must contain a <u>MORTGAGEE CLAUSE/LENDER'S LOSS PAYABLE CLAUSE</u> (or substantial equivalent) in favor of Lender. This clause must provide that any action or failure to act by the debtor or owner of the insured property will not invalidate the interest of Lender and SBA. (Borrower will be ineligible for any future SBA disaster assistance or business loan assistance if Borrower does not maintain any required flood insurance for the entire term of the Loan.)

   b. **Life Insurance**, satisfactory to Lender:

      (1) on the life of <u>Cory Mills</u> in the amount of <u>$5,000,000.00</u>.

      (2) on the life of <u>Rana Alsaadi</u> in the amount of <u>$5,000,000.00</u>.

      Lender must obtain a collateral assignment of each policy with Lender as assignee and Lender must also obtain acknowledgment of the assignment by the Home Office of the Insurer. Lender must assure that Borrower pays the premium on the policy.

   c. **Liability Insurance** in an amount and with an insurance company satisfactory to Lender.

2. **Borrower, Guarantor and Operating Company Documents**

   a.  Prior to closing, Lender must obtain from Borrower, Guarantor and Operating Company a current copy of each of the following as appropriate:

     (1)  **Corporate Documents**—Articles or Certificate of Incorporation (with amendments), any By-laws, Certificate of Good Standing (or equivalent), Corporate Borrowing Resolution, and, if a foreign corporation, current authority to do business within this state.

     (2)  **Limited Liability Company (LLC) Documents**—Articles of Organization (with amendments), Fact Statement or Certificate of Existence, Operating Agreement, Borrowing Resolution, and evidence of registration with the appropriate authority.

     (3)  **General Partnership Documents**—Partnership Agreement, Certificate as to Partners, and Certificate of Partnership or Good Standing (or equivalent), as applicable.

     (4)  **Limited Partnership Documents**—Partnership Agreement, Certificate as to Partners, and Certificate of Partnership or Good Standing (or equivalent), as applicable, Certificate of Limited Partnership, and evidence of registration with the appropriate authority.

     (5)  **Limited Liability Partnership (LLP) Documents**—Partnership Agreement, Certificate as to Partners, Certificate of Partnership or Good Standing (or equivalent) as applicable, and evidence of registration with the appropriate authority.

     (6)  **Trustee Certification**—A Certificate from the trustee warranting that:

       (a)  The trust will not be revoked or substantially amended for the term of the Loan without the consent of SBA;

       (b)  The trustee has authority to act;

       (c)  The trust has the authority to borrow funds, guarantee loans, and pledge trust assets;

       (d)  If the trust is an Eligible Passive Company, the trustee has authority to lease the property to the Operating Company;

       (e)  There is nothing in the trust agreement that would prevent Lender from realizing on any security interest in trust assets;

       (f)  The trust agreement has specific language confirming the above; and

       (g)  The trustee has provided and will continue to provide SBA with a true and complete list of all trustors and donors.

     (7)  **Trade Name**—Documentation that Borrower has complied with state requirements for registration of Borrower's trade name (or fictitious name), if one is used.

   b.  Prior to closing, Lender must obtain from Borrower and Operating Company:

     (1)  **Ownership**—Evidence that ownership and management have not changed without Lender's approval since the application was submitted.

---

3.   **Operating Information**

Prior to any disbursement of Loan proceeds, Lender must obtain:

a.   **Verification of Financial Information**—Lender must submit IRS Form 4506-T (SBA version) to the Internal Revenue Service to obtain federal income tax information on Borrower, or the Operating Company if the Borrower is an EPC, for the last 3 years (unless Borrower or Operating Company is a start-up business).  If the business has been operating for less than 3 years, lender must obtain the information for all years in operation.  This requirement does not include tax information for the most recent fiscal year if the fiscal year-end is within 6 months of the date SBA received the application.  If the applicant has filed an extension  for the most recent fiscal year, Lender must obtain a copy of the extension along with evidence of payment of estimated taxes.  Lender must compare the tax data received from the IRS with the financial data or tax returns submitted with the Loan application, and relied upon in approving the Loan.  Borrower must resolve any significant differences to the satisfaction of Lender and SBA.  Failure to resolve differences may result in cancellation of the Loan.

If the Loan involves a change of ownership, Lender must verify financial information provided by the seller of the business in the same manner as above.

If the IRS responds and the transcript reflects "Record not Found" for any tax year, Lender must follow the procedures detailed in SOP 50 10 to determine what steps must be taken to satisfy the SBA tax verification requirement.

If Lender does not receive a response from the IRS or copy of the tax transcript within 10 business days of submitting the IRS Form 4506-T, then Lender may close and disburse the loan provided that Lender sends a second request following precisely the procedures detailed in SOP 50 10 and Lender performs the verification and resolves any significant differences discovered, even if the Loan is fully disbursed.

b.   **Authority to Conduct Business**—Evidence that the Borrower has an Employer Identification Number and all insurance, licenses, permits and other approvals necessary to lawfully operate the business.

c.   **Flood Hazard Determination**—A completed Standard Flood Hazard Determination (FEMA Form 81-93).

4.   **Injection**

Lender must obtain evidence that prior to disbursement:

a.   **Cash Injection**— Note required

5.   **Appraisal**

Prior to disbursement, and in accordance with SOP 50 10, Lender must obtain:

a.   **Real Estate Appraisal** on the real property located at 1198 Windrock Dr., McLean VA 22102, showing a fair market value of at least $4,200,000.00.

6.   **Certifications and Agreements**

a.   Prior to disbursement, Lender must require Borrower to certify that:

---

(1) **Receipt of Authorization**—Borrower has received a copy of this Authorization from Lender, and acknowledges that:
    (a) The Authorization is <u>not</u> a commitment by Lender to make a loan to Borrower;
    (b) The Authorization is between Lender and SBA and creates no third party rights or benefits to Borrower;
    (c) The Note will require Borrower to give Lender prior notice of intent to prepay.
    (d) If Borrower defaults on Loan, SBA may be required to pay Lender under the SBA guarantee. SBA may then seek recovery of these funds from Borrower. Under SBA regulations, 13 CFR Part 101, Borrower may not claim or assert against SBA any immunities or defenses available under local law to defeat, modify or otherwise limit Borrower's obligation to repay to SBA any funds advanced by Lender to Borrower.
    (e) Payments by SBA to Lender under SBA's guarantee will not apply to the Loan account of Borrower, or diminish the indebtedness of Borrower under the Note or the obligations of any personal guarantor of the Note.

(2) There has been no adverse change in Borrower's (and Operating Company) financial condition, organization, operations, or fixed assets since the date the Loan application was signed.

(3) **Child Support**—No principal who owns at least 50% of the ownership or voting interest of the company is delinquent more than 60 days under the terms of any (a) administrative order, (b) court order, or (c) repayment agreement requiring payment of child support.

(4) **Current Taxes**—Borrower is current (or will be current with any loan proceeds specified for eligible tax payments) on all federal, state, and local taxes, including but not limited to **Environmental**—For any real estate pledged as collateral for the Loan or where the Borrower is conducting business operations (collectively "the Property"):
    (a) At the time Borrower submitted the Loan application, Borrower was in compliance with all local, state, and federal environmental laws and regulations pertaining to reporting or clean-up of any hazardous substance, hazardous waste, petroleum product, or any other pollutant regulated by state or federal law as hazardous to the environment (Contaminant), and regarding any permits needed for the creation, storage, transportation or disposal of any Contaminant;
    (b) Borrower will continue to comply with these laws and regulations;
    (c) Borrower, and all of its principals, has no knowledge of the actual or potential existence of any Contaminant that exists on, at, or under the Property, including groundwater, other than what was disclosed in connection with the Environmental Investigation of the Property;
    (d) Until full repayment of the Loan, Borrower will promptly notify Lender and SBA if it knows or suspects that there has been, or may have been, a release of a Contaminant in, at, or under the Property, including groundwater, or if Borrower or such Property are subject to any investigation or enforcement action by any federal, state, or local environmental agency (Agency) pertaining to any Contaminant on, at, or under such Property, including groundwater;
    (e) As to any Property owned by Borrower, Borrower indemnifies, and agrees to defend and hold harmless, Lender and SBA, and any assigns or successors in interest which take title to the Property, from and against all liabilities, damages, fees, penalties or losses arising out of any demand, claim or suit by any Agency or any other party relating to any Contaminant found on, at, or under the Property, including groundwater, regardless of whether such Contaminant

resulted from Borrower's operations.  (Lender or SBA may require Borrower to execute a separate indemnification agreement).

(5) **Environmental**—For any real estate pledged as collateral for the Loan or where the Borrower is conducting business operations (collectively "the Property"):

   (a) At the time Borrower submitted the Loan application, Borrower was in compliance with all local, state, and federal environmental laws and regulations pertaining to reporting or clean-up of any hazardous substance, hazardous waste, petroleum product, or any other pollutant regulated by state or federal law as hazardous to the environment (Contaminant), and regarding any permits needed for the creation, storage, transportation or disposal of any Contaminant;

   (b) Borrower will continue to comply with these laws and regulations;

   (c) Borrower, and all of its principals, has no knowledge of the actual or potential existence of any Contaminant that exists on, at, or under the Property, including groundwater, other than what was disclosed in connection with the Environmental Investigation of the Property;

   (d) Until full repayment of the Loan, Borrower will promptly notify Lender and SBA if it knows or suspects that there has been, or may have been, a release of a Contaminant in, at, or under the Property, including groundwater, or if Borrower or such Property are subject to any investigation or enforcement action by any federal, state, or local environmental agency (Agency) pertaining to any Contaminant on, at, or under such Property, including groundwater;

   (e) As to any Property owned by Borrower, Borrower indemnifies, and agrees to defend and hold harmless, Lender and SBA, and any assigns or successors in interest which take title to the Property, from and against all liabilities, damages, fees, penalties or losses arising out of any demand, claim or suit by any Agency or any other party relating to any Contaminant found on, at, or under the Property, including groundwater, regardless of whether such Contaminant resulted from Borrower's operations.  (Lender or SBA may require Borrower to execute a separate indemnification agreement).

(6) **Environmental**—For any real estate pledged as collateral for the Loan or where the Borrower is conducting business operations (collectively "the Property"):

   (a) At the time Borrower submitted the Loan application, Borrower was in compliance with all local, state, and federal environmental laws and regulations pertaining to reporting or clean-up of any hazardous substance, hazardous waste, petroleum product, or any other pollutant regulated by state or federal law as hazardous to the environment (Contaminant), and regarding any permits needed for the creation, storage, transportation or disposal of any Contaminant;

   (b) Borrower will continue to comply with these laws and regulations;

   (c) Borrower, and all of its principals, has no knowledge of the actual or potential existence of any Contaminant that exists on, at, or under the Property, including groundwater, other than what was disclosed in connection with the Environmental Investigation of the Property;

   (d) Until full repayment of the Loan, Borrower will promptly notify Lender and SBA if it knows or suspects that there has been, or may have been, a release of a Contaminant in, at, or under the Property, including groundwater, or if Borrower or such Property are subject to any investigation or enforcement action by any federal, state, or local environmental agency (Agency) pertaining to any Contaminant on, at, or under such Property, including groundwater;

   (e) As to any Property owned by Borrower, Borrower indemnifies, and agrees to defend and hold harmless, Lender and SBA, and any assigns or successors in

interest which take title to the Property, from and against all liabilities, damages, fees, penalties or losses arising out of any demand, claim or suit by any Agency or any other party relating to any Contaminant found on, at, or under the Property, including groundwater, regardless of whether such Contaminant resulted from Borrower's operations. (Lender or SBA may require Borrower to execute a separate indemnification agreement).

(7) **Environmental**—For any real estate pledged as collateral for the Loan or where the Borrower is conducting business operations (collectively "the Property"):

   (a) At the time Borrower submitted the Loan application, Borrower was in compliance with all local, state, and federal environmental laws and regulations pertaining to reporting or clean-up of any hazardous substance, hazardous waste, petroleum product, or any other pollutant regulated by state or federal law as hazardous to the environment (Contaminant), and regarding any permits needed for the creation, storage, transportation or disposal of any Contaminant;

   (b) Borrower will continue to comply with these laws and regulations;

   (c) Borrower, and all of its principals, has no knowledge of the actual or potential existence of any Contaminant that exists on, at, or under the Property, including groundwater, other than what was disclosed in connection with the Environmental Investigation of the Property;

   (d) Until full repayment of the Loan, Borrower will promptly notify Lender and SBA if it knows or suspects that there has been, or may have been, a release of a Contaminant in, at, or under the Property, including groundwater, or if Borrower or such Property are subject to any investigation or enforcement action by any federal, state, or local environmental agency (Agency) pertaining to any Contaminant on, at, or under such Property, including groundwater;

   (e) As to any Property owned by Borrower, Borrower indemnifies, and agrees to defend and hold harmless, Lender and SBA, and any assigns or successors in interest which take title to the Property, from and against all liabilities, damages, fees, penalties or losses arising out of any demand, claim or suit by any Agency or any other party relating to any Contaminant found on, at, or under the Property, including groundwater, regardless of whether such Contaminant resulted from Borrower's operations. (Lender or SBA may require Borrower to execute a separate indemnification agreement).

(8) income taxes, payroll taxes, real estate taxes, and sales taxes.

b. Prior to disbursement, Lender must require Borrower to certify that it will:

(1) **Reimbursable Expenses**—Reimburse Lender for expenses incurred in the making and administration of the Loan.

(2) **Books, Records, and Reports**—

   (a) Keep proper books of account in a manner satisfactory to Lender;

   (b) Furnish year-end statements to Lender within 120 days of fiscal year end;

   (c) Furnish additional financial statements or reports whenever Lender requests them;

   (d) Allow Lender or SBA, at Borrower's expense, to:

      [1] Inspect and audit books, records and papers relating to Borrower's financial or business condition; and

      [2] Inspect and appraise any of Borrower's assets; and

      [3] Allow all government authorities to furnish reports of examinations, or any records pertaining to Borrower, upon request by Lender or SBA.

---

SBA Loan Number: 28433370-07

SBA Loan Name: Pacem Solution International LLC

Page 11

(7a Wizard 2011 (W7))

      (3)  **Equal Opportunity**—Post SBA Form 722, Equal Opportunity Poster, where it is clearly visible to employees, applicants for employment and the general public.

      (4)  **American-made Products**—To the extent practicable, purchase only American-made equipment and products with the proceeds of the Loan.

      (5)  **Taxes**—Pay all federal, state, and local taxes, including income, payroll, real estate and sales taxes of the business when they come due.

c.    Lender must require Borrower to certify that it will not, without Lender's prior written consent:

      (1)  **Distributions**—Make any distribution of company assets that will adversely affect the financial condition of Borrower.

      (2)  **Ownership Changes**—Change the ownership structure or interests in the business during the term of the Loan.

      (3)  **Transfer of Assets**—Sell, lease, pledge, encumber (except by purchase money liens on property acquired after the date of the Note), or otherwise dispose of any of Borrower's property or assets, except in the ordinary course of business.

<div align="center">

ADMINISTRATOR
SMALL BUSINESS ADMINISTRATION

</div>



_____     August 8, 2018

By:    Kwame Asiedu,                            Date
      a Preferred Lender, as Lender and as an agent of and on behalf of the SBA for the purpose of executing this Authorization.

---

**IMPORTANT NOTICE**

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION THAT CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

<u>TERM NOTE</u>

$5,000,000                                                                                        August 10, 2018

FOR VALUE RECEIVED, PACEM SOLUTION INTERNATIONAL LLC, a limited liability company organized under the laws of the Commonwealth of Virginia (the "Borrower"), promises to pay to the order of ACCESS NATIONAL BANK, a national banking association, its successors and assigns (the "Lender"), the principal sum of FIVE MILLION DOLLARS ($5,000,000) (the "Principal Sum"), together with interest thereon at the rate or rates hereinafter provided, in accordance with the following:

1.      <u>Interest</u>.

Commencing as of the date hereof and continuing until repayment in full of all sums due hereunder, the unpaid Principal Sum shall bear interest at the fluctuating prime rate of interest established and declared by the Lender from time to time (the "Prime Rate") plus two percent (2%) per annum.  The Prime Rate does not necessarily represent the lowest rate of interest charged by the Lender to borrowers.  The rate of interest charged under this Note shall change immediately and contemporaneously with any change in the Prime Rate.

All interest payable under the terms of this Note shall be calculated on the basis of a 360-day year and the actual number of days elapsed.

2.      <u>Payments and Maturity</u>.

The unpaid Principal Sum, together with interest thereon at the rate or rates provided above, shall be payable as follows:

(a)      Commencing on September 1, 2018, and continuing on the first day of each month thereafter (each, a "Payment Date") the Borrower shall make monthly payments of interest only on the unpaid Principal Sum;

(b)      Commencing on March 1, 2019, and continuing on each Payment Date thereafter until September 1, 2019 (the "Term Maturity Date"), the Borrower shall make equal monthly payments of principal which will fully repay the unpaid Principal Sum in six (6) installments.

(c)      Unless sooner paid, the unpaid Principal Sum, together with interest accrued and unpaid thereon, shall be due and payable in full on the Term Maturity Date.

Borrower hereby authorizes Lender to automatically deduct from any of Borrower's accounts the amount of each payment of principal (including without limitation the principal payment due on the final maturity date) and/or interest on the dates such payments become due. If the funds in the account are insufficient to cover any payment, Lender shall not be obligated to advance funds to cover the payment. At any time and for any reason, Borrower or Lender may voluntarily terminate automatic payments as provided in this paragraph.

3.     Default Interest.

Upon the occurrence of an Event of Default (as hereinafter defined), the unpaid Principal Sum shall bear interest thereafter at the Post-Default Rate set forth in the Financing Agreement.

4.     Late Charges.

If the Borrower shall fail to make any payment under the terms of this Note within five (5) Business days after the date such payment is due, the Borrower shall pay to the Lender on demand a late charge equal to five percent (5%) of such payment.

5.     Application and Place of Payments.

All payments, made on account of this Note shall be applied first to the payment of any late charge then due hereunder, second to the payment of any prepayment fee then due hereunder, third to the payment of accrued and unpaid interest then due hereunder, and the remainder, if any, shall be applied to the unpaid Principal Sum, with application first made to all principal installments then due hereunder, next to the outstanding principal balance due and owing on the Term Maturity Date and thereafter to the principal payments due in the inverse order of maturities. Notwithstanding any provision contained herein to the contrary, any portion of a permitted partial prepayment applied to the unpaid Principal Sum shall be applied first to the outstanding principal balance due and owing on the Term Maturity Date and thereafter to the principal payments due in the inverse order of maturities. All payments on account of this Note shall be paid in lawful money of the United States of America in immediately available funds during regular business hours of the Lender at its principal office or at such other times and places as the Lender may at any time and from time to time designate in writing to the Borrower.

6.     Prepayment.

The Borrower may prepay the Principal Sum in whole or in part upon twenty one (21) days prior written notice to the Lender without premium or penalty.

7.     Financing Agreement and Other Financing Documents.

This Note is the "Term Note" described in a Financing and Security Agreement of even date herewith by and between the Borrower and the Lender (as amended, modified, restated, substituted, extended and renewed at any time and from time to time, the "Financing Agreement"). The indebtedness evidenced by this Note is included within the meaning of the term "Obligations" as defined in the Financing Agreement. The term "Financing Documents" as used in this Note shall mean collectively this Note, the Financing Agreement and any other instrument, agreement, or document previously, simultaneously, or hereafter executed and

35804483v3 221027.000071

delivered by the Borrower and/or any other person, singularly or jointly with any other person, evidencing, securing, guaranteeing, or in connection with the Principal Sum, this Note and/or the Financing Agreement. Capitalized terms used but not defined herein have the meanings given to them in the Financing Agreement.

8.    Security.

This Note is secured as provided in the Financing Agreement.

9.    Events of Default.

The occurrence of any one or more of the following events shall constitute an event of default (individually, an "Event of Default" and collectively, the "Events of Default") under the terms of this Note:

(a)    The failure of the Borrower to pay to the Lender when due any and all amounts payable by the Borrower to the Lender under the terms of this Note; or

(b)    The occurrence of an event of default (as defined therein) under the terms and conditions of any of the other Financing Documents.

10.   Remedies.

Upon the occurrence of an Event of Default, at the option of the Lender, all amounts payable by the Borrower to the Lender under the terms of this Note shall immediately become due and payable by the Borrower to the Lender without notice to the Borrower or any other person, and the Lender shall have all of the rights, powers, and remedies available under the terms of this Note, any of the other Financing Documents and all applicable laws.  The Borrower and all endorsers, guarantors, and other parties who may now or in the future be primarily or secondarily liable for the payment of the indebtedness evidenced by this Note hereby severally waive presentment, protest and demand, notice of protest, notice of demand and of dishonor and non-payment of this Note and expressly agree that this Note or any payment hereunder may be extended from time to time without in any way affecting the liability of the Borrower, guarantors and endorsers.

11.   Confessed Judgment.

(a)    The Borrower hereby appoints and designates Mary C. Zinsner, Esquire, the Borrower's duly constituted attorney-in-fact to confess judgment against the Borrower pursuant to the provisions hereof and of Section 8.01-432 of the Code of Virginia of 1950, as amended, which judgment shall be confessed in the Clerk's Office of the Circuit Court of Fairfax County, Virginia.  The Borrower shall, upon the Lender's request, name such additional or alternative persons designated by the Lender as the Borrower's duly constituted attorney or attorneys-in-fact to confess judgment against the Borrower in accordance with the terms hereof. Furthermore, upon the Lender's request, the Borrower shall agree to the designation of any additional circuit courts in the Commonwealth of Virginia in which judgment may be confessed against the Borrower.

35804483v3 221027.000071

(b)     Upon the occurrence of an Event of Default, the Borrower hereby authorizes the above designated attorney-in-fact or any successor named therefor to confess judgment against the Borrower for the amount of the unpaid Principal Sum, all interest accrued and unpaid thereon, and all other amounts payable by the Borrower to the Lender under the terms of this Note or any of the other Financing Documents, together with court costs and attorneys' fees of ten percent (10%) of the unpaid Principal Sum and interest then due hereunder, but in no event in excess of Fifty Thousand Dollars ($50,000).  By its acceptance of this Note, the Lender agrees that in the event the Lender exercises at any time its right to confess judgment under this Note, the Lender shall use its best efforts to obtain legal counsel who will charge the Lender for its services on an hourly basis, at its customary hourly rates and only for the time and reasonable expenses incurred.  In no event shall the Lender enforce the legal fees portion of a confessed judgment award for an amount in excess of the fees and expenses actually charged to the Lender for services rendered by its counsel in connection with such confession of judgment and/or the collection of sums owed to the Lender.  In the event the Lender receives, through execution upon a confessed judgment, payments on account of attorneys' fees in excess of such actual attorneys' fees and expenses incurred by the Lender, then, after full repayment and satisfaction of all of the obligations under and in connection with this Note, the Financing Agreement and all of the other Financing Documents, the Lender shall refund such excess amount to the Borrower.  The Borrower hereby releases, to the extent permitted by applicable law, all errors and all rights of exemption, appeal, stay of execution, inquisition, and other rights to which the Borrower may otherwise be entitled under the laws of the United States of America or of any state or possession of the United States of America now in force or which may hereafter be enacted.  The authority and power to appear for and enter judgment against the Borrower shall not be exhausted by one or more exercises thereof or by any imperfect exercise thereof and shall not be extinguished by any judgment entered pursuant thereto.  Such authority may be exercised on one or more occasions or from time to time in the same or different jurisdictions as often as the Lender shall deem necessary or desirable, for all of which this Note shall be a sufficient warrant.

(c)     The Borrower represents and warrants that it is not a natural person and that the obligations evidenced by this Note were not incurred for personal, family or household purposes.

12.   Expenses.

The Borrower promises to pay to the Lender on demand by the Lender all costs and expenses incurred by the Lender in connection with the collection and enforcement of this Note, including, without limitation, reasonable attorneys' fees and expenses and all court costs.

13.   Notices.

Any notice, request, or demand to or upon the Borrower or the Lender shall be deemed to have been properly given or made when delivered in accordance with Section 8.1 of the Financing Agreement.

35804483v3 221027.000071

14.   Miscellaneous.

Each right, power, and remedy of the Lender as provided for in this Note or any of the other Financing Documents, or now or hereafter existing under any applicable law or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power, or remedy provided for in this Note or any of the other Financing Documents or now or hereafter existing under any applicable law, and the exercise or beginning of the exercise by the Lender of any one or more of such rights, powers, or remedies shall not preclude the simultaneous or later exercise by the Lender of any or all such other rights, powers, or remedies. No failure or delay by the Lender to insist upon the strict performance of any term, condition, covenant, or agreement of this Note or any of the other Financing Documents, or to exercise any right, power, or remedy consequent upon a breach thereof, shall constitute a waiver of any such term, condition, covenant, or agreement or of any such breach, or preclude the Lender from exercising any such right, power, or remedy at a later time or times. By accepting payment after the due date of any amount payable under the terms of this Note, the Lender shall not be deemed to waive the right either to require prompt payment when due of all other amounts payable under the terms of this Note or to declare an Event of Default for the failure to effect such prompt payment of any such other amount. No course of dealing or conduct shall be effective to amend, modify, waive, release, or change any provisions of this Note.

15.   Partial Invalidity.

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be construed as if such invalid, illegal, or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal, or unenforceable.

16.   Captions.

The captions herein set forth are for convenience only and shall not be deemed to define, limit, or describe the scope or intent of this Note.

17.   Applicable Law.

The Borrower acknowledges and agrees that this Note shall be governed by the laws of the Commonwealth of Virginia, even though for the convenience and at the request of the Borrower, this Note may be executed elsewhere.

18.   Consent to Jurisdiction.

The Borrower irrevocably submits to the jurisdiction of any state or federal court sitting in the Commonwealth of Virginia over any suit, action, or proceeding arising out of or relating to this Note or any of the other Financing Documents. The Borrower irrevocably waives, to the fullest extent permitted by law, any objection that the Borrower may now or hereafter have to the laying of venue of any such suit, action, or proceeding brought in any such court and any claim that any such suit, action, or proceeding brought in any such court has been brought in an

inconvenient forum.  Final judgment in any such suit, action, or proceeding brought in any such court shall be conclusive and binding upon the Borrower and may be enforced in any court in which the Borrower is subject to jurisdiction by a suit upon such judgment, provided that service of process is effected upon the Borrower as provided in this Note or as otherwise permitted by applicable law.

19.     Service of Process.

The Borrower hereby consents to process being served in any suit, action, or proceeding instituted in connection with this Note by (a) the mailing of a copy thereof by certified mail, postage prepaid, return receipt requested, to the Borrower and (b) serving a copy thereof upon Joseph E. Schmitz, Esq., 2941 Fairview Park Drive, Suite 550, Falls Church, Virginia 22042, the agent hereby designated and appointed by the Borrower as the Borrower's agent for service of process.  The Borrower irrevocably agrees that such service shall be deemed in every respect effective service of process upon the Borrower in any such suit, action or proceeding, and shall, to the fullest extent permitted by law, be taken and held to be valid personal service upon the Borrower.  Nothing in this Section shall affect the right of the Lender to serve process in any manner otherwise permitted by law or limit the right of the Lender otherwise to bring proceedings against the Borrower in the courts of any jurisdiction or jurisdictions.

20.     WAIVER OF TRIAL BY JURY.

**THE BORROWER AND THE LENDER HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH THE BORROWER AND THE LENDER MAY BE PARTIES, ARISING OUT OF OR IN ANY WAY PERTAINING TO (A) THIS NOTE OR (B) THE FINANCING DOCUMENTS.  IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS NOTE.**

**THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE BORROWER, AND THE BORROWER HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT.  THE BORROWER FURTHER REPRESENTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.**

35804483v3 221027.000071

IN WITNESS WHEREOF, the Borrower has caused this Note to be executed under seal by its duly authorized members as of the date first written above.

WITNESS:

Noorah Z Hayes

PACEM SOLUTION INTERNATIONAL LLC

By: _____ (SEAL)
Name: Cory Mills
Title: CEO

[Signature Page to Term Note]

**IMPORTANT NOTICE:**

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

## FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT (this "**Agreement**") is made effective as of this 31st day of March, 2021 (the "**Effective Date**") by and among Pacem Solution International LLC, a Virginia limited liability company (the "**Borrower**"), Pacem Estate Holdings LLC, a Florida limited liability company (the "**Mortgagor**"), Cory L. Mills, a Virginia resident ("**Mr. Mills**"), Rana Z. Al Saadi, a Virginia resident ("**Mrs. Al Saadi**"), and Atlantic Union Bank, successor-by-merger to Access National Bank (the "**Lender**").

## R E C I T A L S:

R1.     On or about August 10, 2018, the Lender made a commercial term loan to the Borrower in the original principal amount of $5,000,000 (the "**Loan**"), as is evidenced by, among other things, (a) a U.S. Small Business Administration Note executed by the Borrower and payable to the order of the Lender, as amended by (i) an Amendment to Promissory Note dated March 21, 2019, (ii) a Second Amendment to Promissory Note dated May 17, 2019, (iii) a Third Amendment to Promissory Note dated July 30, 2019, (iv) a Fourth Amendment to Promissory Note dated November 25, 2019, (v) a Fifth Amendment to Promissory Note and Waiver Agreement dated March 19, 2020, and (vi) a Sixth Amendment to Promissory Note and Waiver Agreement dated May 22, 2020 (as so amended, the "**Note**")[1] and (b) a Financing and Security Agreement, dated August 10, 2018, by and between the Borrower and the Lender (the "**Financing and Security Agreement**").

R2.     In order to induce the Lender to make the Loan, Mr. Mills and Mrs. Al Saadi (together, the "**Guarantors**") unconditionally and irrevocably guaranteed the payment and performance of the Loan pursuant to the terms and conditions of various guaranty agreements executed and delivered by the Guarantors (or either of them) for the benefit of the Lender (collectively, the "**Guaranties**").

R3.     The indebtedness due and owing under the Loan is secured by, among other things, (a) a first priority, duly perfected deed of trust lien in, to and against certain real property and the improvements thereon commonly known as 1198 Windrock Drive, McLean, Virginia 22102 (the "**Virginia Property**"), pursuant to the terms and conditions of, and as more fully described in, a Deed of Trust, dated August 10, 2018, executed by the Guarantors for the benefit of the Lender and recorded with the Land Records Division of the Fairfax Circuit Court at Book 25506, Page 1567 (the "**Virginia Deed of Trust**"), (b) a first priority, duly perfected security interest in, to and against substantially all tangible and intangible assets of the Borrower (collectively, the "**Personal Property**"), pursuant to the terms and conditions of the Financing and Security Agreement and that certain UCC-1 Financing Statement filed with the Commonwealth of Virginia State Corporation

---

[1] Pursuant to the Sixth Amendment to Promissory Note and Waiver Agreement dated May 22, 2020 (the "**Sixth Amendment to Note**"), the maturity of the Loan was extended to December 1, 2020, and the unpaid balance of the Loan was amortized over six (6) monthly payments of principal and interest in excess of $775,000 each.