## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☐ No

Not applicable

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☐ No   17. If deductible, state amount.

Not applicable

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

Not applicable

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☐ No

Not applicable

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) BACK

**Form 95 Attachment**

The primary basis of the claim, pursuant to 13 CFR §114.102, is that the SBA had a statutory duty under the 2020 Coronavirus Aid, Relief, and Economic Security Act, aka the CARES Act, to pay six subsidy payments in connection with the $5,000,000 SBA loan of Pacem Solution International LLC ("PACEM), Loan No. 2843337007, two of which subsidy payments the SBA made for April 2020 and May 2020 respectively.  But for an erroneous determination of ineligibility, which PACEM only learned about when the SBA National Ombudsman Office e-mailed the attached May 7, 2021, internal SBA Memo (Tab A) to PACEM under cover of a May 19, 2021, letter (Tab B), the SBA should have paid the third, fourth, fifth and sixth subsidy payments for June-September 2020, totaling $3,100,000 in principal plus accrued interest as of June 1, 2020, July 1, 2020, August 1, 2020, and September 1, 2020, respectively, with late penalties through December 31, 2020 (after which PACEM's Lender transmitted a Notice of Default, which led to a forbearance agreement and ultimately to refinancing Pacem's SBA loan[1]), for a running grand total of $3,914,303.23 as of June 1, 2022,[2] broken down as follows:

- $3,100,000.00 in principal (4 x $775,000.00);
- $221,126.85 in late fees (through December 31, 2020); and
- $593,176.39 in interest (through June 1, 2022).

The secondary basis for this claim is the SBA's failure to provide Pacem, related to the above erroneous determination of ineligibility, with "notice and an opportunity to be heard . . . at a meaningful time and in a meaningful manner."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004).[3]

Under Section 1112 of the CARES Act (Tab D), the SBA had and still has a statutory duty to pay those four remaining subsidy payments.  For no fault of PACEM, the SBA breached its statutory duty to make those final payments, as a direct result of which PACEM suffered damages.  Accordingly, the SBA should promptly pay PACEM $3,914,303.23, which is the sum of the final four CARES Act subsidy payments, "principal, interest, and any associated fees that are owed," for June-September 2020, with continuing interest calculated through June 1, 2022.

---

[1] According to PACEM's SBA Borrower's Account, the June 1, 2020, payment amount was $850,544.05, apparently the $775,000 principal amount specified in the "SIXTH AMENDMENT," plus $75,544.05 in accrued interest.  According to the November 10, 2020, "FINAL PAYMENT NOTICE," the "Past Due" on that date was $4,765,281.25, with "Int Due" of $20,343.75, "Lt Chg" of $180,168.93, for a total due of $4,965,793.93.

[2] *See* PACEM Internal Accounting Spreadsheet, through June 1, 2022, at Tab C.  This grand total includes continuing interest incurred by Pacem since January 1, 2021, through June 1, 2022. PACEM reserves its right to additional daily interest of $990.28 from June 1, 2022, until paid, as interest "under a contract or Act of Congress expressly providing for payment thereof."  28 U.S.C. § 2516(a); *cf.* 48 CFR § 33.208(a)(2) ("Interest on claims . . . The Government shall pay interest on a contractor's claim on the amount found due and unpaid from the date that . . . Payment otherwise would be due . . . until the date of payment.").

[3] *See* "Count II: Due Process," *infra*.

1

The PACEM February 12, 2021, correspondence to the SBA Ombudsman that resulted in the May 19, 2021, SBA Ombudsman letter back to PACEM (Tab B) is at Tab E. In that correspondence, PACEM requested, "as soon as possible a point of contact within SBA, by name and contact information, whom we can contact to ensure that the additional four subsidy payments under Section 1112 of the Cares Act are promptly paid . . . ."

Section 1112(c) of the CARES Act provides:

> The Administrator shall pay the principal, interest, and any associated fees that are owed on a covered loan in a regular servicing status— (A) with respect to a covered loan made before the date of enactment of this Act and not on deferment, for the 6-month period beginning with the next payment due on the covered loan; (B) with respect to a covered loan made before the date of enactment of this Act and on deferment, for the 6-month period beginning with the next payment due on the covered loan after the deferment period; and (C) with respect to a covered loan made during the period beginning on the date of enactment of this Act and ending on the date that is 6 months after such date of enactment, for the 6-month period beginning with the first payment due on the covered loan.

In its May 7, 2021, Memo, the SBA explains that:

> Agency records indicate that Pacem Solutions International, LLC has, an outstanding International Trade loan that was fully funded August 10, 2018 for $5,000,000. The loan currently and has an outstanding balance of $4,650,000. The loan has been in default since late April 2020, which was reported to the Agency by the Lender [Atlantic Union Bank] in May 2020. The current status of the loan is "Disbursed in Liquidation".

> Mr. Schmitz states that SBA did not make four of the six monthly subsidy payments to the Borrower's lender to credit the outstanding loan. Agency records indicate that subsidy payments were made for April 2020 and May of 2020. However, once the Borrower was reported to be in default, the Borrower ceased to be in regular servicing status as required under the CARES Act. As a result, the Borrower was ineligible for the remaining four subsidy payments that would have covered June through September of 2020.

Contrary to the assertion that, "The loan has been in default since late April 2020, which was reported to the Agency by the Lender in May 2020" (Tab A), Pacem's Lender has affirmatively denied notifying the SBA that PACEM was in default in May 2020.

It was not until early 2021, long after the four final subsidy payments should have been made, when the Lender put PACEM on notice that it was in default. Moreover, even if the Lender had notified SBA of a default in May 2020, which the Lender denies, SBA guidance published in April 2020 indicated that once a loan is eligible for Section 1112 subsidy payments, two of which were paid in April and May 2020, a subsequent default does not affect eligibility: "a loan in 'regular servicing status' does not include any loan that has been moved from 'regular

2

servicing' into 'liquidation' status, or any loan that should have been moved pursuant to SBA Loan Program Requirements from 'regular servicing' into 'liquidation' status prior to the first payment due date covered by section 1112." SBA Procedural Notice 5000-20020, "Implementation of Section 1112 of the CARES Act, Subsidy for Certain Loan Payments, for the 7(a) and 504 Loan Programs," ¶A(2)(b), April 16, 2020 (Tab F).

### Factual Chronology

2018-08-10    PACEM, through Access National Bank. signs promissory note for $5,000,000 SBA international trade loan in form of "FINANCING AND SECURITY AGREEMENT" (Tab G), subsequently designated SBA Loan No. 2843337007.

2019-05-20    Access National Bank merges with Union Bank & Trust, forming Atlantic Union Bank ("AUB"), which continues to service PACEM's SBA Loan No. 2843337007.

2020-03-19    PACEM and AUB conclude, "FIFTH AMENDMENT TO PROMISSORY NOTE AND WAIVER AGREEMENT" (Tab H), agreeing that PACEM would pay interest only on the outstanding balance of $4,650,000, "payable on first day of of each month hereafter until maturity; and . . . Unless sooner paid, the unpaid principal sum of the Note, together with all accrued and unpaid interest shall be due and payable in full on June 15, 2020."

2020-03-27    The President signs the CARES Act into law.

2020-04-16    SBA issues Procedural Guidance 5000-20020, "Implementation of Section 1112 of the CARES Act, Subsidy for Certain Loan Payments, for the 7(a) and 504 Loan Programs."

2020-05-22    PACEM and AUB conclude, "SIXTH AMENDMENT TO PROMISSORY NOTE AND WAIVER AGREEMENT" (Tab I), agreeing to the following payment schedule: "The unpaid principal balance of the Note [i.e., $4,650,000] shall be payable in six (6) equal monthly installments of principal each in the amount of $775,000, plus interest on the unpaid principal balance, commencing on June 1, 2020 and on the first day of each month hereafter until maturity," and "Unless sooner paid, the unpaid principal sum of the Note, together with all accrued and unpaid interest shall be due and payable in full on December 1, 2020."

2020-06-01    SBA pays Pacem's Lender Cares Act subsidy payments for April and May 2020.

2020-07-01    SBA fails to pay Cares Act subsidy payment for June 2020.

2020-08-01    SBA fails to pay Cares Act subsidy payment for July 2020.

2020-09-01    SBA fails to pay Cares Act subsidy payment for August 2020.

2020-10-01    SBA fails to pay Cares Act subsidy payment for September 2020.

2020-11-04    Pacem's Lender confirms that SBA has paid, without explanation, neither principal nor interest CARES Act subsidy payments for June-September 2020.

3

2020-11-10     Pacem's Lender "Final Payment Notice."

2021-01-27     Counsel for Pacem's Lender sends Pacem "Notice of Default."

2021-02-12     PACEM submits a request to the SBA National Ombudsman for "a point of contact within SBA, by name and contact information, whom we can contact to ensure that the additional four subsidy payments under Section 1112 of the Cares Act are promptly paid to Atlantic Union Bank."

2020-03-31     Pacem refinances SBA Loan No. 2843337007, and executes "Forbearance Agreement" with Atlantic Union Bank. This Forbearance Agreement is an enclosure to the July 20, 2021, letter to Mr. Jihoon Kim, Director of SBA's Financial Program Operations (Tab J).

2021-05-07     Mr. Jihoon Kim, Director of the SBA's Office of Financial Program Operations sends an internal SBA Memo to Mina A. Wales, Deputy National Ombudsman, confirming that, "Agency records indicate that subsidy payments were made for April and May of 2020."

2021-05-21     PACEM learns for the first time, based on a May 19, 2021, letter from Mina A. Wales, SBA's Deputy National Ombudsman, that someone within SBA had determined that PACEM was ineligible for Section 1112 subsidy payments, ostensibly because, "The loan has been in default since late April 2020, which was reported to the Agency by the Lender in May 2020." The Lender's counsel repeatedly has denied that the Lender notified the SBA of a default in May 2020.

2021-05-28     PACEM involuntarily refinances SBA Loan No. 1080085275.

2021-06-18     PACEM requests under the Freedom of Information Act (FOIA) any and all information relating to the erroneous CARES Act subsidy ineligibility determination for Loan No. 2843337007 described in the internal Memo from SBA Director, Office of Financial Program Operations, to SBA Deputy National Ombudsman (Tab A), falsely suggesting that, "the Borrower was reported to be in default" by the Lender in May 2020, including but not limited to: e-mail, text, or written communications between the SBA and Atlantic Union Bank (PACEM's "Lender") for the period from January 2020 until present.

2021-07-20     PACEM writes to Mr. Jihoon Kim, Director of SBA's Financial Program Operations, requesting that he, "correct the administrative error apparent from your enclosed memo of May 7, 2021, which was e-mailed to the undersigned on May 19, 2021, by the SBA Ombudsman . . . . More importantly, we request your procedural advice on how best to initiate whatever process is necessary for the SBA to make the final four (4) subsidy payments under section 1112 of the CARES Act, which the SBA did not make in June–September 2020 on account of the administrative error, totaling $3,548,976.85 in 'principal, interest, and any associated fees that are owed.' CARES Act, §1112(c)" (Tab J).

2021-08-05     PACEM supplements its July 20, 2021, letter to Mr. Jihoon Kim, Director of SBA's Financial Program Operations, advising that the SBA FOIA Office had advised PACEM

4

that there are no records of communication between the Lender and the SBA relating to PACEM Loan No. 2843337007 "in May 2020," as suggested in the May 7, 2021, internal SBA Memo (Tab A), reiterating its request for correction of the administrative error and for guidance on how best to initiate whatever process is necessary for the SBA to remit the final four (4) CARES Act subsidy payments to PACEM (Tab K).

2021-09-28:   The Chief of the SBA FOIA Office advises PACEM by letter: "Our office has confirmed that this matter is under review and that releasing the withheld information could reasonably be expected to interfere with an on-going enforcement proceeding" (Tab L).

2021-12-01:   On information that "on-going enforcement proceeding" references in the SBA FOIA Chief's September 28, 2021, letter had concluded, PACEM submits 2nd FOIA Request (Tab M) for the same information PACEM requested on June 18, 2021 (see 2021-06-18 entry above).

2022-05-03     PACEM Chief Legal Officer e-mails the Chief of the SBA FOIA Office: "After I submitted my attached 2nd FOIA request to you on December 1, 2021, I was advised that the 'on-going enforcement proceeding' referenced in your September 28, 2021, FOIA Appeal Response letter was at the time still ongoing. . . . If the 'on-going enforcement proceeding' referenced in your September 28, 2021, letter is still ongoing, please let me know.  If it has concluded, please process the attached 2nd FOIA request on an expedited basis.  As indicated in the attached 2nd FOIA request, the information we are requesting is urgently needed" (Tab N).

2022-05-13     The Chief of the SBA FOIA Office advises PACEM by e-mail: "The Office of General Counsel has informed me that this matter is still under review" (Tab O).

### Bases for Claim

Count I: CARES Act

The SBA owed a statutory duty under the Cares Act, Section 1112, to pay six subsidy payments to PACEM's Lender, which duty the SBA breached, causing damages to PACEM in excess of $3,914,303.23.

Count II: Due Process

The SBA owed and still owes a duty to PACEM, under the Fifth Amendment's Due Process Clause, to provide notice and an opportunity to be heard before depriving PACEM of its CARES Act subsidy payments for June through September 2020,[4] which duty the SBA

---

[4] *Cf. Nozzi v. HACLA*, 806 F.3d 1178, (9th Cir. 2015) ("The property interests that due process protects extend beyond tangible property and include anything to which a plaintiff has a 'legitimate claim of entitlement.' [*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576-77].  Further, as we have previously held, plaintiffs have a protected property right in public benefits when, as here, a statute authorizes those benefits and the 'implementing regulations' 'greatly restrict the discretion' of the people who administer those benefits.  *See Griffeth v. Detrich*, 603 F.2d 118, 121 (9th Cir. 1979).").

5

breached, and continues to breach, thereby causing damages to PACEM, which for almost two years now has been deprived of the CARES Act subsidy payment for June 2020.

In *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), the United States Supreme Court described the "essential constitutional promises" of due process required by the Fifth Amendment before the federal government can deprive a person of life, liberty, or property, as "notice and an opportunity to be heard . . . at a meaningful time and in a meaningful manner." 542 U.S. at 533. The SBA breached, and continues to breach, its duty to provide PACEM with "notice and an opportunity to be heard . . . at a meaningful time and in a meaningful manner," which has caused continuing damages to PACEM in excess of $3,914,303.23, the amount due as of June 1, 2022.

Finally, although PACEM does not believe there are any ambiguities in the statutory basis for its claim, to the extent there are any such ambiguities, they should be construed in PACEM's favor. *Cf. United States v. Heth*, 7 U.S. (3 Cranch) 399, 409 (1806) ("If it be necessary that the Court should make an election between these words in order to complete the sense [of a statute], its choice will be immediately determined by recurring to two well known rules of construction, *viz.*, that it ought to be consistent with the suggestions of natural justice and that the words should be taken most strongly *'contra proferentem'*."); *Mesa Air Group, Inc. v. Department of Transp.*, 87 F.3d 498, 506 (D.C. Cir. 1996) ("*Contra proferentum* is a basic principle of contract law which provides that '[i]n choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds.' Restatement (Second) of Contracts, § 206 (1979)").

Accordingly, the SBA promptly should pay PACEM the third, fourth, fifth and sixth subsidy payments for June-September 2020, totaling $3,100,000 in principal plus accrued interest as of June 1, 2020, July 1, 2020, August 1, 2020, and September 1, 2020, respectively, plus continuing interest, for a running total of $3,914,303.23 as of June 1, 2022, plus daily interest of $990.28 from June 1, 2022 until paid.

6



U.S. SMALL BUSINESS ADMINISTRATION
WASHINGTON, DC 20416

Date:       May 7, 2021

To:         Mina A. Wales
            Deputy National Ombudsman

From:       **ADRIENNE**          Digitally signed by ADRIENNE
            **GRIERSON**          GRIERSON
                                  Date: 2021.05.07 18:12:30
                                  -04'00'
            _for_   Jihoon Kim
            Director
            Office of Financial Program Operations

Re:         Comments from Joseph Schmitz - Pacem Solutions International, LLC
            SBA Loan 2843337007

The Office of the National Ombudsman (ONO) received a comment from Mr. Joseph Schmitz, Chief Legal Officer of Pacem Solution International, LLC ("Borrower"), regarding SBA subsidy payments under section 1112 of the Coronavirus Aid, Relief and Economic Security Act (CARES Act), wherein SBA stated it will pay the principal, interest that Borrowers owe on a "covered loan" in a "regular servicing status" to 7(a) Lenders and Certified Development Companies (CDCs) for a 6-month period.

Agency records indicate that Pacem Solutions International, LLC has, an outstanding International Trade loan that was fully funded August 10, 2018 for $5,000,000.  The loan currently and has an outstanding balance of $4,650,000.  The loan has been in default since late April 2020, which was reported to the Agency by the Lender in May 2020.  The current status of the loan is "Disbursed in Liquidation".

Mr. Schmitz states that SBA did not make four of the six monthly subsidy payments to the Borrower's lender to credit the outstanding loan.  Agency records indicate that subsidy payments were made for April 2020 and May of 2020.  However, once the Borrower was reported to be in default, the Borrower ceased to be in regular servicing status as required under the CARES Act. As a result, the Borrower was ineligible for the remaining four subsidy payments that would have covered June through September of 2020.

If you have further questions about SBA servicing and CARES Act programs, please contact Sarah Hawkins, Deputy Center Director at sarah.hawkins@sba.gov or by phone at (501) 324-5871, extension 242.



**U.S. SMALL BUSINESS ADMINISTRATION**
WASHINGTON, D.C. 20416

OFFICE OF THE NATIONAL OMBUDSMAN

May 19, 2021

Mr. Joseph Schmitz
Chief Legal Officer
Pacem Solution International, LLC
2941 Fairview Park Drive, Suite 350
Falls Church, VA  20042

Dear Mr. Schmitz:

Your comment regarding U.S. Small Business Administration (SBA) subsidy payments was referred to SBA's Office of Capital Access for review and a response.  I have enclosed a copy of the response with this letter.

If you have any questions or further concerns, please contact Ms. Cynthia Pope, Case Manager, at (202) 205-2417 or ombudsman@sba.gov.

Sincerely,

Mina A. Wales
Acting National Ombudsman

encl.

MAW/cdp

**PACEM Solution International**
SBA Note Amortization
Cares Act 2020 through 6/1/2022
SBA Responsibility

|  | Through 5.28.21 | After 5.28.21 |
|---|---|---|
| Rate: | 5.25% | 11.50% |
| Method: | 30/360 day | |
| Default Rate: | 0.00% | |

| | Date | Days | Interest | Accd. Int. | Int Pymts | Repayment | Balance | Late Fees | Comments |
|---|---|---|---|---|---|---|---|---|---|
| balance CARES Act | 2/29/2020 | 0.00 | | 21,021.88 | | | $ 4,650,000.00 | | |
| month end | 3/31/2020 | 31.00 | 21,021.88 | 41,365.63 | | | $ 4,650,000.00 | | |
| month end | 4/30/2020 | 30.00 | 20,343.75 | 62,387.50 | | | $ 4,650,000.00 | | |
| month end | 5/31/2020 | 31.00 | 21,021.88 | 68,490.63 | $ 35,262.50 | | $ 4,650,000.00 | | SBA interest payment 6/1/2020 |
| month end | 6/30/2020 | 30.00 | 20,343.75 | 47,468.75 | | | $ 4,650,000.00 | $ 745.93 | |
| month end | 7/31/2020 | 31.00 | 21,021.88 | 89,512.50 | | | $ 4,650,000.00 | 1,017.16 | |
| month end | 8/31/2020 | 31.00 | 21,021.88 | 109,856.25 | | | $ 4,650,000.00 | 39,326.40 | |
| month end | 9/30/2020 | 31.00 | 20,343.75 | 130,878.13 | | $ 775,000.00 | $ 4,650,000.00 | 39,767.18 | PACEM principal payments due |
| month end | 10/31/2020 | 31.00 | 21,021.88 | 147,831.25 | | $ 775,000.00 | $ 3,875,000.00 | 39,801.09 | |
| month end | 11/30/2020 | 30.00 | 16,953.13 | 161,845.83 | | | $ 3,100,000.00 | 39,801.09 | |
| month end | 12/31/2020 | 31.00 | 14,014.58 | 175,860.42 | | | $ 3,100,000.00 | 33,139.33 | PACEM principal payments due |
| month end | 1/31/2021 | 31.00 | 14,014.58 | 188,518.75 | | | $ 3,100,000.00 | 26,511.46 | PACEM principal payments due |
| month end | 2/28/2021 | 28.00 | 12,658.33 | 202,533.33 | | | $ 3,100,000.00 | 1,017.19 | |
| month end | 3/31/2021 | 31.00 | 14,014.58 | 216,095.83 | | | $ 3,100,000.00 | 1,017.19 | |
| month end | 4/30/2021 | 30.00 | 13,562.50 | 228,754.17 | | | $ 3,100,000.00 | | |
| refinance - involuntary | 5/28/2021 | 28.00 | 12,658.33 | 231,725.00 | | | $ 3,100,000.00 | | |
| month end | 5/31/2022 | 3.00 | 2,970.83 | 261,433.33 | | | $ 3,100,000.00 | | |
| month end | 6/30/2021 | 30.00 | 29,708.33 | 261,433.33 | | | $ 3,100,000.00 | | |
| month end | 7/31/2021 | 31.00 | 30,698.61 | 292,131.94 | | | $ 3,100,000.00 | | |
| month end | 8/31/2021 | 31.00 | 30,698.61 | 322,830.56 | | | $ 3,100,000.00 | | |
| month end | 9/30/2021 | 30.00 | 29,708.33 | 352,538.89 | | | $ 3,100,000.00 | | |
| month end | 10/31/2021 | 31.00 | 30,698.61 | 383,237.50 | | | $ 3,100,000.00 | | |
| month end | 11/30/2021 | 30.00 | 29,708.33 | 412,945.83 | | | $ 3,100,000.00 | | |
| month end | 12/31/2021 | 31.00 | 30,698.61 | 443,644.44 | | | $ 3,100,000.00 | | |
| month end | 1/31/2022 | 31.00 | 30,698.61 | 474,343.06 | | | $ 3,100,000.00 | | |
| month end | 2/28/2022 | 28.00 | 27,727.78 | 502,070.83 | | | $ 3,100,000.00 | | |
| month end | 3/31/2022 | 31.00 | 30,698.61 | 532,769.44 | | | $ 3,100,000.00 | | |
| month end | 4/30/2022 | 30.00 | 29,708.33 | 562,477.78 | | | $ 3,100,000.00 | | |
| month end | 5/1/2022 | 31.00 | 30,698.61 | 593,176.39 | | | $ 3,100,000.00 | | |
| **Totals** | | | $ 628,438.89 | 593,176.39 | $ 35,262.50 | $ 1,550,000.00 | | $ 221,126.85 | |

SUMMARY OF AMOUNTS DUE:

| | |
|---|---|
| PRINCIPAL | $ 3,100,000.00 |
| INTEREST | $ 593,176.39 |
| SUBTOTAL PRINCIPAL AND INTEREST | $ 3,693,176.39 |
| LATE FEES | $ 221,126.85 |
| **TOTAL DAMAGES** | **$ 3,914,303.23** |



H. R. 748

# One Hundred Sixteenth Congress
## of the
## United States of America

### AT THE SECOND SESSION

*Begun and held at the City of Washington on Friday,*
*the third day of January, two thousand and twenty*

## An Act

To amend the Internal Revenue Code of 1986 to repeal the excise tax on high
cost employer-sponsored health coverage.

*Be it enacted by the Senate and House of Representatives of*
*the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Coronavirus Aid, Relief, and
Economic Security Act" or the "CARES Act".

**SEC. 2. TABLE OF CONTENTS.**

The table of contents for this Act is as follows:

Sec. 1. Short title.
Sec. 2. Table of contents.
Sec. 3. References.

DIVISION A—KEEPING WORKERS PAID AND EMPLOYED, HEALTH CARE
SYSTEM ENHANCEMENTS, AND ECONOMIC STABILIZATION

TITLE I—KEEPING AMERICAN WORKERS PAID AND EMPLOYED ACT

Sec. 1101. Definitions.
Sec. 1102. Paycheck protection program.
Sec. 1103. Entrepreneurial development.
Sec. 1104. State trade expansion program.
Sec. 1105. Waiver of matching funds requirement under the women's business center program.
Sec. 1106. Loan forgiveness.
Sec. 1107. Direct appropriations.
Sec. 1108. Minority business development agency.
Sec. 1109. United States Treasury Program Management Authority.
Sec. 1110. Emergency EIDL grants.
Sec. 1111. Resources and services in languages other than English.
Sec. 1112. Subsidy for certain loan payments.
Sec. 1113. Bankruptcy.
Sec. 1114. Emergency rulemaking authority.

TITLE II—ASSISTANCE FOR AMERICAN WORKERS, FAMILIES, AND
BUSINESSES

Subtitle A—Unemployment Insurance Provisions

Sec. 2101. Short title.
Sec. 2102. Pandemic Unemployment Assistance.
Sec. 2103. Emergency unemployment relief for governmental entities and nonprofit organizations.
Sec. 2104. Emergency increase in unemployment compensation benefits.
Sec. 2105. Temporary full Federal funding of the first week of compensable regular unemployment for States with no waiting week.
Sec. 2106. Emergency State staffing flexibility.
Sec. 2107. Pandemic emergency unemployment compensation.
Sec. 2108. Temporary financing of short-time compensation payments in States with programs in law.
Sec. 2109. Temporary financing of short-time compensation agreements.

H. R. 748—29

### SEC. 1111. RESOURCES AND SERVICES IN LANGUAGES OTHER THAN ENGLISH.

(a) IN GENERAL.—The Administrator shall provide the resources and services made available by the Administration to small business concerns in the 10 most commonly spoken languages, other than English, in the United States, which shall include Mandarin, Cantonese, Japanese, and Korean.

(b) AUTHORIZATION OF APPROPRIATIONS.—There is authorized to be appropriated to the Administrator $25,000,000 to carry out this section.

### SEC. 1112. SUBSIDY FOR CERTAIN LOAN PAYMENTS.

(a) DEFINITION OF COVERED LOAN.—In this section, the term "covered loan" means a loan that is—

(1) guaranteed by the Administration under—

(A) section 7(a) of the Small Business Act (15 U.S.C. 636(a))—

(i) including a loan made under the Community Advantage Pilot Program of the Administration; and

(ii) excluding a loan made under paragraph (36) of such section 7(a), as added by section 1102; or

(B) title V of the Small Business Investment Act of 1958 (15 U.S.C. 695 et seq.); or

(2) made by an intermediary to a small business concern using loans or grants received under section 7(m) of the Small Business Act (15 U.S.C. 636(m)).

(b) SENSE OF CONGRESS.—It is the sense of Congress that—

(1) all borrowers are adversely affected by COVID–19;

(2) relief payments by the Administration are appropriate for all borrowers; and

(3) in addition to the relief provided under this Act, the Administration should encourage lenders to provide payment deferments, when appropriate, and to extend the maturity of covered loans, so as to avoid balloon payments or any requirement for increases in debt payments resulting from deferments provided by lenders during the period of the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the Coronavirus Disease 2019 (COVID–19).

(c) PRINCIPAL AND INTEREST PAYMENTS.—

(1) IN GENERAL.—The Administrator shall pay the principal, interest, and any associated fees that are owed on a covered loan in a regular servicing status—

(A) with respect to a covered loan made before the date of enactment of this Act and not on deferment, for the 6-month period beginning with the next payment due on the covered loan;

(B) with respect to a covered loan made before the date of enactment of this Act and on deferment, for the 6-month period beginning with the next payment due on the covered loan after the deferment period; and

(C) with respect to a covered loan made during the period beginning on the date of enactment of this Act and ending on the date that is 6 months after such date of enactment, for the 6-month period beginning with the first payment due on the covered loan.

H. R. 748—30

(2) TIMING OF PAYMENT.—The Administrator shall begin making payments under paragraph (1) on a covered loan not later than 30 days after the date on which the first such payment is due.

(3) APPLICATION OF PAYMENT.—Any payment made by the Administrator under paragraph (1) shall be applied to the covered loan such that the borrower is relieved of the obligation to pay that amount.

(d) OTHER REQUIREMENTS.—The Administrator shall—

(1) communicate and coordinate with the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, and State bank regulators to encourage those entities to not require lenders to increase their reserves on account of receiving payments made by the Administrator under subsection (c);

(2) waive statutory limits on maximum loan maturities for any covered loan durations where the lender provides a deferral and extends the maturity of covered loans during the 1-year period following the date of enactment of this Act; and

(3) when necessary to provide more time because of the potential of higher volumes, travel restrictions, and the inability to access some properties during the COVID–19 pandemic, extend lender site visit requirements to—

(A) not more than 60 days (which may be extended at the discretion of the Administration) after the occurrence of an adverse event, other than a payment default, causing a loan to be classified as in liquidation; and

(B) not more than 90 days after a payment default.

(e) RULE OF CONSTRUCTION.—Nothing in this section may be construed to limit the authority of the Administrator to make payments pursuant to subsection (c) with respect to a covered loan solely because the covered loan has been sold in the secondary market.

(f) AUTHORIZATION OF APPROPRIATIONS.—There is authorized to be appropriated to the Administrator $17,000,000,000 to carry out this section.

**SEC. 1113. BANKRUPTCY.**

(a) SMALL BUSINESS DEBTOR REORGANIZATION.—

(1) IN GENERAL.—Section 1182(1) of title 11, United States Code, is amended to read as follows:

"(1) DEBTOR.—The term 'debtor'—

"(A) subject to subparagraph (B), means a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor; and

"(B) does not include—

"(i) any member of a group of affiliated debtors that has aggregate noncontingent liquidated secured



# Federal Agency Comment Form

OMB Control #3245-0313
Exp. date 9/30/2022
Case #:

**Small Business Administration – Office of the National Ombudsman**
PURPOSE: Small business owners may use this form to submit comments on Federal enforcement/compliance actions that they consider excessive or unfair. The National Ombudsman will use the information when it contacts the applicable Federal agency for a review of the action. Completion of this form is voluntary; however, failure to submit the requested information could impact whether SBA's Office of the National Ombudsman is able to provide you with assistance

## Instructions

1. Complete, sign and date this form. (Signature not required if completed at Office-National-Ombudsman)
2. Provide a brief written statement on the reverse side or a separate sheet of paper regarding the specific enforcement or compliance action taken against your organization by the federal agency
3. Submit copies of substantiating documentation such as correspondence citation or notice (Note: can be submitted separately from this form by fax or mail. Make sure to reference your name or company's name with this information).
4. If your comments concern the IRS, you must also submit a completed IRS Tax Information Authorization Form 8821, available at IRS.gov/forms (Can be sent by fax or mail.)
5. Fax, e-mail or send this form and requested information to: (1) Fax: (202) 481-5719; (2) Email: Ombudsman@sba.gov; (3) Address: SBA, Office of National Ombudsman, 409 Third Street, SW, Washington, DC 20024. Telephone: (202) 205-2417.

## Please Print

Organization/Company Name: **Pacem Solution International, LLC**

Address: **2941 Fairview Park Drive, Suite 350**

City: **Falls Church**       State: **Virginia**       Zip  **22042**

Phone: **(703) 992-3095**   Fax:       E-Mail: **joseph.schmitz@pacem-soluti**

Contact Name: ☑ Mr.  ☐ Ms. **Joseph E. Schmitz**       Title: **Chief Legal Officer**

Please indicate your organization type:

☑ Small Business  ☐ Not-for-Profit  Representing       Members

☐ Small Government (Population of less than 50,000)  ☐ Association  Representing       Members

### List the federal agency with which you are having a problem

Federal Agency Name: **Small Business Admin.**

Agency Contact Person: **TBD**

Agency Office/Division: **TBD**

Did the federal agency listed above inform you of you right to contact the SBA Office of the National Ombudsman?

☐ Yes ☑ No   If not how did you learn about this Office **From SBA Washington Metro Resource Guide**

### Confidentiality/Disclosure

The National Ombudsman is required to keep confidential the identity of any person or small business providing a comment about an agency's compliance or enforcement action unless that person or small business provides consent, or disclosure is determined to be unavoidable. Confidentiality is governed by the Small Business Regulatory Enforcement Fairness Act 15 U.S.C. 657(b)(2(B) and the Inspector General's Act, 5 U.S.C. App., § 7(b). You may make a selection below to authorize SBA to share your identity with the federal agency with which you are having a problem so that agency can investigate your specific problem and offer a response tailored to your situation.  By requesting confidentiality, the federal agency may not have sufficient information to investigate your specific problem, possibly delaying or preventing any potential resolution of your situation

161

☑ I request that my identity be shared only with the federal agency(ies) with which I am having a problem

☐ I request that my identity be kept confidential. (Results may be limited.)

Signature **PII**                                          Date: 02/12/2021

Your signature authorizes the SBA Ombudsman to proceed on your behalf.
**Pursue all legal options you believe are in your company's best interest.**
**This process is not a substitute for legal action.**

**SBA FORM 1993 (9-19) Previous Editions Obsolete**

**PLEASE NOTE: The estimated burden for completing this form is 45 minutes. You are not required to respond to this information collection if a valid OMB approval number is not displayed. If you have any questions or comments concerning this estimate or other aspects of this information collection, please contact the U. S. Business Administration, Director, Records Management Division, 409 Third Street, SW, Washington, D.C ., 20416 and/or Office of Management and Budget, SBA Desk Officer, New Executive Office Building, Rm. 10202, Washington, D.C. 20503. PLEASE DO NOT SEND FORMS TO OMB, as this will delay action on your request for assistance.**

**Type or (print) your comments below:**

Dear Sir/Madam:

Our lender, Atlantic Union Bank, has advised that the SBA has not made four (4) subsidy payments under Section 1112 of the Cares Act for the period from June to September 2020 in connection with our $5,000,000 loan of August 10, 2018 (Loan No. 1080085275).

Although a recent letter from SBA advised us "about the debt relief assistance available to your business from the U.S. Small Business Administration (SBA) under Section 1112," and suggests that, "if your business has not received, or does not receive, the assistance summarized above, and you believe that your loan is eligible for such assistance, you should immediately contact the lender of your loan," the lender has been unable to provide details, other than that " the loan was still in review, " regarding the status of the above-mentioned four SBA payments to our lender that were due to be paid by SBA from June to September 2020.

Accordingly, please let us know as soon as possible a point of contact within SBA, by name and contact information, whom we can contact to ensure that the additional four subsidy payments under Section 1112 of the Cares Act are promptly paid to Atlantic Union Bank.

Yours truly,

**PII**

Hon. Joseph E. Schmitz
Chief Legal Officer
(703) 992-3095

162



# SBA Procedural Notice

| | |
|---|---|
| **TO:** All SBA Employees, 7(a) Lenders and Certified Development Companies | **CONTROL NO.:** 5000-20020 |
| **SUBJECT:** Implementation of Section 1112 of the CARES Act, Subsidy for Certain Loan Payments, for the 7(a) and 504 Loan Programs | **EFFECTIVE:** 04/16/2020 |

On March 27, 2020, the Coronavirus Aid, Relief and Economic Security Act (the CARES Act) was enacted to provide emergency and immediate national economic relief and assistance across the American economy, including to small businesses, workers, families, and the health-care system, to alleviate the severe economic hardships and public health threat created by the 2019 Novel Coronavirus pandemic. Under section 1112 of the CARES Act, SBA will provide debt relief to borrowers in the 7(a), 504, and Microloan Programs. The purpose of this Notice is to address the implementation of Section 1112 for the 7(a) and 504 Loan Programs. SBA addressed the implementation of section 1112 for the Microloan Program in a separate notice. *See* SBA Procedural Notice 5000-20015, effective 04/08/2020.

In accordance with section 1112(c), SBA will pay the principal, interest, and any "associated fees" that Borrowers owe on a "covered loan" in a "regular servicing status" to 7(a) Lenders and Certified Development Companies (CDCs) for a 6-month period. SBA will make these payments in accordance with the criteria and procedures described below.

A. Definitions:

    1. A "covered loan" means a loan that is guaranteed by SBA under:

        a. Section 7(a) of the Small Business Act (15 U.S.C. 636(a)), including a loan made under the Community Advantage Pilot Program. A "covered loan" excludes a loan made under paragraph (36) of such section 7(a), as added by section 1102 of the CARES Act; or

        b. title V of the Small Business Investment Act of 1958 (15 U.S.C. 695 et seq.), (the 504 Loan Program).

---

**PAGE 1 of 8**                                                                 **EXPIRES: 4/1/2021**

SBA Form 1353.3 (4-93) MS Word Edition; previous editions obsolete

Must be accompanied by SBA Form 58



Federal Recycling Program   Printed on Recycled Paper

2. A loan in "regular servicing status" includes:

    a. any loan that has been moved from "approval" status (governed by SOP 50 10) to "regular servicing" status, which occurs when the loan has been closed and the final loan disbursement has been made (revolving lines of credit are considered fully disbursed when the loan has been closed and the initial loan disbursement has been made);

    b. a loan in "regular servicing status" does not include any loan that has been moved from "regular servicing" into "liquidation" status, or any loan that should have been moved pursuant to SBA Loan Program Requirements from "regular servicing" into "liquidation" status prior to the first payment due date covered by section 1112;

    c. generally, a loan in "regular servicing status" should not include any loan that is more than 120 days past due (as counted back from the first payment due date covered under section 1112).

    d. if the Lender receives a payment under section 1112 for a loan that the Lender failed to move into liquidation status as required by SBA Loan Program Requirements, the Lender must immediately notify SBA that it has placed the loan in liquidation status and immediately return the payment; and

    e. a Borrower that is granted a deferment before the payments under section 1112 begin will not be removed from regular servicing status for failing to make any payments required by a catch-up plan.

3. "Lender" means either a 7(a) Lender or a CDC.

4. "Associated fees" means the monthly fees paid by the Borrower including:

    a. For 504, the SBA guarantee fee, the CSA fee, and the CDC servicing fee.

    b. For 7(a), the extraordinary servicing fee authorized by 13 CFR 120.221.

B. Implementation of the Six-Month Period of Payments. SBA will implement the six-month period of payments as follows:

1. For a covered loan made before March 27, 2020 and not on deferment, SBA will make the loan payments for the 6-month period beginning with the next payment due on the covered loan.

    a. For the first loan payment due on a covered loan made before March 27, 2020, SBA will make the payments as follows:



Federal Recycling Program　Printed on Recycled Paper

    i.   For 504 loans, the first such payment was due on April 1, 2020, and SBA will make these payments by May 1, 2020 to the Central Servicing Agent (CSA) based on information maintained in the CSA E-Tran system.  SBA will make all section 1112 payments to the CSA except for SBA-purchased debentures, and the CSA will make no ACH debits to the Borrower's accounts;

    ii.   For 7(a) loans, the payment due date varies with each loan, and SBA will make the first monthly payment for these loans directly to the 7(a) Lenders on or before April 30, 2020 based on the information provided by the Lenders under paragraph B.2 below for each loan through the CARES Act menu of the 1502 Dashboard on the Fiscal Transfer Agent's (FTA) website (https://colsonservices.bnymellon.com).  Lenders will have the option to perform loan level data entry or upload portfolio information utilizing the Section 1112 Excel template available on the FTA website.  For the first monthly payment, Lenders may begin to submit this information on April 16, 2020 **but must provide it no later than April 22, 2020;**

    iii.   If the 7(a) Lender receives a loan payment from a Borrower to cover this first monthly payment, the Lender must inform the Borrower that it has the option of the Lender either returning the loan payment to the Borrower or applying the loan payment to further reduce the loan balance after application of SBA's payment.

b.  For each subsequent month, 7(a) Lenders must submit the information required under paragraph B.2 below by the 10th day of each month or the next business day, and SBA will make that month's payment by the 25th day of each month.  For the 504 Loan Program, SBA will make the payments for each subsequent month by the last business day of the month based on information maintained in the CSA E-Tran system.

2.  For 7(a) loans for which SBA has not purchased the guarantee, Lenders must submit the information described in (a) through (d) below through the CARES Act menu of the 1502 Dashboard on the FTA's website (https://colsonservices.bnymellon.com). Lenders will have the option to perform loan level data entry or upload portfolio information utilizing the mandatory Section 1112 Excel template.  For 7(a) loans for which SBA has purchased the guarantee and are serviced by the Lenders, SBA will issue guidance on the information that Lenders must submit to SBA in a later notice.

a.  The month in which SBA should begin making the section 1112 payments to Lenders.  For loans in deferment, the first month for the section 1112 payment is the month after the deferment period ends;

---


Federal Recycling Program    Printed on Recycled Paper

    b.  the total outstanding loan payment amount that is due and the number of monthly payments that is included in this amount.  The amount must include both the guaranteed and non-guaranteed portions of the 7(a) loan;

    c.  the ACH credit instructions for making the payment directly to the Lenders (SBA will not make the payments to any Lender Service Providers).  (SBA will provide Lenders with more ACH payment information on the CCD+ Addenda String format in another notice but, even though SBA will be providing this information later, Lenders MUST provide the ACH credit instructions for making the payment no later than the 22nd day of April for the first monthly payment, and no later than the 10th day of the month or the next business day for all subsequent payments); and

    d.  a certification that the loan is not in liquidation status, or should not have been moved pursuant to SBA Loan Program Requirements from "regular servicing" into "liquidation" status prior to the first payment due date covered by section 1112.

3.  For a covered loan made before March 27, 2020 and on deferment, SBA will make the loan payments for the 6-month period beginning with the next payment due on the covered loan after the deferment period. This provision applies to loans that are on both full or partial deferments.  For each 7(a) loan on deferment, Lenders must provide the information required under paragraph B.2 above by the 10th day of the month or the next business day.  When the period of deferment ends, SBA will make the payment for the 7(a) loan by the 25th day of each month.  After the deferment ends for a 504 loan, SBA will begin to make the monthly loan payments to the CSA by the last business day of the month based on the information maintained in the CSA E-Tran system.  Further information on the procedures relating to deferments is provided in paragraph C below.

4.  For a covered loan made beginning on March 27, 2020 and through September 27, 2020, SBA will make the loan payments for the 6-month period beginning with the first payment due on the covered loan. A Lender may grant the Borrower an immediate deferment on these new loans (in accordance with the applicable SOP provisions) in which case the 6-month period of SBA payments will begin after the deferment ends.  For each 7(a) loan, the Lenders must submit the information required under paragraph B.2 above by the 10th of each month or the next business day, and SBA will make that month's payment by the 25th of each month.  For the 504 Loan Program, SBA will make the monthly loan payments to the CSA by the last business day of the month based on the information maintained in the CSA E-Tran system.

5.  For a covered loan for which the Borrower makes loan payments less frequently than monthly (i.e., semi-annually or quarterly), SBA will make the loan payment beginning with the next payment due, and the maximum amount that SBA will pay on these loans will be calculated by dividing the total annual loan payment amount by 12 and

---



multiplying the result by 6.  For loans with semi-annual payments, SBA will make one payment to cover the full amount due for the next semi-annual payment.  For loans with quarterly payments, SBA will make a total of four separate payments.  The first of the four payments will cover the full amount due for the next quarterly payment.  For each of the three months thereafter, SBA will make three monthly payments in equal installments to cover the full amount due for the next quarterly payment.

6. SBA payments will not exceed the outstanding balance of principal, interest and associated fees owed on a covered loan by the Borrower.  The SBA payments may not be used to pay any outstanding late fees owed by the Borrower.

7. For any loan that is scheduled to be prepaid, the last payment that SBA will make under section 1112 will be the monthly loan payment due prior to the date of prepayment.

8. If a 7(a) Lender receives any regular loan payment due from a Borrower, in whole or in part, during the 6-month period that SBA is making the loan payments, the Lender must inform the Borrower that it has the option of the Lender either returning the loan payment to the Borrower or applying the loan payment to further reduce the loan balance after application of SBA's payment.

9. 7(a) Lenders must continue to comply with existing procedures regarding 1502 reporting and payment remittance as required by SOP 50 10.

10. With respect to any loan for which the Borrower is required to make payments under a catch-up plan or other settlement, Borrowers continue to be obligated to make these payments in accordance with the catch-up plan or settlement during the six-month period of SBA payments, and no payments that SBA makes under section 1112 of the CARES Act may be used to cover payments owed by the Borrower under the catch-up plan or settlement.

C. Loans on Deferment.

1. 7(a) Loans.  For any covered 7(a) loan that has been granted a deferment, the Borrower may voluntarily decide to end the approved period of deferment early to begin the 6-month period of SBA payments, and Lenders must inform Borrowers that it is their choice to either continue the deferment and begin receiving the SBA payments for 6 months after the period of deferment ends OR end the deferment early to begin receiving the SBA payments. Once the 6-month period of payments begins, the period must be continuous and may not be interrupted by deferment.

2. 504 Loans.

   a. Deferments Granted Prior to the Debenture Sales held on April 15, 2020.

---

For any covered 504 loan that was granted a deferment prior the debenture sales held on April 15, 2020, the Borrower may voluntarily decide to end the approved period of deferment early to begin the 6-month period of SBA payments, and Lenders must inform Borrowers that it is their choice to either continue the deferment and begin receiving the SBA payments for 6 months after the period of deferment ends OR end the deferment early to begin receiving the SBA payments. Once the 6-month period of payments begins, the period must be continuous and may not be interrupted by deferment.

b. <u>Deferments Granted in Accordance with Procedural Notice 5000-20010 for 504 Loans Funded through the Debenture Sales Held on April 15, 2020.</u>

For a 504 loan that was funded through the April debenture sales and granted a deferment pursuant to Procedural Notice 5000-20010, "504 Certifications of No Adverse Change for April, May and June, 2020 Debenture Sales during the COVID-19 Emergency", effective 03/25/2020, the Borrower may submit a request to the CDC to terminate the "COVID-19 Substantial Adverse Change Remedy Certification and Agreement" (COVID-19 Agreement) and end the approved period of deferment early to begin the 6-month period of SBA payments. The CDC must submit this request to the appropriate SBA Commercial Loan Servicing Center (CLSC) for approval. The CDC must provide the CLSC with its evaluation of whether the Borrower will have the ability to timely make the payments owed under the Third Party Loan (TPL) during the 6-month period of SBA payments. If the CLSC concludes that it is not likely that the Borrower will have the ability to timely make the TPL payments during the 6-month period of SBA payments, the CLSC will deny the request to end the deferment early, unless the CDC submits a written commitment by the Third Party Lender to the CLSC that, if the COVID-19 Agreement is terminated, the Third Party Lender will grant the Borrower a deferment on the TPL that covers the 6-month period of SBA payments.

c. <u>No Adverse Change Determination for 504 Loans to be Funded through May and June Debenture Sales.</u>

Under Procedural Notice 5000-20010, CDCs are required to consider the following for the May and June debenture sales for 504 loans where the Authorization was issued prior to March 1, 2020:

"1. No Substantial Adverse Change. Based on the certifications by the Interim Lender and the Borrower (and Operating Company if Borrower is an EPC), and based on its own consideration, the CDC must determine for each loan before the debenture sale whether the COVID-19 emergency is the immediate and direct cause of a substantial adverse change in the Borrower's (or Operating Company's) ability to repay the 504 loan since the submission of the loan application to SBA. If the CDC concludes there

---

**PAGE 6 of 8**                                                    **EXPIRES: 4/1/2021**

SBA Form 1353.3 (4-93) MS Word Edition; previous editions obsolete

Must be accompanied by SBA Form 58



Federal Recycling Program   Printed on Recycled Paper