any other Person, as appropriate, and the property covered by such Financing Document showing that the Lien of such Financing Document will be a perfected first priority Lien on the property covered by such Financing Document subject only to Permitted Liens or to such other matters as Lender may approve.

Section 3.6    Costs.

Borrower agrees to pay, as part of the Enforcement Costs and to the fullest extent permitted by applicable Laws, on demand all costs, fees and expenses incurred by Lender in connection with the taking, perfection, preservation, protection and/or release of a Lien on the Collateral, including, without limitation:

(a)    customary fees and expenses incurred in preparing Financing Documents from time to time (including, without limitation, reasonable attorneys' fees incurred in connection with preparing the Financing Documents, including, any amendments and supplements thereto);

(b)    all filing and/or recording taxes or fees;

(c)    all title insurance premiums;

(d)    all costs of Lien and record searches;

(e)    reasonable attorneys' fees in connection with all legal opinions required; and

(f)    all related costs, fees and expenses.

Section 3.7    Release.

Upon the indefeasible repayment in full in cash of the Obligations and performance of all Obligations of Borrower and all obligations and liabilities of each other Person, other than Lender, under this Agreement and all other Financing Documents, and the termination and/or expiration of all of the Commitments, upon Borrower's request and at Borrower's sole cost and expense, Lender shall release and/or terminate any Financing Document but only if and provided that there is no commitment or obligation (whether or not conditional) of Lender to re-advance amounts which would be secured thereby.

Section 3.8    Inconsistent Provisions.

In the event that the provisions of any Financing Document directly conflict with any provision of this Agreement, the provisions of this Agreement govern.

19

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES

Section 4.1    Representations and Warranties.

Borrower represents and warrants to Lender, as follows:

4.1.1    Subsidiaries.

Borrower has the Subsidiaries listed on the Collateral Disclosure List and no others. Each of the Subsidiaries is a Wholly Owned Subsidiary except as shown on the Collateral Disclosure List, which correctly indicates the nature and amount of Borrower's ownership interests therein.

4.1.2    Existence.

Borrower (a) is a Registered Organization under the laws of the jurisdiction stated in the Preamble of this Agreement, (b) is in good standing under the laws of the jurisdiction in which it is organized, (c) has the power to own its property and to carry on its business as now being conducted, and (d) is duly qualified to do business and is in good standing in each jurisdiction in which the character of the properties owned by it therein or in which the transaction of its business makes such qualification necessary. Borrower is organized under the laws of only one (1) jurisdiction.

4.1.3    Power and Authority.

Borrower has full power and authority to execute and deliver this Agreement, and the other Financing Documents to which it is a party, to make the borrowings under this Agreement and to incur and perform the Obligations whether under this Agreement, the other Financing Documents or otherwise, all of which have been duly authorized by all proper and necessary action. No consent or approval of owners or any creditors of Borrower, and no consent, approval, filing or registration with or notice to any Governmental Authority on the part of Borrower, is required as a condition to the execution, delivery, validity or enforceability of this Agreement, or any of the other Financing Documents the performance by Borrower of the Obligations.

4.1.4    Binding Agreements.

This Agreement and the other Financing Documents executed and delivered by Borrower have been properly executed and delivered and constitute the valid and legally binding obligations of Borrower and are fully enforceable against Borrower in accordance with their respective terms, subject to bankruptcy, insolvency, reorganization, moratorium and other laws of general application affecting the rights and remedies of creditors and secured parties, and general principles of equity regardless of whether applied in a proceeding in equity or at law.

20

### 4.1.5   No Conflicts.

Neither the execution, delivery and performance of the terms of this Agreement or of any of the other Financing Documents executed and delivered by Borrower nor the consummation of the transactions contemplated by this Agreement will conflict with, violate or be prevented by (a) Borrower's organizational or governing documents, (b) any existing mortgage, indenture, contract or agreement binding on Borrower or affecting its property, or (c) any Laws.

### 4.1.6   No Defaults, Violations.

(a)    No Default or Event of Default has occurred and is continuing.

(b)    Neither Borrower nor any of its Subsidiaries is in default under or with respect to any obligation under any existing mortgage, indenture, contract or agreement binding on it or affecting its property in any respect which could be materially adverse to the business, operations, property or financial condition of Borrower, or which could materially adversely affect the ability of Borrower to perform its obligations under this Agreement or the other Financing Documents, to which Borrower is a party.

### 4.1.7   Compliance with Laws.

Neither Borrower nor any of its Subsidiaries is in violation of any applicable Laws (including, without limitation, any Laws relating to employment practices, to environmental, occupational and health standards and controls) or order, writ, injunction, decree or demand of any court, arbitrator, or any Governmental Authority affecting Borrower or any of its properties, the violation of which, considered in the aggregate, could materially adversely affect the business, operations or properties of Borrower and/or its Subsidiaries.

### 4.1.8   Investment Company Act; Margin Stock.

Borrower is not an investment company within the meaning of the Investment Company Act of 1940, as amended, nor is it, directly or indirectly, controlled by or acting on behalf of any Person which is an investment company within the meaning of said Act. Borrower is not engaged principally, or as one of its important activities, in the business of extending credit for the purpose of purchasing or carrying "margin stock" within the meaning of Regulation U (12 CFR Part 221), of the Board of Governors of the Federal Reserve System.

### 4.1.9   Litigation.

There are no proceedings, actions or investigations pending or, so far as Borrower knows, threatened before or by any court, arbitrator or any Governmental Authority which, in any one case or in the aggregate, if determined adversely to the interests of Borrower or any Subsidiary, would have a material adverse effect on the business, properties, condition (financial or otherwise) or operations, present or prospective, of Borrower.

4.1.10  Financial Condition.

The financial statements of Borrower dated December 31, 2017, are complete and correct and fairly present the financial position of Borrower and its Subsidiaries and the results of their operations and transactions in their surplus accounts as of the date and for the period referred to and have been prepared in accordance with GAAP applied on a consistent basis throughout the period involved.  There are no liabilities, direct or indirect, fixed or contingent, of Borrower or its Subsidiaries as of the date of such financial statements that are not reflected therein or in the notes thereto.  There has been no adverse change in the financial condition or operations of Borrower or its Subsidiaries since the date of such financial statements and to Borrower's knowledge no such adverse change is pending or threatened.  Neither Borrower nor any Subsidiary has guaranteed the obligations of, or made any investment in or advances to, any Person, except as disclosed in such financial statements.

4.1.11  Full Disclosure.

The financial statements referred to in Section 4.1.10 (Financial Condition), the Financing Documents (including, without limitation, this Agreement), and the statements, reports or certificates furnished by Borrower in connection with the Financing Documents (a) do not contain any untrue statement of a material fact and (b) when taken in their entirety, do not omit any material fact necessary to make the statements contained therein not misleading.  There is no fact known to Borrower which Borrower has not disclosed to Lender in writing prior to the date of this Agreement with respect to the transactions contemplated by the Financing Documents that materially and adversely affects or in the future could, in the reasonable opinion of Borrower materially adversely affect the condition, financial or otherwise, results of operations, business, or assets of Borrower or any Subsidiary.

4.1.12  Indebtedness for Borrowed Money.

Except for the Obligations and except as set forth in Schedule 4.1.12 attached hereto and made a part hereof, Borrower has no Indebtedness for Borrowed Money.  Lender has received photocopies of all promissory notes evidencing any Indebtedness for Borrowed Money set forth in Schedule 4.1.12, together with any and all subordination agreements, other agreements, documents, or instruments securing, evidencing, guarantying or otherwise executed and delivered in connection therewith.

4.1.13  Taxes.

Each of Borrower and its Subsidiaries has filed all returns, reports and forms for Taxes that, to the knowledge of Borrower, are required to be filed, and has paid all Taxes as shown on such returns or on any assessment received by it, to the extent that such Taxes have become due, unless and to the extent only that such Taxes, assessments and governmental charges are currently contested in good faith and by appropriate proceedings by Borrower, such Taxes are not the subject of any Liens other than Permitted Liens, and adequate reserves therefor have been established as required under GAAP.  All tax liabilities of Borrower were as of the date of audited financial statements referred to in Section 4.1.10 (Financial Condition), and are now, adequately provided for on the books of Borrower or its Subsidiaries, as appropriate.  No

22

tax liability has been asserted by the Internal Revenue Service or any state or local authority against Borrower for Taxes in excess of those already paid.

4.1.14 ERISA.

(a) Each Borrower and each ERISA Affiliate are in compliance with the applicable provisions of the Internal Revenue Code and ERISA with respect to all Benefit Arrangements, Plans, Multiple Employer Plans and Multiemployer Plans except for any instances of noncompliance that could not reasonably be expected to materially adversely affect the business, operations, or properties of any Borrower and/or its Subsidiaries. There have been no Prohibited Transactions with respect to any Benefit Arrangement or any Plan or, to the best knowledge of each Borrower, with respect to any Multiemployer Plan or Multiple Employer Plan, which could reasonably be expected to materially adversely affect the business, operations or properties of any Borrower and/or its Subsidiaries. Each Borrower and each ERISA Affiliate have made when due any and all payments required to be made under any agreement relating to a Multiemployer Plan or Multiple Employer Plan or any applicable Laws pertaining thereto except for any failure that could not reasonably be expected to materially adversely affect the business, operations or properties of any Borrower and/or its Subsidiaries. With respect to each Plan, each Borrower and each ERISA Affiliate (i) have fulfilled in all material respects their obligations under the minimum funding standards of the Internal Revenue Code and ERISA, (ii) have not incurred any material liability to the PBGC which has not been paid in the ordinary course, and (iii) have not had asserted against them any penalty for failure to fulfill the minimum funding requirements of the Internal Revenue Code or ERISA except for any failure that could not reasonably be expected to materially adversely affect the business, operations or properties of any Borrower and/or its Subsidiaries. All Plans, Benefit Agreements and, to the best knowledge of each Borrower, Multiple Employer Plans and Multiemployer Plans have been administered in all respects in accordance with their terms and applicable Laws except for any failure that could not reasonably be expected to materially adversely affect the business, operations or properties of any Borrower and/or its Subsidiaries.

(b) No event requiring notice to the PBGC under Section 430(k)(4)(A) of the Internal Revenue Code or Section 303(k)(4)(A) of ERISA has occurred or is reasonably expected to occur with respect to any Plan except for any such event that could not reasonably be expected to materially adversely affect the business, operations or properties of any Borrower and/or its Subsidiaries.

(c) Neither any Borrower nor any ERISA Affiliate has incurred or reasonably expects to incur any Withdrawal Liability under ERISA to any Multiemployer Plan which could reasonably be expected to materially adversely affect the business, operations or properties of any Borrower and/or its Subsidiaries. Neither any Borrower nor any ERISA Affiliate has been notified by any Multiemployer Plan or Multiple Employer Plan that such Multiemployer Plan or Multiple Employer Plan has been terminated within the meaning of Title IV of ERISA and, to the best knowledge of each Borrower, no Multiemployer Plan or Multiple Employer Plan is reasonably expected to be recognized or terminated, within the meaning of Title IV of ERISA which, in either case, could reasonably be expected to materially adversely affect the business, operations or properties of any Borrower and/or its Subsidiaries.

35837009v2 221027.000071

(d)     No ERISA Event has occurred or is reasonably expected to occur that could reasonably be expected to materially adversely affect the business, operations or properties of any Borrower and/or its Subsidiaries.

(e)     Neither any Borrower nor any ERISA Affiliate sponsors, maintains or contributes to an employee welfare benefit plan within the meaning of Section 3(1) of ERISA to provide welfare benefits to current or former employees beyond their retirement or other termination of service (other than coverage mandated by Section 4980B of the Internal Revenue Code or Part 6 of Subtitle B of Title I of ERISA or similar Law), that may not be terminated by such party in its sole discretion at any time without any Liabilities for benefits accrued as of the date of termination with a present value that could reasonably be expected to materially adversely affect the business, operations or properties of any Borrower and/or its Subsidiaries.

### 4.1.15   Title to Properties.

Borrower has good and marketable title to all of its properties, including, without limitation, the Collateral and the properties and assets reflected in the balance sheets described in Section 4.1.10 (Financial Condition). Borrower has legal, enforceable and uncontested rights to use freely such property and assets. All of such properties, including, without limitation, the Collateral that were purchased, were purchased for fair consideration and reasonably equivalent value in the ordinary course of business of both the seller and Borrower and not, by way of example only, as part of a bulk sale.

### 4.1.16   Patents, Trademarks, Etc.

Each of Borrower and its Subsidiaries owns, possesses, or has the right to use all necessary Patents, licenses, Trademarks, Copyrights, permits and franchises to own its properties and to conduct its business as now conducted, without known conflict with the rights of any other Person.  Any and all obligations to pay royalties or other charges with respect to such properties and assets are properly reflected on the financial statements described in Section 4.1.10 (Financial Condition).

### 4.1.17   Employee Relations.

Except as disclosed on Schedule 4.1.17 attached hereto and made a part hereof, (a) neither Borrower nor any Subsidiary thereof nor any of Borrower's or Subsidiary's employees is subject to any collective bargaining agreement, (b) no petition for certification or union election is pending with respect to the employees of Borrower or any Subsidiary and no union or collective bargaining unit has sought such certification or recognition with respect to the employees of Borrower, (c) there are no strikes, slowdowns, work stoppages or controversies pending or, to the best knowledge of Borrower after due inquiry, threatened between Borrower and its employees, and (d) neither Borrower nor any Subsidiaries is subject to an employment contract, severance agreement, commission contract, consulting agreement or bonus agreement. Hours worked and payments made to the employees of Borrower have not been in violation of the Fair Labor Standards Act or any other applicable law dealing with such matters.  All payments due from Borrower or for which any claim may be made against Borrower, on account of wages and employee and retiree health and welfare insurance and other benefits have been

24

paid or accrued as a liability on its books. The consummation of the transactions contemplated by the Financing Agreement or any of the other Financing Documents, will not give rise to a right of termination or right of re-negotiation on the part of any union under any collective bargaining agreement to which Borrower is a party or by which it is bound.

4.1.18  Presence of Hazardous Materials or Hazardous Materials Contamination.

To the best of Borrower's knowledge, (a) no Hazardous Materials are located on any real property owned, controlled or operated by of Borrower or for which Borrower is, or is claimed to be, responsible, except for reasonable quantities of necessary supplies for use by Borrower in the ordinary course of its current line of business and stored, used and disposed in accordance with applicable Laws; and (b) no property owned, controlled or operated by Borrower or for which Borrower has, or is claimed to have, responsibility has ever been used as a manufacturing, storage, or dump site for Hazardous Materials nor is affected by Hazardous Materials Contamination at any other property.

4.1.19  Perfection and Priority of Collateral.

Lender has, or upon execution and recording of this Agreement and the Security Documents will have, and will continue to have as security for the Obligations, a valid and perfected Lien on and security interest in all Collateral, free of all other Liens, claims and rights of third parties whatsoever except Permitted Liens, including, without limitation, those described on Schedule 4.1.19 attached hereto and made a part hereof.

4.1.20  No Suspension or Debarment.

Neither Borrowers nor any Affiliate nor any of their respective directors, officers or employees has received any notice of, or information concerning, any proposed, contemplated or initiated suspension or debarment, be it temporary or permanent, due to an administrative or a statutory basis, of Borrower or any Affiliate by any Governmental Authority. Each of Borrowers and each Affiliate further warrants and represents that neither Borrower nor any Affiliate has defaulted under any Government Contract which default would be a basis of terminating such Government Contract.

4.1.21  Collateral Disclosure List.

The information contained in the Collateral Disclosure List is complete and correct. The Collateral Disclosure List completely and accurately identifies (a) the type of entity, the state of organization and the chief executive office of Borrower, (b) each other place of business of Borrower, (c) the location of all books and records pertaining to the Collateral, and (d) each location, other than the foregoing, where any of the Collateral is located.

4.1.22  Business Names and Addresses.

In the five (5) years preceding the date hereof, Borrower has not changed its name, identity or corporate structure, has not conducted business under any name other than its current name, and has not conducted its business in any jurisdiction other than those disclosed on the Collateral Disclosure List.

35837009v2 221027.000071

4.1.23  Equipment.

All Equipment is personalty and is not and will not be affixed to real estate in such manner as to become a fixture or part of such real estate.  No equipment is held by Borrower on a sale on approval basis.

4.1.24  Inventory.

The Inventory of Borrower is (a) of good and merchantable quality, free from defects, (b) not stored with a bailee, warehouseman, carrier, or similar party, (c) not on consignment, sale on approval, or sale or return, and (d) located at the places of business set forth on the Collateral Disclosure List.  No goods offered for sale by Borrower are consigned to or held on sale or return terms by Borrower.

4.1.25  Accounts.

With respect to all Accounts and to the best of Borrower's knowledge (a) they are genuine, and in all respects what they purport to be, and are not evidenced by a judgment, an Instrument, or Chattel Paper (unless such judgment has been assigned and such Instrument or Chattel Paper has been endorsed and delivered to Lender); (b) they represent bona fide transactions completed in accordance with the terms and provisions contained in the invoices, purchase orders and other contracts relating thereto, and the underlying transaction therefor is in accordance with all applicable Laws; (c) the amounts shown on Borrower's books and records, with respect thereto are actually and absolutely owing to Borrower and are not contingent or subject to reduction for any reason other than regular discounts, credits or adjustments allowed by Borrower in the ordinary course of its business; (d) no payments have been or shall be made thereon except payments turned over to Lender by Borrower; (e) all Account Debtors thereon have the capacity to contract; and (f) the goods sold, leased or transferred or the services furnished giving rise thereto are not subject to any Liens except the security interest granted to Lender by this Agreement and Permitted Liens.

4.1.26  OFAC.

Neither Borrower nor any of its Subsidiaries (a) is an "enemy" or an "ally of the enemy" within the meaning of Section 2 of the Trading with the Enemy Act, (b) is in violation of (i) the Trading with the Enemy Act, (ii) any of the foreign assets control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V, as amended) or any enabling legislation or executive order relating thereto, or (iii) the USA PATRIOT Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)), as amended, (c) is a Sanctioned Person, (d) has its assets in Sanctioned Countries, or (e) derives its operating income from investments in, or transactions with Sanctioned Persons or Sanctioned Countries.  No part of the proceeds of any Loans or other extensions of credit hereunder will be used directly or indirectly to fund any operations in, finance any investments or activities in or make any payments to, a Sanctioned Person or a Sanctioned Country.

26

Section 4.2    Survival; Updates of Representations and Warranties.

All representations and warranties contained in or made under or in connection with this Agreement and the other Financing Documents shall survive the Closing Date, the making of any advance under the Loans and extension of credit made hereunder, and the incurring of any other Obligations and shall be deemed to have been made at the time of each request for, and again at the time of the making of, each advance under the Loans, except that the representations and warranties which relate to the financial statements which are referred to in Section 4.1.10 (Financial Condition), shall also be deemed to cover financial statements furnished from time to time to Lender pursuant to Section 6.1.1 (Financial Statements).

ARTICLE V
CONDITIONS PRECEDENT

Section 5.1    Conditions to the Initial Advance.

The making of the initial advance under the is subject to the fulfillment on or before the Closing Date of the following conditions precedent in a manner satisfactory in form and substance to Lender and its counsel:

5.1.1    Organizational Documents.

Lender shall have received:

(a)    a certificate of good standing certified by the Secretary of State, or other appropriate Governmental Authority, of the state of formation of Borrower;

(b)    a certificate of qualification to do business certified by the Secretary of State or other Governmental Authority of each jurisdiction in which Borrower conducts business; and

(c)    a certificate dated as of the Closing Date by the Secretary or an Assistant Secretary of Borrower covering:

(i)    true and complete copies of Borrower's organizational and governing documents and all amendments thereto;

(ii)    true and complete copies of the resolutions of its Board of Directors authorizing (A) the execution, delivery and performance of the Financing Documents to which it is a party, (B) the borrowings hereunder, and (C) the granting of the Liens contemplated by this Agreement and the Financing Documents to which Borrower is a party; and

(iii)    the incumbency, authority and signatures of the officers of Borrower authorized to sign this Agreement and the other Financing Documents to which Borrower is a party.

27

197

### 5.1.2   Opinion of Borrower's Counsel.

Lender shall have received the favorable opinion of counsel for Borrower addressed to Lender.

### 5.1.3   Consents, Licenses, Approvals, Etc.

Lender shall have received copies of all consents, licenses and approvals, required in connection with the execution, delivery, performance, validity and enforceability of the Financing Documents, and such consents, licenses and approvals shall be in full force and effect.

### 5.1.4   Notes.

Lender shall have received the Term Note conforming to the requirements hereof and executed by a Responsible Officer of Borrower and attested by a duly authorized representative of Borrower.

### 5.1.5   Financing Documents and Collateral.

Borrower shall have executed and delivered the Financing Documents to be executed by it, and shall have delivered original Chattel Paper, Instruments, Investment Property, and related Collateral and all opinions, title insurance, and other documents contemplated by Article III (The Collateral).

### 5.1.6   Other Financing Documents.

In addition to the Financing Documents to be delivered by Borrower, Lender shall have received the Financing Documents duly executed and delivered by Persons other than Borrower.

### 5.1.7   Other Documents, Etc.

Lender shall have received such other certificates, opinions, documents and instruments confirmatory of or otherwise relating to the transactions contemplated hereby as may have been reasonably requested by Lender, including without limitation, all approvals from the United States Small Business Administration.

### 5.1.8   Payment of Fees.

Lender shall have received payment of any Fees due on or before the Closing Date.

### 5.1.9   Collateral Disclosure List.

Borrower shall have delivered the Collateral Disclosure List required under the provisions of Section 3.3 (Collateral Disclosure List) duly executed by a Responsible Officer of Borrower.

28

5.1.10  Recordings and Filings.

Borrower shall have:  (a) executed and delivered all Financing Documents required to be filed, registered or recorded in order to create, in favor of Lender, a perfected Lien in the Collateral (subject only to the Permitted Liens) in form and in sufficient number for filing, registration, and recording in each office in each jurisdiction in which such filings, registrations and recordations are required, and (b) delivered such evidence as Lender deems satisfactory that all necessary filing fees and all recording and other similar fees, and all Taxes and other expenses related to such filings, registrations and recordings will be or have been paid in full.

5.1.11  Insurance Certificate.

Lender shall have received an insurance certificate in accordance with the provisions of Section 6.1.7 (Insurance).

5.1.12  Landlord's Waivers.

Lender shall have received a waiver from each landlord of each and every business premise leased by Borrower and on which any of the Collateral is or may hereafter be located, which landlords' waivers must be reasonably acceptable to Lender and its counsel in their sole and absolute discretion.

5.1.13  Life Insurance.

Lender shall have received a life insurance policy on the life of each Guarantor in the amount of Five Million Dollars ($5,000,000) each, which are issued by an insurance company and in such form and content satisfactory to Lender, together with the fully executed duplicate originals of the Assignment of Life Insurance.

ARTICLE VI
COVENANTS OF BORROWER

Section 6.1    Affirmative Covenants.

So long as any of the Obligations (or any the Commitments therefor) shall be outstanding hereunder, Borrower agrees with Lender as follows:

6.1.1    Financial Statements.

Borrower shall furnish to Lender:

(a)    Annual Statements and Certificates.  Borrower shall furnish to Lender as soon as available, but in no event more than one hundred fifty (150) days after the close of each fiscal year of Borrower, (i) a copy of the annual financial statement in reasonable detail satisfactory to Lender relating to Borrower and its Subsidiaries, prepared in accordance with GAAP and reviewed by independent certified public accountants satisfactory to Lender, which financial statement shall include a consolidated and consolidating balance sheet of Borrower and its Subsidiaries as of the end of such fiscal year and consolidated and consolidating statements of

29

income, cash flows and changes in shareholders equity of Borrower and its Subsidiaries for such fiscal year, and (ii) a management letter in the form prepared by Borrower's independent certified public accountants.

(b)     Quarterly Statements and Certificates.  Borrower shall furnish to Lender as soon as available, but in no event more than forty five (45) days after the close of Borrower's fiscal quarters, consolidated and consolidating balance sheets of Borrower and its Subsidiaries as of the close of such period, consolidated and consolidating income, cash flows and changes in shareholders equity statements for such period, a certification that no change has occurred to the information contained in the Collateral Disclosure List (except as set forth on a schedule attached to the certification), all as prepared and certified by a Responsible Officer of Borrower and accompanied by a certificate of that officer stating whether any event has occurred which constitutes a Default or an Event of Default hereunder, and, if so, stating the facts with respect thereto.

(c)     Monthly Statements and Certificates.  Borrower shall furnish to Lender as soon as available, but in no event more than twenty (20) days after the close of Borrower's fiscal months, consolidated and consolidating balance sheets of Borrower and its Subsidiaries as of the close of such period, consolidated and consolidating income, cash flows and changes in shareholders equity statements for such period, all as prepared and certified by a Responsible Officer of Borrower and accompanied by a certificate of that officer stating whether any event has occurred which constitutes a Default or an Event of Default hereunder. and, if so, stating the facts with respect thereto.

(d)     Additional Reports and Information.  Borrower shall furnish to Lender promptly, such additional information, reports or statements as Lender may from time to time reasonably request.

6.1.2   Recordkeeping, Rights of Inspection, Field Examination, Etc.

(a)     Borrower shall, and shall cause each of its Subsidiaries to, maintain (i) a standard system of accounting in accordance with GAAP, and (ii) proper books of record and account in which full, true and correct entries are made of all dealings and transactions in relation to its properties, business and activities.

(b)     Borrower shall, and shall cause each of its Subsidiaries to, permit authorized representatives of Lender to visit and inspect the properties of Borrower and its Subsidiaries, to review, audit, check and inspect the Collateral at any time with or without notice, to review, audit, check and inspect Borrower's other books of record at any time with or without notice and to make abstracts and photocopies thereof, and to discuss the affairs, finances and accounts of Borrower and/or any Subsidiaries, with the officers, directors, employees and other representatives of Borrower and/or any Subsidiaries and their respective accountants, all at such times during normal business hours and other reasonable times and as often as Lender may reasonably request.

(c)     Borrower hereby irrevocably authorizes and directs all accountants and auditors employed by Borrower and/or any Subsidiaries at any time prior to the repayment in full

35837009v2 221027.000071

of the Obligations to exhibit and deliver to Lender copies of any and all of the financial statements, trial balances, management letters, or other accounting records of any nature of Borrower and/or any Subsidiaries in the accountant's or auditor's possession, and to disclose to Lender any information they may have concerning the financial status and business operations of Borrower and its Subsidiaries.   Further, Borrower hereby authorizes all Governmental Authorities to furnish to Lender copies of reports or examinations relating to Borrower and/or any Subsidiaries, whether made by Borrower or otherwise.

(d)   Any and all costs and expenses incurred by, or on behalf of, Lender in connection with the conduct of any of the foregoing, including, without limitation, travel, lodging, meals, and other expenses for each auditor employed by Lender for inspections of the Collateral and Borrower's operations, shall be part of the Enforcement Costs and shall be payable to Lender upon demand.  Borrower acknowledges and agrees that such expenses may include, but shall not be limited to, any and all out-of-pocket costs and expenses of Lender's employees and agents in, and when, traveling to Borrower's facilities.

### 6.1.3   Existence.

Borrower shall (a) maintain, and cause each of its Subsidiaries to maintain, its existence in good standing in the jurisdiction in which it is organized and in each other jurisdiction where it is required to register or qualify to do business if the failure to do so in such other jurisdiction might have a material adverse effect on the ability of Borrower to perform the Obligations, on the conduct of Borrower's operations, on Borrower's financial condition, or on the value of, or the ability of Lender to realize upon, the Collateral and (b) remain a Registered Organization under the laws of the jurisdiction stated in the Preamble of this Agreement.

### 6.1.4   Compliance with Laws.

Borrower shall comply, and cause each of its Subsidiaries to comply, with all applicable Laws and observe the valid requirements of Governmental Authorities, the noncompliance with or the nonobservance of which might have a material adverse effect on the ability of Borrower to perform the Obligations, on the conduct of Borrower's operations, on Borrower's financial condition, or on the value of, or the ability of Lender to realize upon, the Collateral.

### 6.1.5   Preservation of Properties.

Borrower will, and will cause each of its Subsidiaries to, at all times (a) maintain, preserve, protect and keep its properties, whether owned or leased, in good operating condition, working order and repair (ordinary wear and tear excepted), and from time to time will make all proper repairs, maintenance, replacements, additions and improvements thereto needed to maintain such properties in good operating condition, working order and repair, and (b) do or cause to be done all things necessary to preserve and to keep in full force and effect its material franchises, leases of real and personal property, trade names, Patents, Trademarks, Copyrights and permits which are necessary for the orderly continuance of its business.

35837009v2 221027.000071

### 6.1.6   Line of Business.

Borrower will continue to engage primarily in the business of manufacture and sale of munitions.

### 6.1.7   Insurance.

(a)   General Provisions.   Borrower shall maintain insurance satisfactory to Lender as to amount, nature and carrier covering property damage (including loss of use and occupancy) to any of Borrower's properties, business interruption insurance, public liability insurance including coverage for contractual liability, product liability and workers' compensation, and any other insurance which is usual for Borrower's business.   Each policy shall provide for at least thirty (30) days prior notice to Lender of any cancellation thereof and name Lender as loss payee or additional insured, as appropriate.

(b)   Insurance Covering Collateral.   In addition to the insurance requirements stated above, Borrower shall also maintain all risk property damage insurance policies covering the tangible property comprising the Collateral.   Each insurance policy must be in an amount acceptable to Lender.   The insurance must be issued by an insurance company acceptable to Lender, must include a lender's loss payable endorsement in favor of Lender in a form acceptable to Lender and shall provide for at least thirty (30) days prior notice to Lender of any cancellation thereof.

(c)   Evidence of Insurance.   Upon the request of Lender, Borrower shall deliver to Lender a copy of each insurance policy, or, if permitted by Lender, a certificate of insurance listing all insurance in force.

### 6.1.8   Taxes.

Except to the extent that the validity or amount thereof is being contested in good faith and by appropriate proceedings, Borrower will, and will cause each of its Subsidiaries to, pay and discharge all Taxes prior to the date when any interest or penalty would accrue for the nonpayment thereof.   Borrower shall furnish to Lender at such times as Lender may require proof satisfactory to Lender of the making of payments or deposits required by applicable Laws including, without limitation, payments or deposits with respect to amounts withheld by Borrower from wages and salaries of employees and amounts contributed by Borrower on account of federal and other income or wage taxes and amounts due under the Federal Insurance Contributions Act, as amended.

### 6.1.9   Plans and Benefit Arrangements.

(a)   Each Borrower shall, and shall cause each of its Subsidiaries and each ERISA Affiliate to, comply with ERISA, the Internal Revenue Code and other Laws applicable to Plans and Benefit Arrangements except where such failure, alone or in conjunction with any other failure, would not reasonably be expected to materially adversely affect the business, operations or properties of any Borrower and/or its Subsidiaries.   Without limiting the generality of the foregoing, each Borrower shall cause all of its Plans and all Plans maintained by any of its Subsidiaries and any ERISA Affiliate to be funded in accordance with the minimum funding

32

35837009v2 221027.000071

requirements of the Internal Revenue Code and ERISA and shall make, and cause each ERISA Affiliate to make, in a timely manner, all contributions due to Plans, Benefit Arrangements, Multiple Employer Plans and Multiemployer Plans, except where any such failure, alone or in conjunction with any other failure, could not reasonably be expected to materially adversely affect the business, operations or properties of any Borrower and/or its Subsidiaries.

(b)     Promptly, and in any event within five business days after any Borrower or an ERISA Affiliate knows or reasonably should know of the occurrence thereof, each Borrower shall furnish or cause to be furnished to Lender notice (including the nature of the event and, when known, any action taken or threatened by the Internal Revenue Service or the PBGC and the action such party has taken or proposes to take with respect thereto) of the occurrence of any ERISA Event which could reasonably be expected to materially adversely affect the business, operations or properties of any Borrower and/or its Subsidiaries.

(c)     On the date any such records, documents or other information must be furnished to the PBGC with respect to any Plan pursuant to Section 4010 of ERISA, each Borrower shall furnish or cause to be furnished to Lender copies of such records, documents and information.

6.1.10   Notification of Events of Default and Adverse Developments.

Borrower shall promptly notify Lender upon obtaining knowledge of the occurrence of:

(a)     any Event of Default;

(b)     any Default;

(c)     any litigation instituted or threatened against Borrower or its Subsidiaries and of the entry of any judgment or Lien (other than any Permitted Liens) against any of the assets or properties of Borrower or any Subsidiary where the claims against Borrower or any of its Subsidiaries exceed One Hundred Thousand Dollars ($100,000) and are not covered by insurance;

(d)     any event, development or circumstance whereby the financial statements furnished hereunder fail in any material respect to present fairly, in accordance with GAAP, the financial condition and operational results of Borrower or any of its Subsidiaries;

(e)     any judicial, administrative or arbitral proceeding pending against Borrower or any of its Subsidiaries and any judicial or administrative proceeding known by Borrower to be threatened against it or any of its Subsidiaries that, if adversely decided, could materially adversely affect its financial condition or operations (present or prospective);

(f)     the receipt by Borrower or any of its Subsidiaries of any notice, claim or demand from any Governmental Authority which alleges that Borrower or any Subsidiary is in violation of any of the terms of, or has failed to comply with any applicable Laws regulating its operation and business, including, but not limited to, the Occupational Safety and Health Act and the Environmental Protection Act; and

(g)    any other development in the business or affairs of Borrower and any of its Subsidiaries that may be materially adverse;

in each case describing in detail satisfactory to Lender the nature thereof and the action Borrower proposes to take with respect thereto.

### 6.1.11  Hazardous Materials; Contamination.

Borrower agrees to:

(a)    give notice to Lender immediately upon Borrower's acquiring knowledge of the presence of any Hazardous Materials or any Hazardous Materials Contamination on any property owned, operated or controlled by Borrower or for which Borrower is, or is claimed to be, responsible (provided that such notice shall not be required for Hazardous Materials placed or stored on such property in accordance with applicable Laws in the ordinary course of Borrower's line of business expressly described in this Agreement), with a full description thereof;

(b)    promptly comply with any Laws requiring the removal, treatment or disposal of Hazardous Materials or Hazardous Materials Contamination and provide Lender with satisfactory evidence of such compliance;

(c)    provide Lender, within thirty (30) days after a demand by Lender, with a bond, letter of credit or similar financial assurance evidencing to Lender's satisfaction that the necessary funds are available to pay the cost of removing, treating, and disposing of such Hazardous Materials or Hazardous Materials Contamination and discharging any Lien which may be established as a result thereof on any property owned, operated or controlled by Borrower or for which Borrower is, or is claimed to be, responsible; and

(d)    as part of the Obligations, defend, indemnify and hold harmless Lender and its agents, employees, trustees, successors and assigns from any and all claims which may now or in the future (whether before or after the termination of this Agreement) be asserted as a result of the presence of any Hazardous Materials or any Hazardous Materials Contamination on any property owned, operated or controlled by Borrower or for which Borrower is, or is claimed to be, responsible.  Borrower acknowledges and agrees that this indemnification shall survive the termination of this Agreement and the Commitments and the payment and performance of all of the other Obligations.

### 6.1.12  Key Man Life Insurance.

Borrower shall, or shall cause each of the Guarantors to, at all times maintain life insurance with a responsible insurer on the life of each Guarantor in an amount not less than Five Million Dollars ($5,000,000) per Guarantor and will assign the proceeds of such life insurance to Lender pursuant to the Assignment of Life Insurance.

### 6.1.13 Collection of Receivables.

Until such time that Lender shall notify Borrower of the revocation of such privilege, Borrower and each of the Subsidiaries shall at its own expense have the privilege for the account of, and in trust for, Lender of collecting its Receivables and receiving in respect thereto all Items of Payment and shall otherwise completely service all of the Receivables including (a) the billing, posting and maintaining of complete records applicable thereto, (b) the taking of such action with respect to the Receivables as Lender may request or in the absence of such request, as Borrower and each of the Subsidiaries may deem advisable, and (c) the granting, in the ordinary course of business, to any Account Debtor, any rebate, refund or adjustment to which the Account Debtor may be lawfully entitled, and may accept, in connection therewith, the return of goods, the sale or lease of which shall have given rise to a Receivable and may take such other actions relating to the settling of any Account Debtor's claim as may be commercially reasonable. Lender may, at its option, at any time or from time to time after and during the continuance of an Event of Default hereunder, revoke the collection privilege given in this Agreement to Borrower and any one or more of the Subsidiaries by either giving notice of its assignment of, and lien on the Collateral to the Account Debtors or giving notice of such revocation to Borrower. Lender shall not have any duty to, and Borrower hereby releases Lender from all claims of loss or damage caused by the delay or failure to collect or enforce any of the Receivables or to preserve any rights against any other party with an interest in the Collateral. Lender shall be entitled at any time and from time to time to confirm and verify Receivables.

### 6.1.14 Assignments of Receivables.

Borrower will promptly, upon request, execute and deliver to Lender written assignments, in form and content acceptable to Lender, of specific Receivables or groups of Receivables; provided, however, the Lien and/or security interest granted to Lender under this Agreement shall not be limited in any way to or by the inclusion or exclusion of Receivables within such assignments. Receivables so assigned shall secure payment of the Obligations and are not sold to Lender whether or not any assignment thereof, which is separate from this Agreement, is in form absolute. Borrower agrees that neither any assignment to Lender nor any other provision contained in this Agreement or any of the other Financing Documents shall impose on Lender any obligation or liability of Borrower with respect to that which is assigned and Borrower hereby agrees to indemnify Lender and hold Lender harmless from any and all claims, actions, suits, losses, damages, costs, expenses, fees, obligations and liabilities which may be incurred by or imposed upon Lender by virtue of the assignment of and Lien on Borrower's rights, title and interest in, to, and under the Collateral.

### 6.1.15 Government Accounts.

Borrower will immediately notify Lender if any of the Receivables arise out of contracts with the United States or with any other Governmental Authority, and, as appropriate, execute any documents and take any steps required by Lender in order that all moneys due and to become due under such contracts shall be assigned to Lender and notice thereof given to the Governmental Authority under the Federal Assignment of Claims Act or any other applicable Laws.

35837009v2 221027.000071

### 6.1.16  Notice of Returned Goods, etc.

Borrower will promptly notify, and will cause the Subsidiaries to promptly notify, Lender of the return, rejection or repossession of any goods sold or delivered in respect of any Receivables, and of any claims made in regard thereto to the extent that the aggregate purchase price of any such goods in any given calendar month exceeds in the aggregate Ten Thousand Dollars ($10,000.00) in any given calendar month.

### 6.1.17  Inventory.

With respect to the Inventory, Borrower and the Subsidiaries will:  (a) maintain a perpetual inventory reporting system at all times; (b) conduct a physical count of the Inventory at least once per Fiscal Year, and at such other times as Lender requests, and shall promptly, upon completion, supply Lender with a copy of such count accompanied by a report of the value of such Inventory (valued at the lower of cost, on a first-in, first-out basis, or market value); (c) as soon as possible upon demand by Lender from time to time, prepare and deliver to Lender designations of Inventory specifying Borrower's and Subsidiaries' cost of Inventory, the retail price thereof, and such other matters and information relating to the Inventory as Lender may reasonably request; (d) keep correct and accurate records itemizing and describing the kind, type, quality and quantity of Inventory, Borrower's and Subsidiaries' cost therefor and the selling price thereof, all of which records shall be available to the officers, employees or agents of Lender upon demand for inspection and copying thereof; (e) not store any Inventory with a bailee, warehouseman or similar Person without Lender's prior written consent, which consent may be conditioned on, among other things, delivery by the bailee, warehouseman or similar Person to Lender of warehouse receipts, in form acceptable to Lender, in the name of Lender evidencing the storage of Inventory and the interests of Lender therein; (f) permit Lender and its agents or representatives to inspect and examine the Inventory and to check and test the same as to quality, quantity, value and condition at any time or times hereafter during Borrower's and Subsidiaries' usual business hours or at other reasonable times; and (g) at Lender's request, designate Lender as the consignee on all bills of lading and other negotiable and non-negotiable documents.  Borrower shall be permitted to sell its Inventory in the ordinary course of business until the occurrence of an Event of Default.

### 6.1.18  Maintenance of the Collateral.

Borrower will maintain the Collateral in good working order, saving and excepting ordinary wear and tear, and will not permit anything to be done to the Collateral that may materially impair the value thereof.  Lender, or an agent designated by Lender, shall be permitted to enter the premises of Borrower and the Subsidiaries and examine, audit and inspect the Collateral at any reasonable time and from time to time without notice.  Lender shall not have any duty to, and Borrower hereby releases Lender from all claims of loss or damage caused by the delay or failure to collect or enforce any of the Receivables or to, preserve any rights against any other party with an interest in the Collateral.

6.1.19 Equipment.

Borrower shall (a) maintain all Equipment as personalty, (b) not affix any Equipment to any real estate in such manner as to become a fixture or part of such real estate, and (c) shall hold no Equipment on a sale on approval basis. Borrower hereby declares its intent that, notwithstanding the means of attachment, no goods of Borrower hereafter attached to any realty shall be deemed a fixture, which declaration shall be irrevocable, without Lender's consent, until all of the Obligations have been paid in full and all of the Commitments have been terminated or have expired.

6.1.20 Defense of Title and Further Assurances.

At its expense, Borrower will defend the title to the Collateral (and any part thereof), and will immediately execute, acknowledge and deliver any renewal, affidavit, deed, assignment, security agreement, certificate or other document which Lender may require in order to perfect, preserve, maintain, continue, protect and/or extend the Lien granted to Lender under this Agreement or under any of the other Financing Documents and the first priority of that Lien, subject only to the Permitted Liens. Borrower hereby authorizes the filing of any financing statement or continuation statement required under the Uniform Commercial Code. Borrower will from time to time do whatever Lender may require by way of obtaining, executing, delivering, and/or filing landlords' or mortgagees' or bailees' waivers, notices of assignment and other notices and amendments and renewals thereof and Borrower will take any and all steps and observe such formalities as Lender may require, in order to create and maintain a valid Lien upon, pledge of, or paramount security interest in, the Collateral, subject to the Permitted Liens. Borrower shall pay to Lender on demand all taxes, costs and expenses incurred by Lender in connection with the preparation, execution, recording and filing of any such document or instrument. To the extent that the proceeds of any of the Accounts or Receivables of Borrower are expected to become subject to the control of, or in the possession of, a party other than Borrower or Lender, Borrower shall cause all such parties to execute and deliver on the Closing Date security documents or other documents as requested by Lender and as may be necessary to evidence and/or perfect the security interest of Lender in those proceeds. Borrower hereby irrevocably appoints Lender as Borrower's attorney-in-fact, with power of substitution, in the name of Lender or in the name of Borrower or otherwise, for the use and benefit of Lender, but at the cost and expense of Borrower and without notice to Borrower, to execute and deliver any and all of the instruments and other documents and take any action which Lender may require pursuant the foregoing provisions of this Section 6.1.20.

6.1.21 Business Names; Locations.

Borrower will notify and cause each of its Subsidiaries to notify Lender not less than thirty (30) days prior to (a) any change in the name under which Borrower or the applicable Subsidiary conducts its business, (b) any change of the location of the chief executive office of Borrower or the applicable Subsidiary, and (c) the opening of any new place of business or the closing of any existing place of business, and (d) any change in the location of the places where the Collateral, or any part thereof, or the books and records, or any part thereof, are kept.

### 6.1.22 Use of Premises and Equipment.

Borrower agrees that until the Obligations are fully paid and all of the Commitments have been terminated or have expired, Lender: (a) after and during the continuance of an Event of Default, may use any of Borrower's owned or leased lifts, hoists, trucks and other facilities or equipment for handling or removing the Collateral; and (b) shall have, and is hereby granted, a right of ingress and egress to the places where the Collateral is located, and may proceed over and through any of Borrower's owned or leased property.

### 6.1.23 Protection of Collateral.

Borrower agrees that Lender may at any time following an Event of Default take such steps as Lender deems reasonably necessary to protect the interest of Lender in, and to preserve the Collateral, including, the hiring of such security guards or the placing of other security protection measures as Lender deems appropriate, may employ and maintain at any of Borrower's premises a custodian who shall have full authority to do all acts necessary to protect the interests of Lender in the Collateral and may lease warehouse facilities to which Lender may move all or any part of the Collateral to the extent commercially reasonable. Borrower agrees to cooperate fully with Lender's efforts to preserve the Collateral and will take such actions to preserve the Collateral as Lender may reasonably direct. All of Lender's expenses of preserving the Collateral, including any reasonable expenses relating to the compensation and bonding of a custodian, shall be part of the Enforcement Costs.

### 6.1.24 Appraisals.

Whenever a Default or an Event of Default exists, and at such other times as Lender may request, but not more frequently than once a year, Borrower shall, at its expense, provide Lender with appraisals or updates thereof of any or all of the Collateral from an appraiser and in form in all respects satisfactory to Lender.

### 6.1.25 Principal Depository.

Borrower shall maintain its primary depository and cash management relationship with Lender until the Obligations have been satisfied in full.

### Section 6.2    Negative Covenants.

So long as any of the Obligations or the Commitments shall be outstanding hereunder, Borrower agrees with Lender as follows:

### 6.2.1    Capital Structure, Merger, Acquisition or Sale of Assets.

Borrower will not alter or amend its capital structure, authorize any additional class of equity, issue any stock or equity of any class, enter into any merger or consolidation or amalgamation, windup or dissolve itself (or suffer any liquidation or dissolution) or acquire all or substantially all the assets of any Person, or sell, lease or otherwise dispose of any of its assets (except Inventory disposed of in the ordinary course of business prior to an Event of Default).

38

Any consent of Lender to the disposition of any assets may be conditioned on a specified use of the proceeds of disposition.

### 6.2.2 Subsidiaries.

Borrower will not create or acquire any Subsidiaries other than the Subsidiaries identified on the Collateral Disclosure List.

### 6.2.3 Issuance of Stock.

Borrower will not issue, or grant any option or right to purchase, any of its capital stock.

### 6.2.4 Purchase or Redemption of Securities, Dividend Restrictions.

Borrower will not (a) purchase, redeem, or otherwise acquire any shares of its capital stock, options, or warrants now or hereafter outstanding, declare or pay any dividends or other distribution thereon (other than a dividend or distribution payable solely in stock or equity of Borrower or rights or options to acquire such stock or equity interests), (b) apply any of its property or assets to the purchase, redemption or other retirement of, set apart any sum for the payment of any dividends on, or for the purchase, redemption or other retirement of, make any distribution by reduction of capital or otherwise in respect of, any shares of any class of capital stock of Borrower, or any options or warrants of Borrower, (c) permit any Subsidiary to purchase or acquire any shares of any class of capital stock of, or options or warrants issued by, Borrower, (d) make any distribution to stockholders or set aside any funds for any such purpose, and (e) prepay, purchase or redeem any Indebtedness for Borrowed Money other than the Obligations. Notwithstanding the foregoing, so long as Borrower is eligible for taxation as a corporation under Subchapter S of the Internal Revenue Code and provided there shall exist no Default or Event of Default, Borrower may distribute to each of its shareholders an amount sufficient to cover that shareholder's actual tax liability due and payable as a result of income of Borrower attributed to such shareholders.

### 6.2.5 Indebtedness.

Borrower will not, and will not permit any Subsidiary to, create, incur, assume or suffer to exist any Indebtedness for Borrowed Money, or permit any Subsidiary to do so, except:

        (a)      the Obligations;

        (b)      current accounts payable arising in the ordinary course;

        (c)      Indebtedness secured by Permitted Liens;

        (d)      Subordinated Indebtedness; and

        (e)      Indebtedness of Borrower existing on the date hereof and reflected on the financial statements furnished pursuant to Section 4.1.10 (Financial Condition).