6.2.6   Investments, Loans and Other Transactions.

Except as otherwise provided in this Agreement, Borrower will not, and will not permit any of its Subsidiaries to, (a) make, assume, acquire or continue to hold any investment in any real property (unless used in connection with its business and treated as a Fixed or Capital Asset of Borrower or the Subsidiary) or any Person, whether by stock purchase, capital contribution, acquisition of indebtedness of such Person or otherwise (including, without limitation, investments in any joint venture or partnership), (b) guaranty or otherwise become contingently liable for the Indebtedness or obligations of any Person, or (c) make any loans or advances, or otherwise extend credit to any Person, except:

(a)   any advance to an officer or employee of Borrower or any Subsidiary for travel or other business expenses in the ordinary course of business, provided that the aggregate amount of all such advances by Borrower and its Subsidiaries (taken as a whole) outstanding at any time shall not exceed Two Thousand Five Hundred Dollars ($2,500);

(b)   the endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business;

(c)   any investment in Cash Equivalents, which are pledged to Lender as collateral and security for the Obligations; and

(d)   trade credit extended to customers in the ordinary course of business.

6.2.7   Stock of Subsidiaries.

Borrower will not sell or otherwise dispose of any shares of capital stock of any Subsidiary (except in connection with a merger or consolidation of a Wholly Owned Subsidiary into Borrower or another Wholly Owned Subsidiary or with the dissolution of any Subsidiary) or permit any Subsidiary to issue any additional shares of its capital stock except pro rata to its stockholders.

6.2.8   Subordinated Indebtedness.

Borrower will not, and will not permit any Subsidiary to make:

(a)   any payment of principal of, or interest on, any of the Subordinated Indebtedness, if a Default or an Event of Default then exists hereunder or would result from such payment;

(b)   any payment of the principal or interest due on the Subordinated Indebtedness as a result of acceleration thereunder or a mandatory prepayment thereunder;

(c)   any amendment or modification of or supplement to the documents evidencing or securing the Subordinated Indebtedness; or

(d)   payment of principal or interest on the Subordinated Indebtedness other than when due (without giving effect to any acceleration of maturity or mandatory prepayment).

40

6.2.9   Liens; Confessed Judgment.

Borrower agrees that it (a) will not create, incur, assume or suffer to exist any Lien upon any of its properties or assets, whether now owned or hereafter acquired, or permit any Subsidiary so to do, except for Liens securing the Obligations and Permitted Liens, (b) will not agree to, assume or suffer to exist any provision in any instrument or other document for confession of judgment, cognovit or other similar right or remedy, (c) will not allow or suffer to exist any Permitted Liens to be superior to Liens securing the Obligations, (d) will not enter into any contracts for the consignment of goods, will not execute or suffer the filing of any financing statements or the posting of any signs giving notice of consignments, and will not, as a material part of its business, engage in the sale of goods belonging to others, and (e) will not allow or suffer to exist the failure of any Lien described in the Security Documents to attach to, and/or remain at all times perfected on, any of the property described in the Security Documents.

6.2.10   Transactions with Affiliates.

Borrower and its Subsidiaries will not enter into or participate in any transaction with any Affiliate or, except in the ordinary course of business, with the officers, directors, employees and other representatives of Borrower and/or any Subsidiary.

6.2.11   Other Businesses.

Borrower and its Subsidiaries will not engage directly or indirectly in any business other than its current line of business described elsewhere in this Agreement.

6.2.12   ERISA Compliance.

Neither Borrower nor any Commonly Controlled Entity shall:  (a) engage in or permit any "prohibited transaction" (as defined in ERISA); (b) cause any "accumulated funding deficiency" as defined in ERISA and/or the Internal Revenue Code; (c) terminate any pension plan in a manner which could result in the imposition of a lien on the property of Borrower pursuant to ERISA; (d) terminate or consent to the termination of any Multi-employer Plan; or (e) incur a complete or partial withdrawal with respect to any Multi-employer Plan.

6.2.13   Prohibition on Hazardous Materials.

Borrower shall not place, manufacture or store or permit to be placed, manufactured or stored any Hazardous Materials on any property owned, operated or controlled by Borrower or for which Borrower is responsible other than Hazardous Materials placed or stored on such property in accordance with applicable Laws in the ordinary course of Borrower's business expressly described in this Agreement, provided, however, that this prohibition shall not prohibit the placement, manufacture, or storage of Hazardous Material placed, manufactured, or stored on such property in accordance with applicable Laws in the ordinary course of Borrower's line of business expressly described in this Agreement.

6.2.14   Method of Accounting; Fiscal Year.

Borrower will not:

(a)    change the method of accounting employed in the preparation of any financial statements furnished to Lender under the provisions of Section 6.1.1 (Financial Statements), unless required to conform to GAAP and on the condition that Borrower's accountants shall furnish such information as Lender may request to reconcile the changes with Borrower's prior financial statements.

(b)    change its fiscal year from a year ending on December 31.

6.2.15  Compensation.

Neither Borrower nor any of its Subsidiaries will pay any bonuses, fees, compensation, commissions, salaries, drawing accounts, or other payments (cash and non-cash), whether direct or indirect, to any stockholders, Subsidiary, or any Affiliate, other than reasonable compensation for actual services rendered by stockholders in their capacity as officers or employees of Borrower or Subsidiary.

6.2.16  Transfer of Collateral.

Borrower and the Subsidiaries will not transfer, or permit the transfer, to another location of any of the Collateral or the books and records related to any of the Collateral.

6.2.17  Sale and Leaseback.

Neither Borrower nor the Subsidiaries will directly or indirectly enter into any arrangement to sell or transfer all or any substantial part of its fixed assets and thereupon or within one (1) year thereafter rent or lease the assets so sold or transferred.

6.2.18  Disposition of Collateral.

Borrower will not sell, discount, allow credits or allowances, transfer, assign, extend the time for payment on, convey, lease, assign, transfer or otherwise dispose of the Collateral, except, prior to an Event of Default, dispositions expressly permitted elsewhere in this Agreement, the sale of Inventory in the ordinary course of business, and the sale of unnecessary or obsolete Equipment, but only if the proceeds of the sale of such Equipment are (a) used to purchase similar Equipment to replace the unnecessary or obsolete Equipment or (b) immediately turned over to Lender for application to the Obligations in accordance with the provisions of this Agreement.

35837009v2 221027.000071

## ARTICLE VII
## DEFAULT AND RIGHTS AND REMEDIES

Section 7.1    Events of Default.

The occurrence of any one or more of the following events shall constitute an "Event of Default" under the provisions of this Agreement:

### 7.1.1    Failure to Pay.

The failure of Borrower to pay any of the Obligations as and when due and payable in accordance with the provisions of this Agreement, the Notes and/or any of the other Financing Documents.

### 7.1.2    Breach of Representations and Warranties.

Any representation or warranty made in this Agreement or in any report, statement, schedule, certificate, opinion (including any opinion of counsel for Borrower), financial statement or other document furnished in connection with this Agreement, any of the other Financing Documents, or the Obligations, shall prove to have been false or misleading when made (or, if applicable, when reaffirmed) in any material respect.

### 7.1.3    Covenant Defaults.

Default shall be made by the Borrower in the due observance and performance of any covenant, condition or agreement contained in Sections 6.1.1, 6.1.2, 6.1.76.1.8, 6.1.10, 6.1.12 and 6.2 hereof.

### 7.1.4    Failure to Comply with Covenants.

The failure of the Borrower to perform, observe or comply with any material covenant, condition or agreement contained in this Agreement (other than those expressly described in other Sections of this ARTICLE VII) and such failure continues uncured for a period of fifteen (15) days after Notice from the Lender to the Borrower.

### 7.1.5    Default Under Other Financing Documents or Obligations.

A default shall occur under any of the other Financing Documents or under any other Obligations, and such default is not cured within any applicable grace period provided therein.

### 7.1.6    Receiver; Bankruptcy.

Borrower or any Subsidiary shall (a) apply for or consent to the appointment of a receiver, trustee or liquidator of itself or any of its property, (b) admit in writing its inability to pay its debts as they mature, (c) make a general assignment for the benefit of creditors, (d) be adjudicated a bankrupt or insolvent, (e) file a voluntary petition in bankruptcy or a petition or an answer seeking or consenting to reorganization or an arrangement with creditors or to take

43

advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting the material allegations of a petition filed against it in any proceeding under any such law, or take corporate action for the purposes of effecting any of the foregoing, or (f) by any act indicate its consent to, approval of or acquiescence in any such proceeding or the appointment of any receiver of or trustee for any of its property, or suffer any such receivership, trusteeship or proceeding to continue undischarged for a period of sixty (60) days, or (g) by any act indicate its consent to, approval of or acquiescence in any order, judgment or decree by any court of competent jurisdiction or any Governmental Authority enjoining or otherwise prohibiting the operation of a material portion of Borrower's or any Subsidiary's business or the use or disposition of a material portion of Borrower's or any Subsidiary's assets.

### 7.1.7   Involuntary Bankruptcy, etc.

An order for relief shall be entered in any involuntary case brought against Borrower or any Subsidiary under the Bankruptcy Code, or (b) any such case shall be commenced against Borrower or any Subsidiary and shall not be dismissed within sixty (60) days after the filing of the petition, or (c) an order, judgment or decree under any other Law is entered by any court of competent jurisdiction or by any other Governmental Authority on the application of a Governmental Authority or of a Person other than Borrower or any Subsidiary (i) adjudicating Borrower, or any Subsidiary bankrupt or insolvent, or (ii) appointing a receiver, trustee or liquidator of Borrower or of any Subsidiary, or of a material portion of Borrower's or any Subsidiary's assets, or (iii) enjoining, prohibiting or otherwise limiting the operation of a material portion of Borrower's or any Subsidiary's business or the use or disposition of a material portion of Borrower's or any Subsidiary's assets, and such order, judgment or decree continues unstayed and in effect for a period of thirty (30) days from the date entered.

### 7.1.8   Judgment.

Unless adequately insured in the opinion of Lender, the entry of a final judgment for the payment of money involving more than $100,000 against Borrower or any Subsidiary, and the failure by Borrower or such Subsidiary to discharge the same, or cause it to be discharged, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered, or to secure a stay of execution pending appeal of such judgment.

### 7.1.9   Execution; Attachment.

Any execution or attachment shall be levied against the Collateral, or any part thereof, and such execution or attachment shall not be set aside, discharged or stayed within thirty (30) days after the same shall have been levied.

### 7.1.10   Default Under Other Borrowings.

Default shall be made with respect to any Indebtedness for Borrowed Money (other than the Loans) if the default is a failure to pay at maturity or if the effect of such default is to accelerate the maturity of such Indebtedness for Borrowed Money or to permit the holder or

35837009v2 221027.000071

obligee thereof or other party thereto to cause such Indebtedness for Borrowed Money to become due prior to its stated maturity.

### 7.1.11  Challenge to Agreements.

Borrower or any Guarantor shall challenge the validity and binding effect of any provision of any of the Financing Documents or shall state its intention to make such a challenge of any of the Financing Documents or any of the Financing Documents shall for any reason (except to the extent permitted by its express terms) cease to be effective or to create a valid and perfected first priority Lien (except for Permitted Liens) on, or security interest in, any of the Collateral purported to be covered thereby.

### 7.1.12  Events Relating to Plans and Benefit Arrangements.

Any of the following occurs:  (a) an ERISA Event; (b) proceedings shall have been instituted or other action taken to terminate any Plan in a distress termination; (c) a trustee shall be appointed by the PBGC to administer or liquidate any Plan; (d) the PBGC shall give notice of its intent to institute proceedings to terminate any Plan or Plans or to appoint a trustee to administer or liquidate any Plan; (e) any Borrower or an ERISA Affiliate shall fail to make any contributions when due to a Plan, Multiple Employer Plan, Multiemployer Plan or Benefit Arrangement; (f) any Borrower or an ERISA Affiliate shall withdraw completely or partially from a Multiemployer Plan; (g) any Borrower or an ERISA Affiliate shall withdraw (or shall be deemed under Section 4062(e) of ERISA to withdraw) from a Multiple Employer Plan; or (h) any Benefit Arrangement shall fail to comply with, or be administered in compliance with, its terms or the Internal Revenue Code, ERISA or other applicable Laws and, with respect to the events specified in (a) through (h) such occurrence, alone or in conjunction with any other occurrence, could reasonably be expected to materially adversely affect the business, operations or properties of any Borrower and/or its Subsidiaries.

### 7.1.13  Material Adverse Change.

Lender in its sole discretion determines in good faith that a material adverse change has occurred in the financial condition of Borrower.

### 7.1.14  Impairment of Position.

Lender, in its sole discretion, determines in good faith that an event has occurred which impairs the prospect of payment of any of the Obligations and/or the value of the Collateral.

### 7.1.15  Collateral Inadequacy.

The determination in good faith by Lender that the security for the Obligations is inadequate.

### 7.1.16  Change in Ownership.

Any change shall occur in the ownership of Borrower.

45

### 7.1.17 Liquidation, Termination, Dissolution, Change in Management, etc.

Borrower shall liquidate, dissolve or terminate its existence or shall suspend or terminate a substantial portion of its business operations or any change occurs in the management or control of Borrower without the prior written consent of Lender.

Section 7.2    Remedies.

Upon the occurrence of any Event of Default, Lender may, in the exercise of its sole and absolute discretion from time to time, at any time thereafter exercise any one or more of the following rights, powers or remedies:

### 7.2.1 Acceleration.

Lender may declare any or all of the Obligations to be immediately due and payable, notwithstanding anything contained in this Agreement or in any of the other Financing Documents to the contrary, without presentment, demand, protest, notice of protest or of dishonor, or other notice of any kind, all of which Borrower hereby waives.

### 7.2.2 Further Advances.

Lender may from time to time without notice to Borrower suspend, terminate or limit any further advances, loans or other extensions of credit under the Commitments, under this Agreement and/or under any of the other Financing Documents. Further, upon the occurrence of an Event of Default or Default specified in Section 7.1.6 (Receiver; Bankruptcy) or Section 7.1.7 (Involuntary Bankruptcy, etc.), the Revolving Credit Commitment and any agreement in any of the Financing Documents to provide additional credit shall immediately and automatically terminate and the unpaid principal amount of the Notes (with accrued interest thereon) and all other Obligations then outstanding, shall immediately become due and payable without further action of any kind and without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived by Borrower.

### 7.2.3 Uniform Commercial Code.

Lender shall have all of the rights and remedies of a secured party under the applicable Uniform Commercial Code and other applicable Laws. Upon demand by Lender, Borrower shall assemble the Collateral and make it available to Lender, at a place designated by Lender. Lender or its agents may without notice from time to time enter upon Borrower's premises to take possession of the Collateral, to remove it, to render it unusable, to process it or otherwise prepare it for sale, or to sell or otherwise dispose of it.

Any written notice of the sale, disposition or other intended action by Lender with respect to the Collateral which is sent by regular mail, postage prepaid, to Borrower at the address set forth in Section 8.1 (Notices), or such other address of Borrower which may from time to time be shown on Lender's records, at least ten (10) days prior to such sale, disposition or other action, shall constitute commercially reasonable notice to Borrower. Lender may alternatively or additionally give such notice in any other commercially reasonable manner.

Nothing in this Agreement shall require Lender to give any notice not required by applicable Laws.

If any consent, approval, or authorization of any state, municipal or other Governmental Authority or of any other Person or of any Person having any interest therein, should be necessary to effectuate any sale or other disposition of the Collateral, Borrower agrees to execute all such applications and other instruments, and to take all other action, as may be required in connection with securing any such consent, approval or authorization.

Borrower recognizes that Lender may be unable to effect a public sale of all or a part of the Collateral consisting of Investment Property by reason of certain prohibitions contained in the Securities Act of 1933, as amended, and other applicable Federal and state Laws. Lender may, therefore, in its discretion, take such steps as it may deem appropriate to comply with such Laws and may, for example, at any sale of the Collateral consisting of securities restrict the prospective bidders or purchasers as to their number, nature of business and investment intention, including, without limitation, a requirement that the Persons making such purchases represent and agree to the satisfaction of Lender that they are purchasing such securities for their account, for investment, and not with a view to the distribution or resale of any thereof. Borrower covenants and agrees to do or cause to be done promptly all such acts and things as Lender may request from time to time and as may be necessary to offer and/or sell the securities or any part thereof in a manner which is valid and binding and in conformance with all applicable Laws. Upon any such sale or disposition, Lender shall have the right to deliver, assign and transfer to the purchaser thereof the Collateral consisting of securities so sold.

### 7.2.4   Specific Rights With Regard to Collateral.

In addition to all other rights and remedies provided hereunder or as shall exist at law or in equity from time to time, Lender may (but shall be under no obligation to), without notice to Borrower, and Borrower hereby irrevocably appoints Lender as its attorney-in-fact, with power of substitution, in the name of Lender and/or in the name of Borrower or otherwise, for the use and benefit of Lender, but at the cost and expense of Borrower and without notice to Borrower:

(a)     request any Account Debtor obligated on any of the Accounts to make payments thereon directly to Lender, with Lender taking control of the Proceeds thereof;

(b)     compromise, extend or renew any of the Collateral or deal with the same as it may deem advisable;

(c)     make exchanges, substitutions or surrenders of all or any part of the Collateral;

(d)     copy, transcribe, or remove from any place of business of Borrower or any Subsidiary all books, records, ledger sheets, correspondence, invoices and documents, relating to or evidencing any of the Collateral or without cost or expense to Lender, make such use of Borrower's or any Subsidiary's place(s) of business as may be reasonably necessary to administer, control and collect the Collateral;

(e)     repair, alter or supply goods if necessary to fulfill in whole or in part the purchase order of any Account Debtor;

(f)     demand, collect, receipt for and give renewals, extensions, discharges and releases of any of the Collateral;

(g)     institute and prosecute legal and equitable proceedings to enforce collection of, or realize upon, any of the Collateral;

(h)     settle, renew, extend, compromise, compound, exchange or adjust claims in respect of any of the Collateral or any legal proceedings brought in respect thereof;

(i)     endorse or sign the name of Borrower upon any Items of Payment, certificates of title, Instruments, Investment Property, stock powers, documents, documents of title, financing statements, assignments, notices, or other writing relating to or part of the Collateral and on any proof of claim in bankruptcy against an Account Debtor;

(j)     clear Inventory through customs in Lender's or Borrower's name and to sign and deliver to customs officials powers of attorney in Borrower's name for such purpose;

(k)     notify the Post Office authorities to change the address for the delivery of mail to Borrower to such address or Post Office Box as Lender may designate and receive and open all mail addressed to Borrower; and

(l)     take any other action necessary or beneficial to realize upon or dispose of the Collateral or to carry out the terms of this Agreement.

7.2.5   Application of Proceeds.

Any proceeds of sale or other disposition of the Collateral will be applied by Lender to the payment first of any and all Enforcement Costs, and any balance of such proceeds will be applied to the Obligations in such order and manner as Lender shall determine. If the sale or other disposition of the Collateral fails to fully satisfy the Obligations, Borrower shall remain liable to Lender for any deficiency.

7.2.6   Performance by Lender.

Lender without notice to or demand upon Borrower and without waiving or releasing any of the Obligations or any Default or Event of Default, may (but shall be under no obligation to) at any time thereafter make such payment or perform such act for the account and at the expense of Borrower, and may enter upon the premises of Borrower for that purpose and take all such action thereon as Lender may consider necessary or appropriate for such purpose and Borrower hereby irrevocably appoints Lender as its attorney-in-fact to do so, with power of substitution, in the name of Lender, in the name of Borrower or otherwise, for the use and benefit of Lender, but at the cost and expense of Borrower and without notice to Borrower. All sums so paid or advanced by Lender together with interest thereon from the date of payment, advance or incurring until paid in full at the Post-Default Rate and all costs and expenses, shall be deemed

48

part of the Enforcement Costs, shall be paid by Borrower to Lender on demand, and shall constitute and become a part of the Obligations.

### 7.2.7   Other Remedies.

Lender may from time to time proceed to protect or enforce its rights by an action or actions at law or in equity or by any other appropriate proceeding, whether for the specific performance of any of the covenants contained in this Agreement or in any of the other Financing Documents, or for an injunction against the violation of any of the terms of this Agreement or any of the other Financing Documents, or in aid of the exercise or execution of any right, remedy or power granted in this Agreement, the Financing Documents, and/or applicable Laws. Lender is authorized to offset and apply to all or any part of the Obligations all moneys, credits and other property of any nature whatsoever of Borrower now or at any time hereafter in the possession of, in transit to or from, under the control or custody of, or on deposit with, Lender or any Affiliate of Lender.

## ARTICLE VIII
## MISCELLANEOUS

Section 8.1    Notices.

All notices, requests and demands to or upon the parties to this Agreement shall be in writing and shall be deemed to have been given or made when delivered by hand on a Business Day, or two (2) days after the date when deposited in the mail, postage prepaid by registered or certified mail, return receipt requested, or when sent by overnight courier, on the Business Day next following the day on which the notice is delivered to such overnight courier, addressed as follows:

| | |
|---|---|
| Borrower: | Pacem Solution International LLC<br>2941 Fairview Park Drive, Suite 550<br>Falls Church, Virginia 22042<br>Attention: Joseph E. Schmitz, Esq. |
| Lender: | |
| | Attention: |
| with a copy to: | Troutman Sanders LLP<br>401 9th Street, NW, Suite 1000<br>Washington, DC 20004<br>Attention: Richard M. Pollak, Esquire |

By written notice, each party to this Agreement may change the address to which notice is given to that party, provided that such changed notice shall include a street address to which notices may be delivered by overnight courier in the ordinary course on any Business Day.

35837009v2 221027 000071

Section 8.2    Amendments; Waivers.

This Agreement and the other Financing Documents may not be amended, modified, or changed in any respect except by an agreement in writing signed by Lender and Borrower. No waiver of any provision of this Agreement or of any of the other Financing Documents, nor consent to any departure by Borrower therefrom, shall in any event be effective unless the same shall be in writing signed by Lender. No course of dealing between Borrower and Lender and no act or failure to act from time to time on the part of Lender shall constitute a waiver, amendment or modification of any provision of this Agreement or any of the other Financing Documents or any right or remedy under this Agreement, under any of the other Financing Documents or under applicable Laws.

Without implying any limitation on the foregoing:

(a)    Any waiver or consent shall be effective only in the specific instance, for the terms and purpose for which given, subject to such conditions as Lender may specify in any such instrument.

(b)    No waiver of any Default or Event of Default shall extend to any subsequent or other Default or Event of Default, or impair any right consequent thereto.

(c)    No notice to or demand on Borrower in any case shall entitle Borrower to any other or further notice or demand in the same, similar or other circumstance.

(d)    No failure or delay by Lender to insist upon the strict performance of any term, condition, covenant or agreement of this Agreement or of any of the other Financing Documents, or to exercise any right, power or remedy consequent upon a breach thereof, shall constitute a waiver, amendment or modification of any such term, condition, covenant or agreement or of any such breach or preclude Lender from exercising any such right, power or remedy at any time or times.

(e)    By accepting payment after the due date of any amount payable under this Agreement or under any of the other Financing Documents, Lender shall not be deemed to waive the right either to require prompt payment when due of all other amounts payable under this Agreement or under any of the other Financing Documents, or to declare a default for failure to effect such prompt payment of any such other amount.

Section 8.3    Cumulative Remedies.

The rights, powers and remedies provided in this Agreement and in the other Financing Documents are cumulative, may be exercised concurrently or separately, may be exercised from time to time and in such order as Lender shall determine, subject to the provisions of this Agreement, and are in addition to, and not exclusive of, rights, powers and remedies provided by existing or future applicable Laws. In order to entitle Lender to exercise any remedy reserved to it in this Agreement, it shall not be necessary to give any notice, other than such notice as may be expressly required in this Agreement. Without limiting the generality of the foregoing and subject to the terms of this Agreement, Lender may:

35837009v2 221027.000071

(a)     proceed against Borrower with or without proceeding against any other Person (including, without limitation, any one or more of the Guarantors) who may be liable (by endorsement, guaranty, indemnity or otherwise) for all or any part of the Obligations;

(b)     proceed against Borrower with or without proceeding under any of the other Financing Documents or against any Collateral or other collateral and security for all or any part of the Obligations;

(c)     without reducing or impairing the obligation of Borrower and without notice, release or compromise with any guarantor or other Person liable for all or any part of the Obligations under the Financing Documents or otherwise;

(d)     without reducing or impairing the obligations of Borrower and without notice thereof:

(i)     fail to perfect the Lien in any or all Collateral or to release any or all the Collateral or to accept substitute Collateral;

(ii)    approve the making of advances under the Revolving Loan under this Agreement;

(iii)   waive any provision of this Agreement or the other Financing Documents;

(iv)    exercise or fail to exercise rights of set-off or other rights; or

(e)     accept partial payments or extend from time to time the maturity of all or any part of the Obligations.

Section 8.4     Severability.

In case one or more provisions, or part thereof, contained in this Agreement or in the other Financing Documents shall be invalid, illegal or unenforceable in any respect under any Law, then without need for any further agreement, notice or action:

(a)     the validity, legality and enforceability of the remaining provisions shall remain effective and binding on the parties thereto and shall not be affected or impaired thereby;

(b)     the obligation to be fulfilled shall be reduced to the limit of such validity;

(c)     if such provision or part thereof pertains to repayment of the Obligations, then, at the sole and absolute discretion of Lender, all of the Obligations of Borrower to Lender shall become immediately due and payable; and

(d)     if the affected provision or part thereof does not pertain to repayment of the Obligations, but operates or would prospectively operate to invalidate this Agreement in whole or in part, then such provision or part thereof only shall be void, and the remainder of this Agreement shall remain operative and in full force and effect.

51

Section 8.5      Assignments by Lender.

Notwithstanding the foregoing, Lender may at any time pledge all or any portion of Lender's rights under this Agreement, any of the Commitments or any of the Obligations to a Federal Reserve Bank.

Section 8.6      Participations by Lender.

Lender may at any time sell to one or more financial institutions participating interests in any of Lender's Obligations or Commitments; provided, however, that (a) no such participation shall relieve Lender from its obligations under this Agreement or under any of the other Financing Documents to which it is a party, (b) Lender shall remain solely responsible for the performance of its obligations under this Agreement and under all of the other Financing Documents to which it is a party, and (c) Borrower shall continue to deal solely and directly with Lender in connection with Lender's rights and obligations under this Agreement and the other Financing Documents.

Section 8.7      Disclosure of Information by Lender.

In connection with any sale, transfer, assignment or participation by Lender in accordance with Section 8.5 (Assignments by Lender) or Section 8.6 (Participations by Lender), Lender shall have the right to disclose to any actual or potential purchaser, assignee, transferee or participant all financial records, information, reports, financial statements and documents obtained in connection with this Agreement and/or any of the other Financing Documents or otherwise.

Section 8.8      Successors and Assigns.

This Agreement and all other Financing Documents shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns, except that Borrower shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Lender.

Section 8.9      Continuing Agreements.

All covenants, agreements, representations and warranties made by Borrower in this Agreement, in any of the other Financing Documents, and in any certificate delivered pursuant hereto or thereto shall survive the making by Lender of the Loans and the execution and delivery of the Notes, shall be binding upon Borrower regardless of how long before or after the date hereof any of the Obligations were or are incurred, and shall continue in full force and effect so long as any of the Obligations are outstanding and unpaid. From time to time upon Lender's request, and as a condition of the release of any one or more of the Security Documents, Borrower and other Persons obligated with respect to the Obligations shall provide Lender with such acknowledgments and agreements as Lender may require to the effect that there exists no defenses, rights of setoff or recoupment, claims, counterclaims, actions or causes of action of any kind or nature whatsoever against Lender and/or any of its agents and others, or to the extent there are, the same are waived and released.

52

Section 8.10    Enforcement Costs.

Borrower shall pay to Lender on demand all Enforcement Costs, together with interest thereon from the date incurred or advanced until paid in full at a per annum rate of interest equal at all times to the Post-Default Rate. Enforcement Costs shall be immediately due and payable at the time advanced or incurred, whichever is earlier. Without implying any limitation on the foregoing, Borrower shall pay, as part of the Enforcement Costs, upon demand any and all stamp and other Taxes and fees payable or determined to be payable in connection with the execution and delivery of this Agreement and the other Financing Documents and to save Lender harmless from and against any and all liabilities with respect to or resulting from any delay in paying or omission to pay any Taxes or fees referred to in this Section. The provisions of this Section shall survive the execution and delivery of this Agreement, the repayment of the other Obligations and shall survive the termination of this Agreement.

Section 8.11    Applicable Law; Jurisdiction.

8.11.1  Applicable Law.

Borrower acknowledges and agrees that the Financing Documents, including, this Agreement, shall be governed by the Laws of the State, as if each of the Financing Documents and this Agreement had each been executed, delivered, administered and performed solely within the State even though for the convenience and at the request of Borrower, one or more of the Financing Documents may be executed elsewhere. Lender acknowledges, however, that remedies under certain of the Financing Documents that relate to property outside the State may be subject to the laws of the state in which the property is located.

8.11.2  Submission to Jurisdiction.

Borrower irrevocably submits to the jurisdiction of any state or federal court sitting in the State over any suit, action or proceeding arising out of or relating to this Agreement or any of the other Financing Documents. Borrower irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. Final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon Borrower and may be enforced in any court in which Borrower is subject to jurisdiction, by a suit upon such judgment, provided that service of process is effected upon Borrower in one of the manners specified in this Section or as otherwise permitted by applicable Laws.

8.11.3  Appointment of Agent for Service of Process.

Borrower hereby irrevocably designates and appoints Joseph E. Schmitz, Esq., as Borrower's authorized agent to receive on Borrower's behalf service of any and all process that may be served in any suit, action or proceeding of the nature referred to in this Section in any state or federal court sitting in the State. If such agent shall cease so to act, Borrower shall irrevocably designate and appoint without delay another such agent in the State satisfactory to

53

Lender and shall promptly deliver to Lender evidence in writing of such other agent's acceptance of such appointment and its agreement that such appointment shall be irrevocable.

### 8.11.4 Service of Process.

Borrower hereby consents to process being served in any suit, action or proceeding of the nature referred to in this Section by (a) the mailing of a copy thereof by registered or certified mail, postage prepaid, return receipt requested, to Borrower at Borrower's address designated in or pursuant to Section 8.1 (Notices), and (b) serving a copy thereof upon the agent, if any, designated and appointed by Borrower as Borrower's agent for service of process by or pursuant to this Section. Borrower irrevocably agrees that such service (y) shall be deemed in every respect effective service of process upon Borrower in any such suit, action or proceeding, and (z) shall, to the fullest extent permitted by law, be taken and held to be valid personal service upon Borrower. Nothing in this Section shall affect the right of Lender to serve process in any manner otherwise permitted by law or limit the right of Lender otherwise to bring proceedings against Borrower in the courts of any jurisdiction or jurisdictions.

### Section 8.12   Duplicate Originals and Counterparts.

This Agreement may be executed in any number of duplicate originals or counterparts, each of such duplicate originals or counterparts shall be deemed to be an original and all taken together shall constitute but one and the same instrument.

### Section 8.13   Headings.

The headings in this Agreement are included herein for convenience only, shall not constitute a part of this Agreement for any other purpose, and shall not be deemed to affect the meaning or construction of any of the provisions hereof.

### Section 8.14   No Agency.

Nothing herein contained shall be construed to constitute Borrower as Lender's agent for any purpose whatsoever or to permit Borrower to pledge any of the credit of Lender. Lender shall not be responsible or liable for any shortage, discrepancy, damage, loss or destruction of any part of the Collateral wherever the same may be located and regardless of the cause thereof. Lender shall not, by anything herein or in any of the Financing Documents or otherwise, assume any of Borrower's obligations under any contract or agreement assigned to Lender, and Lender shall not be responsible in any way for the performance by Borrower of any of the terms and conditions thereof.

### Section 8.15   Date of Payment.

Should the principal of or interest on the Notes become due and payable on other than a Business Day, the maturity thereof shall be extended to the next succeeding Business Day and in the case of principal, interest shall be payable thereon at the rate per annum specified in the Notes during such extension.

Section 8.16    Entire Agreement.

This Agreement is intended by Lender and Borrower to be a complete, exclusive and final expression of the agreements contained herein. Neither Lender nor Borrower shall hereafter have any rights under any prior agreements pertaining to the matters addressed by this Agreement but shall look solely to this Agreement for definition and determination of all of their respective rights, liabilities and responsibilities under this Agreement.

Section 8.17    Waiver of Trial by Jury.

**BORROWER AND LENDER HEREBY JOINTLY AND SEVERALLY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH BORROWER AND LENDER MAY BE PARTIES, ARISING OUT OF OR IN ANY WAY PERTAINING TO (A) THIS AGREEMENT, (B) ANY OF THE FINANCING DOCUMENTS, OR (C) THE COLLATERAL. THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS AGREEMENT.**

This waiver is knowingly, willingly and voluntarily made by Borrower and Lender, and Borrower and Lender hereby represent that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect. Borrower and Lender further represent that they have been represented in the signing of this Agreement and in the making of this waiver by independent legal counsel, selected of their own free will, and that they have had the opportunity to discuss this waiver with counsel.

Section 8.18    Liability of Lender.

Borrower hereby agrees that Lender shall not be chargeable for any negligence, mistake, act or omission of any accountant, examiner, agency or attorney employed by Lender in making examinations, investigations or collections, or otherwise in perfecting, maintaining, protecting or realizing upon any lien or security interest or any other interest in the Collateral or other security for the Obligations.

By inspecting the Collateral or any other properties of Borrower or by accepting or approving anything required to be observed, performed or fulfilled by Borrower or to be given to Lender pursuant to this Agreement or any of the other Financing Documents, Lender shall not be deemed to have warranted or represented the condition, sufficiency, legality, effectiveness or legal effect of the same, and such acceptance or approval shall not constitute any warranty or representation with respect thereto by Lender.

Section 8.19    Indemnification.

Borrower agrees to indemnify and hold harmless, Lender, Lender's parent and Affiliates and Lender's parent's and Affiliates' officers, directors, shareholders, employees and agents (each an "Indemnified Party," and collectively, the "Indemnified Parties"), from and against any and all claims, liabilities, losses, damages, costs and expenses (whether or not such Indemnified Party is a party to any litigation), including without limitation, reasonable attorney's fees and

55

costs and costs of investigation, document production, attendance at depositions or other discovery, incurred by any Indemnified Party with respect to, arising out of or as a consequence of (a) this Agreement or any of the other Financing Documents, including without limitation, any failure of Borrower to pay when due (at maturity, by acceleration or otherwise) any principal, interest, fee or any other amount due under this Agreement or the other Financing Documents, or any other Event of Default (b) the use by Borrower of any proceeds advanced hereunder; (c) the transactions contemplated hereunder; or (d) any claim, demand, action or cause of action being asserted against (i) Borrower or any of its Affiliates by any other Person, or (ii) any Indemnified Party by Borrower in connection with the transactions contemplated hereunder. Notwithstanding anything herein or elsewhere to the contrary, Borrower shall not be obligated to indemnify or hold harmless any Indemnified Party from any liability, loss or damage resulting from the gross negligence, willful misconduct or unlawful actions of such Indemnified Party. Any amount payable to Lender under this Section will bear interest at the Post-Default Rate from the due date until paid.

Section 8.20    Electronic Transmission of Data.

Lender and Borrower agree that certain data related to the Loan (including confidential information, documents, applications and reports) may be transmitted electronically, including transmission over the Internet. This data may be transmitted to, received from or circulated among agents and representatives of Borrower and/or Lender and their Affiliates and other Persons involved with the subject matter of this Agreement. Borrower acknowledges and agrees that (a) there are risks associated with the use of electronic transmission and that Lender does not control the method of transmittal or service providers, (b) Lender has no obligation or responsibility whatsoever and assumes no duty or obligation for the security, receipt or third party interception of any such transmission, and (c) Borrower will release, hold harmless and indemnify Lender from any claim, damage or loss, including that arising in whole or part from Lender's strict liability or sole, comparative or contributory negligence, which is related to the electronic transmission of data.

## REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

35837009v2 221027.000071

IN WITNESS WHEREOF, each of the parties hereto have executed and delivered this Agreement under their respective seals as of the day and year first written above.

WITNESS OR ATTEST:

Noorah Z Hayes

PACEM SOLUTION INTERNATIONAL LLC

By: _____(Seal)

Name: Cory Mills
Title: CEO

WITNESS:

ACCESS NATIONAL BANK

By:_____(Seal)

Name: DAVID A. TALERIAN
Title: EVP

[Signature Page to Financing and Security Agreement]

227

## LIST OF SCHEDULES

Schedule 4.1.9          Litigation

Schedule 4.1.12         Other Indebtedness

Schedule 4.1.17         Employee Relations

Schedule 4.1.19         Permitted Liens

59

Schedule 4.1.19

## LIENS ON COLLATERAL

| Unpaid Principal | Asset Covered | Lienholder | Balance |
| --- | --- | --- | --- |

35837009v2 221027 000071

## IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION THAT CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### TERM NOTE

$5,000,000                                                          August 10, 2018

FOR VALUE RECEIVED, PACEM SOLUTION INTERNATIONAL LLC, a limited liability company organized under the laws of the Commonwealth of Virginia (the "Borrower"), promises to pay to the order of ACCESS NATIONAL BANK, a national banking association, its successors and assigns (the "Lender"), the principal sum of FIVE MILLION DOLLARS ($5,000,000) (the "Principal Sum"), together with interest thereon at the rate or rates hereinafter provided, in accordance with the following:

1.   Interest.

Commencing as of the date hereof and continuing until repayment in full of all sums due hereunder, the unpaid Principal Sum shall bear interest at the fluctuating prime rate of interest established and declared by the Lender from time to time (the "Prime Rate") plus two percent (2%) per annum.  The Prime Rate does not necessarily represent the lowest rate of interest charged by the Lender to borrowers.  The rate of interest charged under this Note shall change immediately and contemporaneously with any change in the Prime Rate.

All interest payable under the terms of this Note shall be calculated on the basis of a 360-day year and the actual number of days elapsed.

2.   Payments and Maturity.

The unpaid Principal Sum, together with interest thereon at the rate or rates provided above, shall be payable as follows:

(a)   Commencing on September 1, 2018, and continuing on the first day of each month thereafter (each, a "Payment Date") the Borrower shall make monthly payments of interest only on the unpaid Principal Sum;

(b)   Commencing on March 1, 2019, and continuing on each Payment Date thereafter until September 1, 2019 (the "Term Maturity Date"), the Borrower shall make equal monthly payments of principal which will fully repay the unpaid Principal Sum in six (6) installments.

(c)   Unless sooner paid, the unpaid Principal Sum, together with interest accrued and unpaid thereon, shall be due and payable in full on the Term Maturity Date.

35804483v3 221027.000071

Borrower hereby authorizes Lender to automatically deduct from any of Borrower's accounts the amount of each payment of principal (including without limitation the principal payment due on the final maturity date) and/or interest on the dates such payments become due. If the funds in the account are insufficient to cover any payment, Lender shall not be obligated to advance funds to cover the payment. At any time and for any reason, Borrower or Lender may voluntarily terminate automatic payments as provided in this paragraph.

3.    Default Interest.

Upon the occurrence of an Event of Default (as hereinafter defined), the unpaid Principal Sum shall bear interest thereafter at the Post-Default Rate set forth in the Financing Agreement.

4.    Late Charges.

If the Borrower shall fail to make any payment under the terms of this Note within five (5) Business days after the date such payment is due, the Borrower shall pay to the Lender on demand a late charge equal to five percent (5%) of such payment.

5.    Application and Place of Payments.

All payments, made on account of this Note shall be applied first to the payment of any late charge then due hereunder, second to the payment of any prepayment fee then due hereunder, third to the payment of accrued and unpaid interest then due hereunder, and the remainder, if any, shall be applied to the unpaid Principal Sum, with application first made to all principal installments then due hereunder, next to the outstanding principal balance due and owing on the Term Maturity Date and thereafter to the principal payments due in the inverse order of maturities. Notwithstanding any provision contained herein to the contrary, any portion of a permitted partial prepayment applied to the unpaid Principal Sum shall be applied first to the outstanding principal balance due and owing on the Term Maturity Date and thereafter to the principal payments due in the inverse order of maturities. All payments on account of this Note shall be paid in lawful money of the United States of America in immediately available funds during regular business hours of the Lender at its principal office or at such other times and places as the Lender may at any time and from time to time designate in writing to the Borrower.

6.    Prepayment.

The Borrower may prepay the Principal Sum in whole or in part upon twenty one (21) days prior written notice to the Lender without premium or penalty.

7.    Financing Agreement and Other Financing Documents.

This Note is the "Term Note" described in a Financing and Security Agreement of even date herewith by and between the Borrower and the Lender (as amended, modified, restated, substituted, extended and renewed at any time and from time to time, the "Financing Agreement"). The indebtedness evidenced by this Note is included within the meaning of the term "Obligations" as defined in the Financing Agreement. The term "Financing Documents" as used in this Note shall mean collectively this Note, the Financing Agreement and any other instrument, agreement, or document previously, simultaneously, or hereafter executed and

2

delivered by the Borrower and/or any other person, singularly or jointly with any other person, evidencing, securing, guaranteeing, or in connection with the Principal Sum, this Note and/or the Financing Agreement. Capitalized terms used but not defined herein have the meanings given to them in the Financing Agreement.

8.    Security.

This Note is secured as provided in the Financing Agreement.

9.    Events of Default.

The occurrence of any one or more of the following events shall constitute an event of default (individually, an "Event of Default" and collectively, the "Events of Default") under the terms of this Note:

(a)    The failure of the Borrower to pay to the Lender when due any and all amounts payable by the Borrower to the Lender under the terms of this Note; or

(b)    The occurrence of an event of default (as defined therein) under the terms and conditions of any of the other Financing Documents.

10.    Remedies.

Upon the occurrence of an Event of Default, at the option of the Lender, all amounts payable by the Borrower to the Lender under the terms of this Note shall immediately become due and payable by the Borrower to the Lender without notice to the Borrower or any other person, and the Lender shall have all of the rights, powers, and remedies available under the terms of this Note, any of the other Financing Documents and all applicable laws. The Borrower and all endorsers, guarantors, and other parties who may now or in the future be primarily or secondarily liable for the payment of the indebtedness evidenced by this Note hereby severally waive presentment, protest and demand, notice of protest, notice of demand and of dishonor and non-payment of this Note and expressly agree that this Note or any payment hereunder may be extended from time to time without in any way affecting the liability of the Borrower, guarantors and endorsers.

11.    Confessed Judgment.

(a)    The Borrower hereby appoints and designates Mary C. Zinsner, Esquire, the Borrower's duly constituted attorney-in-fact to confess judgment against the Borrower pursuant to the provisions hereof and of Section 8.01-432 of the Code of Virginia of 1950, as amended, which judgment shall be confessed in the Clerk's Office of the Circuit Court of Fairfax County, Virginia. The Borrower shall, upon the Lender's request, name such additional or alternative persons designated by the Lender as the Borrower's duly constituted attorney or attorneys-in-fact to confess judgment against the Borrower in accordance with the terms hereof. Furthermore, upon the Lender's request, the Borrower shall agree to the designation of any additional circuit courts in the Commonwealth of Virginia in which judgment may be confessed against the Borrower.

3

(b)     Upon the occurrence of an Event of Default, the Borrower hereby authorizes the above designated attorney-in-fact or any successor named therefor to confess judgment against the Borrower for the amount of the unpaid Principal Sum, all interest accrued and unpaid thereon, and all other amounts payable by the Borrower to the Lender under the terms of this Note or any of the other Financing Documents, together with court costs and attorneys' fees of ten percent (10%) of the unpaid Principal Sum and interest then due hereunder, but in no event in excess of Fifty Thousand Dollars ($50,000). By its acceptance of this Note, the Lender agrees that in the event the Lender exercises at any time its right to confess judgment under this Note, the Lender shall use its best efforts to obtain legal counsel who will charge the Lender for its services on an hourly basis, at its customary hourly rates and only for the time and reasonable expenses incurred. In no event shall the Lender enforce the legal fees portion of a confessed judgment award for an amount in excess of the fees and expenses actually charged to the Lender for services rendered by its counsel in connection with such confession of judgment and/or the collection of sums owed to the Lender. In the event the Lender receives, through execution upon a confessed judgment, payments on account of attorneys' fees in excess of such actual attorneys' fees and expenses incurred by the Lender, then, after full repayment and satisfaction of all of the obligations under and in connection with this Note, the Financing Agreement and all of the other Financing Documents, the Lender shall refund such excess amount to the Borrower. The Borrower hereby releases, to the extent permitted by applicable law, all errors and all rights of exemption, appeal, stay of execution, inquisition, and other rights to which the Borrower may otherwise be entitled under the laws of the United States of America or of any state or possession of the United States of America now in force or which may hereafter be enacted. The authority and power to appear for and enter judgment against the Borrower shall not be exhausted by one or more exercises thereof or by any imperfect exercise thereof and shall not be extinguished by any judgment entered pursuant thereto. Such authority may be exercised on one or more occasions or from time to time in the same or different jurisdictions as often as the Lender shall deem necessary or desirable, for all of which this Note shall be a sufficient warrant.

(c)     The Borrower represents and warrants that it is not a natural person and that the obligations evidenced by this Note were not incurred for personal, family or household purposes.

12.     Expenses.

The Borrower promises to pay to the Lender on demand by the Lender all costs and expenses incurred by the Lender in connection with the collection and enforcement of this Note, including, without limitation, reasonable attorneys' fees and expenses and all court costs.

13.     Notices.

Any notice, request, or demand to or upon the Borrower or the Lender shall be deemed to have been properly given or made when delivered in accordance with Section 8.1 of the Financing Agreement.

4