14.     Miscellaneous.

Each right, power, and remedy of the Lender as provided for in this Note or any of the other Financing Documents, or now or hereafter existing under any applicable law or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power, or remedy provided for in this Note or any of the other Financing Documents or now or hereafter existing under any applicable law, and the exercise or beginning of the exercise by the Lender of any one or more of such rights, powers, or remedies shall not preclude the simultaneous or later exercise by the Lender of any or all such other rights, powers, or remedies. No failure or delay by the Lender to insist upon the strict performance of any term, condition, covenant, or agreement of this Note or any of the other Financing Documents, or to exercise any right, power, or remedy consequent upon a breach thereof, shall constitute a waiver of any such term, condition, covenant, or agreement or of any such breach, or preclude the Lender from exercising any such right, power, or remedy at a later time or times. By accepting payment after the due date of any amount payable under the terms of this Note, the Lender shall not be deemed to waive the right either to require prompt payment when due of all other amounts payable under the terms of this Note or to declare an Event of Default for the failure to effect such prompt payment of any such other amount. No course of dealing or conduct shall be effective to amend, modify, waive, release, or change any provisions of this Note.

15.     Partial Invalidity.

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be construed as if such invalid, illegal, or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal, or unenforceable.

16.     Captions.

The captions herein set forth are for convenience only and shall not be deemed to define, limit, or describe the scope or intent of this Note.

17.     Applicable Law.

The Borrower acknowledges and agrees that this Note shall be governed by the laws of the Commonwealth of Virginia, even though for the convenience and at the request of the Borrower, this Note may be executed elsewhere.

18.     Consent to Jurisdiction.

The Borrower irrevocably submits to the jurisdiction of any state or federal court sitting in the Commonwealth of Virginia over any suit, action, or proceeding arising out of or relating to this Note or any of the other Financing Documents. The Borrower irrevocably waives, to the fullest extent permitted by law, any objection that the Borrower may now or hereafter have to the laying of venue of any such suit, action, or proceeding brought in any such court and any claim that any such suit, action, or proceeding brought in any such court has been brought in an

5

inconvenient forum. Final judgment in any such suit, action, or proceeding brought in any such court shall be conclusive and binding upon the Borrower and may be enforced in any court in which the Borrower is subject to jurisdiction by a suit upon such judgment, provided that service of process is effected upon the Borrower as provided in this Note or as otherwise permitted by applicable law.

19.    Service of Process.

The Borrower hereby consents to process being served in any suit, action, or proceeding instituted in connection with this Note by (a) the mailing of a copy thereof by certified mail, postage prepaid, return receipt requested, to the Borrower and (b) serving a copy thereof upon Joseph E. Schmitz, Esq., 2941 Fairview Park Drive, Suite 550, Falls Church, Virginia 22042, the agent hereby designated and appointed by the Borrower as the Borrower's agent for service of process. The Borrower irrevocably agrees that such service shall be deemed in every respect effective service of process upon the Borrower in any such suit, action or proceeding, and shall, to the fullest extent permitted by law, be taken and held to be valid personal service upon the Borrower. Nothing in this Section shall affect the right of the Lender to serve process in any manner otherwise permitted by law or limit the right of the Lender otherwise to bring proceedings against the Borrower in the courts of any jurisdiction or jurisdictions.

20.    WAIVER OF TRIAL BY JURY.

**THE BORROWER AND THE LENDER HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH THE BORROWER AND THE LENDER MAY BE PARTIES, ARISING OUT OF OR IN ANY WAY PERTAINING TO (A) THIS NOTE OR (B) THE FINANCING DOCUMENTS. IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS NOTE.**

**THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE BORROWER, AND THE BORROWER HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THE BORROWER FURTHER REPRESENTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.**

35804483v3 221027.000071

IN WITNESS WHEREOF, the Borrower has caused this Note to be executed under seal by its duly authorized members as of the date first written above.

WITNESS:

PACEM SOLUTION INTERNATIONAL LLC

Noorah Z Hayes

By: ███████████████████ (SEAL)

Name: Cory Mills

Title: CEO

[Signature Page to Term Note]

236

American Land Title Association

ALTA Settlement Statement - Combined
Adopted 05-01-2015

| File No./Escrow No.: 18VA29455-CR | Champion Title & Settlements, Inc. | |
|---|---|---|
| Officer/Escrow Officer: | 21631 Ridgetop Circle | |
| | Ste 250 | |
| | Sterling, VA 20166 | |
| | (703) 444-4100 | |


Champion Title
& SETTLEMENTS, INC

| Property Address: | 1198 WINDROCK DRIVE |
|---|---|
| | MC LEAN, VA 22102 (FAIRFAX) |
| | (019-4-21-0010) |
| Borrower: | PACEM SOLUTION INTERNATIONAL LLC |
| Seller: | |
| Lender: | Access National Bank |
| Settlement Date: | 8/8/2018 |
| Disbursement Date: | 8/8/2018 |

| Seller | | Description | Borrower | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | **Deposits, Credits, Debits** | | |
| | | Proposal Fee - credit: $15,000 | | $15,000.00 |
| | | **New Loans** | | |
| | | Loan Amount | | $5,000,000.00 |
| | | Appraisal Fee to JMSP, Inc | $1,200.00 | |
| | | Appraisal Review Fee- Invoice ANB-05312018 to Access National Bank | $300.00 | |
| | | Flood certification to FZDS | $18.00 | |
| | | SBA Packaging Fee: to Access National Bank | $2,500.00 | |
| | | SBA Guarantee Fee to Access National Bank | $11,250.00 | |
| | | Legal Fees to Troutman Sanders LLP | $10,500.00 | |
| | | FIVS IRS Tax Transcripts to Access National Bank | $60.00 | |
| | | **Title Charges** | | |
| | | Title - Lender's Title Insurance to Champion Title & Settlements, Inc. / Chicago Title Insurance Company | $6,230.00 | |
| | | Title - Settlement or closing fee to Champion Title & Settlements, Inc. | $500.00 | |
| | | Title - Abstract or title search to Expert Title, LLC | $175.00 | |
| | | Title - Examination to Champion Title & Settlements, Inc. | $150.00 | |
| | | Title - CPL to Chicago Title Insurance Company - | $20.00 | |
| | | Title - Courier Processing Fee to Champion Title & Settlements, Inc. | $50.00 | |
| | | **Government Recording and Transfer Charges** | | |
| | | Mortgage $56.00 | $56.00 | |
| | | County Mortgage Tax/Stamps to Fairfax County Clerk of the Circuit Court | $4,166.67 | |
| | | State Mortgage Tax/Stamps to Fairfax County Clerk of the Circuit Court | $12,500.00 | |
| | | **Additional Settlement Charges** | | |
| | | Taxes Due, 1st 12 2018 to Fairfax County Department of Tax Administration | $24,679.82 | |

| Seller | | | Borrower | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| $0.00 | $0.00 | Subtotals | $74,355.49 | $5,015,000.00 |
| | | Due To Borrower | $4,940,644.51 | |
| $0.00 | $0.00 | Due To Seller | | |
| $0.00 | $0.00 | Totals | $5,015,000.00 | $5,015,000.00 |

Third parties may receive payments for settlement services from the fees disclosed on this statement.
The real estate brokerage commissions may be disbursed in part, directly to the agent, when requested and authorized in advance.
NPN 1643239

.



File # 18VA29455-CR
Printed on 8/9/2018 at 3:05 PM

Page 1 of 2

**Acknowledgement**

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize Champion Title & Settlements, Inc. to cause the funds to be disbursed in accordance with this statement.

**BORROWER(S)**                                                                 **SELLER(S)**

PACEM Solution International LLC

by _____

by _____

File # 18VA29455-CR
Printed on 8/9/2018 at 3:05 PM

## FIFTH AMENDMENT TO PROMISSORY NOTE AND WAIVER AGREEMENT

THIS FIFTH AMENDMENT TO PROMISSORY NOTE AND WAIVER AGREEMENT (this "Agreement") is made this *19* day of March, 2020 by and between PACEM SOLUTION INTERNATIONAL LLC, a Virginia limited liability company (the "Borrower") and ATLANTIC UNION BANK, its successors and assigns (the "Lender").

### RECITALS

A.      The Lender has made a term loan (loan number 1080085275) (the "Loan") to the Borrower, which Loan is currently evidenced by that certain SBA Promissory Note dated August 15, 2018, from the Borrower in favor of the Lender in the principal amount of $5,000,000 (as amended from time to time, the "Note"). The Note is secured by, among other things, that certain (a) Deed of Trust dated August 10, 2018 from CORY MILLS, a resident of McLean, Virginia and RANA Z. AL SAADI to certain trustees named therein for the benefit of the Lender, and (b) Supplemental Mortgage, Assignment, Security Agreement and Fixture Filing dated May 17, 2019, by Pacem Estate Holdings LLC, a Florida limited liability company, as mortgagor in favor of the Lender, as mortgagee.

B.      As of December 31, 2019, the Borrower was in default for failing to comply with the Debt Service Coverage Ratio (the "**Existing Default**").

C.      The Borrower has requested, and the Lender has agreed to waive the Existing Default and amend the principal repayment provisions of the Note, on the condition, among others, that this Agreement be executed, modifying the principal repayment terms of the Note as hereinafter more fully set forth.

D.      Capitalized terms used herein and not defined shall each have the meaning given to such terms in the Note.

NOW, THEREFORE, THIS AGREEMENT WITNESSETH:

That in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Lender and the Borrower covenant and agree as follows:

1.      The present principal balance of the Note is $4,650,000 and such sum is due and owing, subject to the terms of repayment hereinafter set forth, without defense or offset.

2.      The Note shall be payable as follows:

(i)      Interest only on the unpaid principal balance of the Note shall be payable on first day of each month hereafter until maturity; and

(ii)      Unless sooner paid, the unpaid principal sum of the Note, together with all accrued and unpaid interest shall be due and payable in full on June 15, 2020.

3.      Lender hereby waives the Existing Defaults.  Lender's agreement to waive the Existing Defaults shall in no way obligate Lender to make any other modifications to the Loan Agreement or to waive Borrower's compliance with any other terms of the Financing Documents, and shall not limit or impair Lender's right to demand strict performance of all other terms and covenants as of any date.  The waiver set forth above shall not be deemed or otherwise construed to constitute a waiver of any other provision of this Agreement or the Loan Agreement in connection with any other transaction.

4.      <u>Limitation of Waiver</u>.

(i)      The waiver set forth in Section 3, above, is effective for the purposes set forth herein and shall be limited precisely as written and shall not be deemed to (a) be a consent to any amendment, waiver or modification of any other term or condition of any Financing Document, or (b) otherwise prejudice any right or remedy which Lender may now have or may have in the future under or in connection with any Financing Document.

(ii)      This Agreement shall be construed in connection with and as part of the Financing Documents and all terms, conditions, representations, warranties, covenants and agreements set forth in the Financing Documents are hereby ratified and confirmed and shall remain in full force and effect.

5.      In addition to those Events of Default specifically enumerated in the Financing Documents, the failure to comply with the terms of any covenant or agreement contained herein shall constitute an Event of Default and shall entitle the Lender to exercise all rights and remedies provided to the Lender under the terms of any of the other Financing Documents as a result of the occurrence of the same.

6.      The agreements of the Lender under this Agreement are subject to the satisfaction in the Lender's sole discretion of each of the following terms and conditions, time being of the essences set

(i)      the Borrower shall pay to Lender the following nonrefundable fees: (y) an extension fee in the amount of $2,500 for extending the Loan and (z) a waiver fee in the amount of $2,500 for the waiver of Existing Default, and all costs, fees and expenses incurred by Lender in connection with this Agreement, including, without limitation the Lender's legal fees and expenses; and

(ii)      the Borrower shall cause each guarantor of the Note to execute and deliver to the Lender the Agreement of Guarantor, attached to this Agreement.

7.      The terms, provisions and covenants of the Note and each of the other Financing Documents delivered in connection with the Note are in all respects hereby ratified and confirmed and remain in full force and effect.

8.      All references in the Deed of Trust to the Note shall be deemed to refer to the Note as amended as of the date hereof.

2

41575669v2 221027 000071

9.    It is expressly agreed that the indebtedness evidenced by the Note has not been extinguished or discharged hereby. The Borrower and the Lender agree that the execution of this Agreement is not intended to and shall not cause or result in a novation with regard to the Note.

10.    This Agreement may be executed in one or more counterparts, each of which shall be considered an original for all purposes; provided, however, that all such counterparts shall together constitute one and the same instrument.

[Signatures begin on the following page]

41575669v2 221027.000071

3

## AGREEMENT OF GUARANTORS

Each of the undersigned is a "Guarantor" under an Unconditional Guarantee, dated August 15, 2018 (as amended, modified, substituted, extended and renewed from time to time, the "Guaranty"), in favor of the Lender. In order to induce the Lender to enter into the foregoing Fifth Amendment, each of the undersigned (a) consents to the transactions contemplated by, and agreements made by the Borrower under, the foregoing Fifth Amendment, and (b) ratifies, confirms and reissues the terms, conditions, promises, covenants, grants, assignments, security agreements, agreements, representations, warranties and provisions contained in the Guaranty.

WITNESS signature and seal of the undersigned as of the date of the Fifth Amendment.

WITNESS:



Rana Z. Al Saadi

Cory L. Mills

41575669v2 221027 000071

5

WITNESS the signatures and seals of the Borrower and the Lender the day and year first above written.



WITNESS:

PACEM SOLUTION INTERNATIONAL LLC

By:

Cory L. Mills
Member

(SEAL)

41575669v2 221027 000071

## SIXTH AMENDMENT TO PROMISSORY NOTE AND WAIVER AGREEMENT

THIS SIXTH AMENDMENT TO PROMISSORY NOTE AND WAIVER AGREEMENT (this "Agreement") is made this **22** day of May, 2020 by and between PACEM SOLUTION INTERNATIONAL LLC, a Virginia limited liability company (the "Borrower") and ATLANTIC UNION BANK, its successors and assigns (the "Lender").

### RECITALS

A.     The Lender has made a term loan (loan number 1080085275) (the "Loan") to the Borrower, which Loan is currently evidenced by that certain SBA Promissory Note dated August 15, 2018, from the Borrower in favor of the Lender in the principal amount of $5,000,000 (as amended from time to time, the "Note").  The Note is secured by, among other things, that certain (a) Deed of Trust dated August 10, 2018 from CORY MILLS, a resident of McLean, Virginia and RANA Z. AL SAADI to certain trustees named therein for the benefit of the Lender, and (b) Supplemental Mortgage, Assignment, Security Agreement and Fixture Filing dated May 17, 2019, by Pacem Estate Holdings LLC, a Florida limited liability company, as mortgagor in favor of the Lender, as mortgagee.

B.     The Borrower has requested, and the Lender has agreed to amend the principal repayment provisions of the Note, on the condition, among others, that this Agreement is executed, modifying the principal repayment terms of the Note as hereinafter more fully set forth.

C.     Capitalized terms used herein and not defined shall each have the meaning given to such terms in the Note.

NOW, THEREFORE, THIS AGREEMENT WITNESSETH:

That in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Lender and the Borrower covenant and agree as follows:

1.     The present principal balance of the Note is $4,650,000 and such sum is due and owing, subject to the terms of repayment hereinafter set forth, without defense or offset.

2.     The Note shall be payable as follows:

(i)     The unpaid principal balance of the Note shall be payable in six (6) equal monthly installments of principal each in the amount of $775,000, plus interest on the unpaid principal balance, commencing on June 1, 2020 and on the first day of each month hereafter until maturity; and

(ii)     Unless sooner paid, the unpaid principal sum of the Note, together with all accrued and unpaid interest shall be due and payable in full on December 1, 2020.

42351244v1 221027.000071

3.    <u>Limitation of Waiver</u>.  This Agreement shall be construed in connection with and as part of the Financing Documents and all terms, conditions, representations, warranties, covenants and agreements set forth in the Financing Documents are hereby ratified and confirmed and shall remain in full force and effect.

4.    <u>Events of Default</u>. In addition to those Events of Default specifically enumerated in the Financing Documents, the failure to comply with the terms of any covenant or agreement contained herein shall constitute an Event of Default and shall entitle the Lender to exercise all rights and remedies provided to the Lender under the terms of any of the other Financing Documents as a result of the occurrence of the same.

5.    <u>Ratification</u>. The terms, provisions and covenants of the Note and each of the other Financing Documents delivered in connection with the Note are in all respects hereby ratified and confirmed and remain in full force and effect.

6.    <u>Conforming Changes</u>.  All references in the Deed of Trust to the Note shall be deemed to refer to the Note as amended as of the date hereof.

7.    <u>Not a Discharge of Note</u>. It is expressly agreed that the indebtedness evidenced by the Note has not been extinguished or discharged hereby.  The Borrower and the Lender agree that the execution of this Agreement is not intended to and shall not cause or result in a novation with regard to the Note.

8.    <u>Counterparts and Headings</u>. This Agreement may be executed in one or more counterparts, each of which shall be considered an original for all purposes; provided, however, that all such counterparts shall together constitute one and the same instrument. The descriptive headings of the various provisions of this Agreement are inserted for convenience of reference only and shall not be deemed to affect the meaning or construction of any of the provisions hereof.

9.    <u>PDF</u>.  Signatures transmitted by electronic mail in PDF format shall be legal and binding and have the same legal effect as if an original of this Agreement had been delivered. Borrower agrees that it shall be bound by any signature (whether original or electronic) sent by electronic mail and is aware that other parties will rely on such signature and does hereby waive any defenses to the enforcement of the terms of this Agreement based on the foregoing forms of signature.

[Signatures begin on the following page]

42351244v1 221027.000071

2

WITNESS the signatures and seals of the Borrower and the Lender the day and year first above written.

WITNESS:

PACEM SOLUTION INTERNATIONAL LLC

By:_____(SEAL)
    Cory L. Mills
    Member

42351244v1 221027.000071

246

## AGREEMENT OF GUARANTORS

Each of the undersigned is a "Guarantor" under an Unconditional Guarantee, dated August 15, 2018 (as amended, modified, substituted, extended and renewed from time to time, the "Guaranty"), in favor of the Lender. In order to induce the Lender to enter into the foregoing Sixth Amendment, each of the undersigned (a) consents to the transactions contemplated by, and agreements made by the Borrower under, the foregoing Sixth Amendment, and (b) ratifies, confirms and reissues the terms, conditions, promises, covenants, grants, assignments, security agreements, agreements, representations, warranties and provisions contained in the Guaranty.

WITNESS signature and seal of the undersigned as of the date of the Sixth Amendment.

WITNESS:



Rana Z. Al Saadi _____ (SEAL)

Cory L. Mills _____ (SEAL)

42351244v1 221027.000071

4

**PACEM** SOLUTIONS INTERNATIONAL | **P A C E M**

PACEM-SOLUTIONS.COM          PACEM-DEFENSE.COM
2941 FAIRVIEW PARK DRIVE • SUITE 350 • FALLS CHURCH • VA • 22042 • USA • +1.571.385.0299

July 20, 2021

Via E-mail: Jihoon.kim@sba.gov

Mr. Jihoon Kim
Director, Office of Financial Program Operations
U.S. Small Business Administration
Washington, D.C. 20416

> SUBJ:   Correction of Administrative Error Resulting in Non-eligibility Determination;
> Procedures for Payment of Remaining Four (4) CARES Act Subsidy Payments;
> SBA Loan No. 2843337007

Dear Mr. Kim:

For the reasons explained below, we respectfully request that you correct the administrative error apparent from your enclosed memo of May 7, 2021, which was e-mailed to the undersigned on May 19, 2021, by the SBA Ombudsman (see Tab A). More importantly, we request your procedural advice on how best to initiate whatever process is necessary for the SBA to make the final four (4) subsidy payments under section 1112 of the CARES Act, which the SBA did not make in June–September 2020 on account of the administrative error, totaling $3,548,976.85 in "principal, interest, and any associated fees that are owed." CARES Act, §1112(c).[1]

After issuing two (2) subsidy payments on PACEM Loan No. 2843337007 for April and May of 2020, the SBA, without any explanation to PACEM, failed to make the four (4) remaining payments for June to September 2020. The first and only explanation for the SBA's failure to make these final four payments was in your May 7, 2021, memo, which indicates that the loan was considered "ineligible" for the last four payments because it was "reported to the Agency by the Lender in May 2020" that PACEM had been "in default since late April 2020."

In May 2020, PACEM was not in default "since late April 2020," as evidenced by the enclosed Fifth and Sixth Amendments to the Promissory Note, dated March 19, 2020, and May 22, 2020, copies of which are at Tabs B and C respectively.

Until we received your May 7, 2021, memo, the only notices we had received, through our lender, regarding the status of the final four CARES Act subsidy payments was that these final four payments were "under review" by the SBA. In the meantime, the lender notified us earlier this year, after the expiration of the promissory note on December 1, 2020, pursuant to Paragraph 2(ii) of the Sixth Amendment (Tab C), of its intent to foreclose. We then reached an amicable forbearance agreement (Tab D) and subsequently arranged for another lender to assume the debt.

---

[1] Pursuant to ¶2(i) of the Sixth Amendment (Tab C), "The unpaid principal balance of the Note shall be payable in six (6) equal monthly installments of principal each in the amount of $775,000, plus interest on the unpaid principal balance, commencing on June 1, 2020 and on the first day of each month hereafter until maturity." According to our calculations, the four subsidy payments for June-September 2020 break down as follows: (1) $3,100,000 principal; $227,850 interest; and (3) $221,126.85 in late fees, which do not include late fees for January through May 2021.



PACEM-SOLUTIONS.COM          PACEM-DEFENSE.COM
2941 FAIRVIEW PARK DRIVE • SUITE 350 • FALLS CHURCH • VA • 22042 • USA • +1.571.385.0299

As soon as I received your May 7, 2021, memo, I contacted counsel for the lender, with whom I had just negotiated the above-mentioned forbearance agreement, who was equally surprised about the indication in your memo that the lender had "reported to the Agency . . . in May 2020" that PACEM was "in default since late April 2020." Lender's counsel agreed with me that such a report by the lender makes no sense in light of the enclosed Fifth and Sixth Amendments to the Promissory Note, dated March 19, 2020, and May 22, 2020, respectively.

On May 21, 2021, I also contacted Sarah Hawkins of the SBA, whose name and contact information was included in your May 7, 2021, memo. When Sarah Hawkins and I spoke by phone, I clarified that the current "paid in full" status of the loan is a result of the forbearance agreement undertaken in large part because of the four unpaid subsidy payments. At her request, I e-mailed Sarah Hawkins the enclosed forbearance agreement of March 31, 2021 (Tab D).

In an effort better to understand what might have led to the administrative error apparent from your May 7, 2021, memo, I submitted a FOIA request, copy enclosed at Tab E, seeking documents and communications related to the non-eligibility determination referenced in your enclosed May 7, 2021, memo. I also contacted Ashley Hou, Esq., Regional Counsel for the SBA in Baltimore. After consulting with Ms. Hou about procedural options, I determined that the best approach to getting the administrative error resolved quickly would be through you directly. I would appreciate your advice on the best method both to resolve the administrative error and to initiate whatever process is necessary for the SBA to make the final four (4) subsidy payments under section 1112 of the CARES Act, considering that they have been erroneously withheld.

Finally, just yesterday Ms. Hou e-mailed me: "In accordance with 13 C.F.R. § 102.5 and the FOIA extension guidelines published by the Department of Justice, SBA is seeking 10 additional days to process your request. . . ." In order to move the process of correcting the administrative error forward, which should be corrected in any event, we are not waiting the additional 10 days for the SBA to process our FOIA request. In the event we learn something new from FOIA that is material to our request for your procedural advice, we will contact you promptly.

Feel free to contact me at 703-992-3095, or by e-mail joseph.schmitz@pacem-solutions.com.

Yours truly,

Joseph E. Schmitz
Chief Legal Officer

ENCLOSURES:
Tab A – Jihoon Kim Memo of May 7, 2021, with May 19, 2021, SBA Ombudsman cover letter;
Tab B – Fifth Amendment to the Promissory Note, dated March 19, 2020;
Tab C – Sixth Amendment to the Promissory Note, dated May 22, 2020;
Tab D – Forbearance Agreement of March 31, 2021;
Tab E – FOIA Request of June 18, 2021.

CC: Ashley Hou, Esq., SBA Regional Counsel, Baltimore

## INDEX

**TAB A**

 May 7, 2021 Memo

**TAB B**

 Fifth Amendment to Promissory Note – March 19, 2020

**TAB C**

 Sixth Amendment to Promissory Note – May 22, 2020

**TAB D**

 Forbearance Agreement – March 31, 2021

**TAB E**

 PACEM FOIA Request – June 18, 2021

# TAB A



## U.S. SMALL BUSINESS ADMINISTRATION
### WASHINGTON, D.C. 20416

OFFICE OF THE NATIONAL OMBUDSMAN

May 19, 2021

Mr. Joseph Schmitz
Chief Legal Officer
Pacem Solution International, LLC
2941 Fairview Park Drive, Suite 350
Falls Church, VA  20042

Dear Mr. Schmitz:

Your comment regarding U.S. Small Business Administration (SBA) subsidy payments was referred to SBA's Office of Capital Access for review and a response.  I have enclosed a copy of the response with this letter.

If you have any questions or further concerns, please contact Ms. Cynthia Pope, Case Manager, at (202) 205-2417 or ombudsman@sba.gov.

Sincerely,

Mina A. Wales
Acting National Ombudsman

encl.

MAW/cdp



**U.S. SMALL BUSINESS ADMINISTRATION**
**WASHINGTON, DC 20416**

Date:          May 7, 2021

To:            Mina A. Wales
               Deputy National Ombudsman

From:

               *for*  Jihoon Kim
                      Director
                      Office of Financial Program Operations

Re:            Comments from Joseph Schmitz - Pacem Solutions International, LLC
               SBA Loan 2843337007


The Office of the National Ombudsman (ONO) received a comment from Mr. Joseph Schmitz, Chief Legal Officer of Pacem Solution International, LLC ("Borrower"), regarding SBA subsidy payments under section 1112 of the Coronavirus Aid, Relief and Economic Security Act (CARES Act), wherein SBA stated it will pay the principal, interest that Borrowers owe on a "covered loan" in a "regular servicing status" to 7(a) Lenders and Certified Development Companies (CDCs) for a 6-month period.

Agency records indicate that Pacem Solutions International, LLC has, an outstanding International Trade loan that was fully funded August 10, 2018 for $5,000,000.   The loan currently and has an outstanding balance of $4,650,000.  The loan has been in default since late April 2020, which was reported to the Agency by the Lender in May 2020.  The current status of the loan is "Disbursed in Liquidation".

Mr. Schmitz states that SBA did not make four of the six monthly subsidy payments to the Borrower's lender to credit the outstanding loan.  Agency records indicate that subsidy payments were made for April 2020 and May of 2020.  However, once the Borrower was reported to be in default, the Borrower ceased to be in regular servicing status as required under the CARES Act. As a result, the Borrower was ineligible for the remaining four subsidy payments that would have covered June through September of 2020.

If you have further questions about SBA servicing and CARES Act programs, please contact Sarah Hawkins, Deputy Center Director at sarah.hawkins@sba.gov or by phone at (501) 324-5871, extension 242.

# TAB B

## FIFTH AMENDMENT TO PROMISSORY NOTE AND WAIVER AGREEMENT

THIS FIFTH AMENDMENT TO PROMISSORY NOTE AND WAIVER AGREEMENT (this "Agreement") is made this _19_ day of March, 2020 by and between PACEM SOLUTION INTERNATIONAL LLC, a Virginia limited liability company (the "Borrower") and ATLANTIC UNION BANK, its successors and assigns (the "Lender").

### RECITALS

A.    The Lender has made a term loan (loan number 1080085275) (the "Loan") to the Borrower, which Loan is currently evidenced by that certain SBA Promissory Note dated August 15, 2018, from the Borrower in favor of the Lender in the principal amount of $5,000,000 (as amended from time to time, the "Note"). The Note is secured by, among other things, that certain (a) Deed of Trust dated August 10, 2018 from CORY MILLS, a resident of McLean, Virginia and RANA Z. AL SAADI to certain trustees named therein for the benefit of the Lender, and (b) Supplemental Mortgage, Assignment, Security Agreement and Fixture Filing dated May 17, 2019, by Pacem Estate Holdings LLC, a Florida limited liability company, as mortgagor in favor of the Lender, as mortgagee.

B.    As of December 31, 2019, the Borrower was in default for failing to comply with the Debt Service Coverage Ratio (the "**Existing Default**").

C.    The Borrower has requested, and the Lender has agreed to waive the Existing Default and amend the principal repayment provisions of the Note, on the condition, among others, that this Agreement be executed, modifying the principal repayment terms of the Note as hereinafter more fully set forth.

D.    Capitalized terms used herein and not defined shall each have the meaning given to such terms in the Note.

NOW, THEREFORE, THIS AGREEMENT WITNESSETH:

That in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Lender and the Borrower covenant and agree as follows:

1.    The present principal balance of the Note is $4,650,000 and such sum is due and owing, subject to the terms of repayment hereinafter set forth, without defense or offset.

2.    The Note shall be payable as follows:

(i)    Interest only on the unpaid principal balance of the Note shall be payable on first day of each month hereafter until maturity; and

(ii)    Unless sooner paid, the unpaid principal sum of the Note, together with all accrued and unpaid interest shall be due and payable in full on June 15, 2020.

41575669v2 221027.000071

3.     Lender hereby waives the Existing Defaults.  Lender's agreement to waive the Existing Defaults shall in no way obligate Lender to make any other modifications to the Loan Agreement or to waive Borrower's compliance with any other terms of the Financing Documents, and shall not limit or impair Lender's right to demand strict performance of all other terms and covenants as of any date.  The waiver set forth above shall not be deemed or otherwise construed to constitute a waiver of any other provision of this Agreement or the Loan Agreement in connection with any other transaction.

4.     <u>Limitation of Waiver</u>.

(i)     The waiver set forth in Section 3, above, is effective for the purposes set forth herein and shall be limited precisely as written and shall not be deemed to (a) be a consent to any amendment, waiver or modification of any other term or condition of any Financing Document, or (b) otherwise prejudice any right or remedy which Lender may now have or may have in the future under or in connection with any Financing Document.

(ii)     This Agreement shall be construed in connection with and as part of the Financing Documents and all terms, conditions, representations, warranties, covenants and agreements set forth in the Financing Documents are hereby ratified and confirmed and shall remain in full force and effect.

5.     In addition to those Events of Default specifically enumerated in the Financing Documents, the failure to comply with the terms of any covenant or agreement contained herein shall constitute an Event of Default and shall entitle the Lender to exercise all rights and remedies provided to the Lender under the terms of any of the other Financing Documents as a result of the occurrence of the same.

6.     The agreements of the Lender under this Agreement are subject to the satisfaction in the Lender's sole discretion of each of the following terms and conditions, time being of the essences set

(i)     the Borrower shall pay to Lender the following nonrefundable fees: (y) an extension fee in the amount of $2,500 for extending the Loan and (z) a waiver fee in the amount of $2,500 for the waiver of Existing Default, and all costs, fees and expenses incurred by Lender in connection with this Agreement, including, without limitation the Lender's legal fees and expenses; and

(ii)     the Borrower shall cause each guarantor of the Note to execute and deliver to the Lender the Agreement of Guarantor, attached to this Agreement.

7.     The terms, provisions and covenants of the Note and each of the other Financing Documents delivered in connection with the Note are in all respects hereby ratified and confirmed and remain in full force and effect.

8.     All references in the Deed of Trust to the Note shall be deemed to refer to the Note as amended as of the date hereof.

41575669v2 221027.000071

9.      It is expressly agreed that the indebtedness evidenced by the Note has not been extinguished or discharged hereby.  The Borrower and the Lender agree that the execution of this Agreement is not intended to and shall not cause or result in a novation with regard to the Note.

10.     This Agreement may be executed in one or more counterparts, each of which shall be considered an original for all purposes; provided, however, that all such counterparts shall together constitute one and the same instrument.

[Signatures begin on the following page]

## AGREEMENT OF GUARANTORS

Each of the undersigned is a "Guarantor" under an Unconditional Guarantee, dated August 15, 2018 (as amended, modified, substituted, extended and renewed from time to time, the "Guaranty"), in favor of the Lender. In order to induce the Lender to enter into the foregoing Fifth Amendment, each of the undersigned (a) consents to the transactions contemplated by, and agreements made by the Borrower under, the foregoing Fifth Amendment, and (b) ratifies, confirms and reissues the terms, conditions, promises, covenants, grants, assignments, security agreements, agreements, representations, warranties and provisions contained in the Guaranty.

WITNESS signature and seal of the undersigned as of the date of the Fifth Amendment.

WITNESS:



Rana Z. Al Saadi

Cory L. Mills

WITNESS the signatures and seals of the Borrower and the Lender the day and year first above written.

WITNESS:

PACEM SOLUTION INTERNATIONAL LLC

By _____
    Cory L. Mills
    Member

TAB C

## SIXTH AMENDMENT TO PROMISSORY NOTE AND WAIVER AGREEMENT

THIS SIXTH AMENDMENT TO PROMISSORY NOTE AND WAIVER AGREEMENT (this "Agreement") is made this 22 day of May, 2020 by and between PACEM SOLUTION INTERNATIONAL LLC, a Virginia limited liability company (the "Borrower") and ATLANTIC UNION BANK, its successors and assigns (the "Lender").

### RECITALS

A.     The Lender has made a term loan (loan number 1080085275) (the "Loan") to the Borrower, which Loan is currently evidenced by that certain SBA Promissory Note dated August 15, 2018, from the Borrower in favor of the Lender in the principal amount of $5,000,000 (as amended from time to time, the "Note"). The Note is secured by, among other things, that certain (a) Deed of Trust dated August 10, 2018 from CORY MILLS, a resident of McLean, Virginia and RANA Z. AL SAADI to certain trustees named therein for the benefit of the Lender, and (b) Supplemental Mortgage, Assignment, Security Agreement and Fixture Filing dated May 17, 2019, by Pacem Estate Holdings LLC, a Florida limited liability company, as mortgagor in favor of the Lender, as mortgagee.

B.     The Borrower has requested, and the Lender has agreed to amend the principal repayment provisions of the Note, on the condition, among others, that this Agreement be executed, modifying the principal repayment terms of the Note as hereinafter more fully set forth.

C.     Capitalized terms used herein and not defined shall each have the meaning given to such terms in the Note.

NOW, THEREFORE, THIS AGREEMENT WITNESSETH:

That in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Lender and the Borrower covenant and agree as follows:

1.     The present principal balance of the Note is $4,650,000 and such sum is due and owing, subject to the terms of repayment hereinafter set forth, without defense or offset.

2.     The Note shall be payable as follows:

(i)     The unpaid principal balance of the Note shall be payable in six (6) equal monthly installments of principal each in the amount of $775,000, plus interest on the unpaid principal balance, commencing on June 1, 2020 and on the first day of each month hereafter until maturity; and

(ii)     Unless sooner paid, the unpaid principal sum of the Note, together with all accrued and unpaid interest shall be due and payable in full on December 1, 2020.

42351244v1 221027.000071

3.    Limitation of Waiver.  This Agreement shall be construed in connection with and as part of the Financing Documents and all terms, conditions, representations, warranties, covenants and agreements set forth in the Financing Documents are hereby ratified and confirmed and shall remain in full force and effect.

4.    Events of Default. In addition to those Events of Default specifically enumerated in the Financing Documents, the failure to comply with the terms of any covenant or agreement contained herein shall constitute an Event of Default and shall entitle the Lender to exercise all rights and remedies provided to the Lender under the terms of any of the other Financing Documents as a result of the occurrence of the same.

5.    Ratification. The terms, provisions and covenants of the Note and each of the other Financing Documents delivered in connection with the Note are in all respects hereby ratified and confirmed and remain in full force and effect.

6.    Conforming Changes.  All references in the Deed of Trust to the Note shall be deemed to refer to the Note as amended as of the date hereof.

7.    Not a Discharge of Note. It is expressly agreed that the indebtedness evidenced by the Note has not been extinguished or discharged hereby.  The Borrower and the Lender agree that the execution of this Agreement is not intended to and shall not cause or result in a novation with regard to the Note.

8.    Counterparts and Headings. This Agreement may be executed in one or more counterparts, each of which shall be considered an original for all purposes; provided, however, that all such counterparts shall together constitute one and the same instrument.  The descriptive headings of the various provisions of this Agreement are inserted for convenience of reference only and shall not be deemed to affect the meaning or construction of any of the provisions hereof.

9.    PDF.  Signatures transmitted by electronic mail in PDF format shall be legal and binding and have the same legal effect as if an original of this Agreement had been delivered. Borrower agrees that it shall be bound by any signature (whether original or electronic) sent by electronic mail and is aware that other parties will rely on such signature and does hereby waive any defenses to the enforcement of the terms of this Agreement based on the foregoing forms of signature.

[Signatures begin on the following page]

42351244v1 221027.000071

2

WITNESS the signatures and seals of the Borrower and the Lender the day and year first above written.

WITNESS:

PACEM SOLUTION INTERNATIONAL LLC

By: _____ (SEAL)
Cory L. Mills
Member

42351244v1 221027.000071

## AGREEMENT OF GUARANTORS

Each of the undersigned is a "Guarantor" under an Uncondititon Guarantee, dated August 15, 2018 (as amended, modified, substituted, extended and renewed from time to time, the "Guaranty"), in favor of the Lender. In order to induce the Lender to enter into the foregoing Sixth Amendment, each of the undersigned (a) consents to the transactions contemplated by, and agreements made by the Borrower under, the foregoing Sixth Amendment, and (b) ratifies, confirms and reissues the terms, conditions, promises, covenants, grants, assignments, security agreements, agreements, representations, warranties and provisions contained in the Guaranty.

WITNESS signature and seal of the undersigned as of the date of the Sixth Amendment.

WITNESS:



(SEAL)

Rana Z. Al Saadi

(SEAL)

Cory L. Mills

# TAB D

**IMPORTANT NOTICE:**

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT (this "**Agreement**") is made effective as of this 31st day of March, 2021 (the "**Effective Date**") by and among Pacem Solution International LLC, a Virginia limited liability company (the "**Borrower**"), Pacem Estate Holdings LLC, a Florida limited liability company (the "**Mortgagor**"), Cory L. Mills, a Virginia resident ("**Mr. Mills**"), Rana Z. Al Saadi, a Virginia resident ("**Mrs. Al Saadi**"), and Atlantic Union Bank, successor-by-merger to Access National Bank (the "**Lender**").

### R E C I T A L S:

R1.     On or about August 10, 2018, the Lender made a commercial term loan to the Borrower in the original principal amount of $5,000,000 (the "**Loan**"), as is evidenced by, among other things, (a) a U.S. Small Business Administration Note executed by the Borrower and payable to the order of the Lender, as amended by (i) an Amendment to Promissory Note dated March 21, 2019, (ii) a Second Amendment to Promissory Note dated May 17, 2019, (iii) a Third Amendment to Promissory Note dated July 30, 2019, (iv) a Fourth Amendment to Promissory Note dated November 25, 2019, (v) a Fifth Amendment to Promissory Note and Waiver Agreement dated March 19, 2020, and (vi) a Sixth Amendment to Promissory Note and Waiver Agreement dated May 22, 2020 (as so amended, the "**Note**")[1] and (b) a Financing and Security Agreement, dated August 10, 2018, by and between the Borrower and the Lender (the "**Financing and Security Agreement**").

R2.     In order to induce the Lender to make the Loan, Mr. Mills and Mrs. Al Saadi (together, the "**Guarantors**") unconditionally and irrevocably guaranteed the payment and performance of the Loan pursuant to the terms and conditions of various guaranty agreements executed and delivered by the Guarantors (or either of them) for the benefit of the Lender (collectively, the "**Guaranties**").

R3.     The indebtedness due and owing under the Loan is secured by, among other things, (a) a first priority, duly perfected deed of trust lien in, to and against certain real property and the improvements thereon commonly known as 1198 Windrock Drive, McLean, Virginia 22102 (the "**Virginia Property**"), pursuant to the terms and conditions of, and as more fully described in, a Deed of Trust, dated August 10, 2018, executed by the Guarantors for the benefit of the Lender and recorded with the Land Records Division of the Fairfax Circuit Court at Book 25506, Page 1567 (the "**Virginia Deed of Trust**"), (b) a first priority, duly perfected security interest in, to and against substantially all tangible and intangible assets of the Borrower (collectively, the "**Personal Property**"), pursuant to the terms and conditions of the Financing and Security Agreement and that certain UCC-1 Financing Statement filed with the Commonwealth of Virginia State Corporation

---

[1] Pursuant to the Sixth Amendment to Promissory Note and Waiver Agreement dated May 22, 2020 (the "**Sixth Amendment to Note**"), the maturity of the Loan was extended to December 1, 2020, and the unpaid balance of the Loan was amortized over six (6) monthly payments of principal and interest in excess of $775,000 each.

Commission at File No. 180810-39625 (the "**Financing Statement**"), and (c) a second priority, duly perfected mortgage lien in, to and against certain real property and the improvements thereon commonly known as 4700 Providence Road, Perry, Florida 32347 (the "**Florida Property**"), pursuant to the terms and conditions of, and as more fully described in, a Supplemental Mortgage, Assignment, Security Agreement and Fixture Filing, dated May 17, 2019, executed by the Mortgagor for the benefit of the Lender and recorded with the Clerk of the Circuit Court for Taylor County at Book 797, Page 914 (the "**Florida Mortgage**").

R4.    The Note, the Financing and Security Agreement, the Guaranties, the Virginia Deed of Trust, the Florida Mortgage and the Financing Statement, together with all other documents relating thereto or executed in connection the Loan, are hereinafter collectively referred to as, the "**Loan Documents**". The Florida Property and the Virginia Property are hereinafter collectively referred to as, the "**Real Property**". The Real Property and the Personal Property, together with all other collateral securing the Loan, are hereinafter collectively referred to as, the "**Collateral**". The Borrower, the Guarantors and the Mortgagor are hereinafter collectively referred to as, the "**Obligors**".

R5.    Prior hereto, the following immediate and uncurable events of default, among others, occurred under the terms and conditions of the Loan Documents (collectively, the "**Noticed Defaults**"):

(a)    The Obligors' failure to satisfy all indebtedness due and owing under the Loan on or before the maturity date of December 1, 2020 (the "**Maturity Default**");[2]

(b)    The Borrower's and the Guarantors' failure to furnish to the Lender certain financial information when and as required under the terms of the Loan Documents, including, but not limited to, (i) within one hundred fifty (150) days after the closing of the Borrower's fiscal year, the Borrower's 2018 and 2019 annual financial statements, (ii) within forty-five (45) days of the close of the Borrower's fiscal quarter ending September 30, 2020, the Borrower's quarterly financial statements, (iii) within twenty (20) days after the close of fiscal months ending November 30, 2020 and December 31, 2020, the Borrower's monthly financial statements, and (iv) the Guarantors' annual updated personal financial statements;

(c)    The Guarantors' failure to pay the real estate taxes on the Virginia Property before delinquency and penalty for non-payment thereon that were, upon information and belief, due on August 28, 2020 in the amount of $21,701.77 and on December 5, 2020 in the amount of $21,701.76 (the "**Unpaid 2020 Virginia Property Taxes**");

---

[2] Pursuant to Section 1112 of the CARES Act, the U.S. Small Business Administration (the "**SBA**") made the final two (2) regularly scheduled interest only payments due and owing under the Fifth Amendment to Promissory Note and Waiver Agreement dated March 19, 2020 (i.e. the interest only payments due on April 1, 2020 and May 1, 2020). As of the date hereof, the Lender has not received any of the monthly payments under the Sixth Amendment from the Borrower (or the SBA by way of further subsidy payments on account of the Loan). Even if the SBA remitted up to four (4) additional regularly scheduled loan payments pursuant to Section 1112 of the CARES Act, the Loan would have a substantial remaining balance due and owing from the Obligors on the Maturity Date in excess of approximately $1,600,000 due to the fact that the Obligors did not make any of the monthly payments under the Sixth Amendment. Thus, the Obligors acknowledge the Maturity Default is not abrogated by the lack of any further subsidy payments from the SBA.

2

(d)     The Lender's good faith determination that a material adverse change has occurred in the financial condition of the Borrower; and

(e)     The Lender's good faith determination that an event has occurred which impairs the prospect of payment of the Loan.

R6.     As a result of the Noticed Defaults and any other uncurable events of default under the Loan Documents, on January 27, 2021, the Lender advised the Obligors (a) of the Noticed Defaults and (b) with a full reservation of rights, that unless the Obligors immediately addressed the Noticed Defaults and took such other actions as the Lender deemed necessary in its sole and absolute discretion, the Lender would be forced to exercise its rights, remedies and recourse under the Loan Documents (the "**January 27th Notice**").[3]

R7.     Notwithstanding the January 27th Notice and the demands contained therein, the Obligors failed to address the Noticed Defaults to the Lender's satisfaction and all indebtedness due and owing under the Loan remains immediately due and payable in full, as is evidenced by, among other things, a Notice of Defaults; Demand for Assembly and Inspection of Collateral dated February 9, 2021 (the "**February 9th Notice**").[4]

R8.     The Obligors have requested that the Lender temporarily forbear from exercising and enforcing certain of its rights, remedies and recourse under and with respect to the Loan Documents and applicable law, to allow additional time for the possibility of (a) the SBA to make a final determination as to whether any additional payments will be made by the SBA towards the Loan under and in connection with Section 1112 of the CARES Act, and (b) the Obligors to secure takeout financing for, among other things, all indebtedness due and owing under the Loan, to which the Lender has agreed, subject to the terms and conditions set forth herein.

## W I T N E S S E T H:

NOW, THEREFORE, in consideration of these premises, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Obligors and the Lender (collectively, the "**Parties**"), intending to be legally bound, hereby agree as follows:

1.     Recitals. The Obligors represent and warrant that the recitals set forth above are true and accurate and are hereby incorporated into this Agreement by reference.

---

[3] After the date of the January 27th Notice, the Borrower brought to the Lender's attention an additional uncurable event of default under the Loan Documents resulting from, among other things, a change in the ownership of the Borrower pursuant to Joseph E. Schmitz's acquisition of a minority two percent (2%) ownership interest in the Borrower, with the other ninety-eight percent (98%) ownership interest remaining vested in Mr. Mills (the "**Ownership Change Default**"). The preceding change in ownership notwithstanding, Mr. Mills retains sole and exclusive decision making authority with respect to the operations and affairs of the Borrower as the majority Member and Executive Chairman.

[4] The Guarantors caused substantially all of the Unpaid 2020 Virginia Property Taxes to be paid on or about March 2, 2021.

2.  Balance Owed.  The Obligors acknowledge and agree that as of March 26, 2021, the total amount due and owing under the Loan is $5,102,890.62, consisting of an unpaid principal balance in the amount of $4,650,000.00, accrued and unpaid interest in the amount of $213,609.37, and late fees in the amount of $239,281.25[5], plus the "Lender's Expenses" (hereinafter defined). The Obligors also acknowledge and agree that the Obligors are obligated to reimburse the Lender for all actual costs, expenses and attorneys' fees which the Lender has incurred and may hereafter incur as a result of and in connection with (a) the default(s) under the Loan Documents, (b) protecting and enforcing the Lender's rights under this Agreement and the Loan Documents, and (c) preparing, negotiating and consummating this Agreement and any other documents called for herein or contemplated hereby (collectively, the "**Lender's Expenses**"). All such Lender's Expenses shall be the sole and absolute responsibility of the Obligors, so that this entire matter shall be totally cost free to the Lender.  All indebtedness due and owing under the Loan, including, without limitation, principal, accrued and unpaid interest, late fees, and other fees, costs and expenses (including the Lender's Expenses), shall hereinafter be collectively referred to as, the "**Indebtedness**".

3.  Forbearance.  The Lender agrees, subject to the terms and conditions set forth herein, to forbear from enforcing its rights and remedies under the Loan Documents and applicable law from the period commencing on the Effective Date and continuing to and until the earlier of (a) the occurrence of an "Event of Default" (hereinafter defined) or (b) May 30, 2021 (such earlier date being hereinafter referred to as, the "**Forbearance Term Expiration Date**"). Upon the Forbearance Term Expiration Date, the Lender's agreement to forbear as set forth herein shall automatically terminate, without notice or demand, at which point the Lender may immediately thereafter proceed with enforcement of its various rights and remedies under and with respect to the Loan Documents and applicable law including, without limitation, confessing judgment against the Borrower and the Guarantors (or any of them), foreclosing on all or any portion of the Real Property and/or liquidating the Personal Property. Notwithstanding the foregoing, the Lender shall not be required to forbear from taking any action deemed reasonably necessary to protect and maintain its rights and interests in and to the Collateral pursuant to the terms and conditions set

---

[5] Pursuant to the terms of the Note, if a payment on the Note is more than ten (10) days late, the Lender may charge the Borrower a late fee of up to five percent (5.0%) of the unpaid portion of the regularly scheduled payment. The Borrower failed to remit each payment due and owing under the Sixth Amendment to Note within ten (10) days of each payments corresponding due date (including the regularly scheduled payment due at maturity of the Loan), and as a result, the Lender assessed the following late fees:

| Payment Due Date | Payment Amount | 5% Late Fee Assessed |
|---|---|---|
| June 1, 2020 | $786,528.12 | $39,326.41 |
| July 1, 2020 | $795,343.75 | $39,767.19 |
| August 1, 2020 | $796,021.88 | $39,801.09 |
| September 1, 2020 | $796,021.87 | $39,801.09 |
| October 1, 2020, | $795,343.75 | $39,767.19 |
| November 1, 2020 | $796,021.88 | $39,801.09 |
| December 1, 2020 | $20,343.75 | $1,017.19 |
| TOTAL: | | $239,281.25 |

4

forth in the Loan Documents and/or from taking such other actions as are permitted by this Agreement in order to facilitate the terms hereof.

4.     Forbearance Payments. The Obligors shall make or cause to be made the following payments to the Lender:

a.     Simultaneously with the execution of this Agreement, but in any event not later than March 31, 2021, the Obligors shall deliver or cause to be delivered to the Lender, in immediately available funds, a payment in the amount of $1,611,709.38 (the "**Forbearance Payment**"). The Forbearance Payment shall be applied towards Indebtedness in accordance with the terms of the Loan Documents.

b.     On or before the Forbearance Term Expiration Date, the Obligors shall deliver to the Lender, in immediately available funds, a payment in an amount sufficient to satisfy all Indebtedness due and owing under the Loan Documents. For the avoidance of doubt, the Indebtedness due and owing under the Loan Documents shall be reduced by any further Section 1112 subsidy payments remitted by the SBA on account of the Loan and received by the Lender prior to the Forbearance Term Expiration Date (if any); provided however, that the Obligors' obligation to satisfy all Indebtedness due and owing under the Loan on or before the Forbearance Term Expiration Date shall not be contingent upon the Lender receiving any one or more subsidy payments from the SBA and shall remain the absolute and unconditional obligation of the Obligors.

5.     Source of the Forbearance Payment. The Obligors represent and warrant to the Lender that the Obligors do not have the ability to make the Forbearance Payment without financing. As a result thereof, the Lender is willing to increase the "Creditor Claim Cap" under that certain Intercreditor Agreement, dated May 17, 2019, by and between Waygar Capital, Inc., as agent for Ninepoint Canadian Lender Debt Master Fund L.P. ("**Waygar**") and the Lender (the "**Intercreditor Agreement**") by Ten Million Canadian Dollars ($10,000,000), subject to the execution of an amendment to the Intercreditor Agreement by the Lender and Waygar, which shall be in such form and contain such content as is acceptable to the Lender in its sole and absolute discretion.

6.     Conditional Waiver of Certain Late Fees. In the event the Obligors satisfy all Indebtedness due and owing under the Loan Documents on or before the Forbearance Term Expiration Date, the Lender shall waive the repayment of the late fees assessed under the Loan Documents under and in connection with the payments originally due and owing on June 1, 2020, July 1, 2020, August 1, 2020 and September 1, 2020 in the aggregate amount of $158,698.78.

7.     Interest. Interest shall continue to accrue on the unpaid principal sum due and owing under the Loan Documents at the applicable rate set forth in the Note.

8.     Conditions Precedent. The Lender's agreement hereunder shall not take effect unless and until each of the following conditions are satisfied by no later than March 31, 2021, in the Lender's sole and absolute discretion:

5

a.     This Agreement shall be duly executed by the Obligors, and the Obligors shall deliver a fully executed copy of the same to the Lender via electronic mail and shall send to the Lender via overnight delivery an original fully executed Agreement for the Lender's records;

b.     The Lender shall have received a fully executed commitment letter or term sheet, or other similar documentation reasonably satisfactory to the Lender, evidencing a third-party lender's commitment to provide financing by no later than May 30, 2021 in an amount sufficient to pay, among other things, the unpaid Indebtedness due and owing under the Loan Documents in full;

c.     The Lender shall have received copies of all financial information of the Obligors provided to Waygar or its agents and/or affiliates in connection with the proposed takeout financing of the Indebtedness with the sole exception of any such information protected by the attorney-client privilege.

9.     <u>Takeout Financing</u>.  The Obligors shall use best faith efforts to refinance the Loan or otherwise satisfy the Indebtedness due and owing under the Loan Documents in full before the Forbearance Term Expiration Date.  On April 30, 2021, the Obligors shall provide the Lender with a written summary setting forth the status of the Obligors' efforts to satisfy the Indebtedness due and owing under the Loan Documents through obtaining financing from Waygar and such other means undertaken by the Obligors, together with all correspondence, documentation and information relating to the same (to the extent not previously furnished by the Obligors to the Lender).  The Obligors' obligations under this Agreement, including, but not limited to, the delivery of the payments called for under Section 4 hereof, shall not be conditioned in any way on the Obligors' ability to obtain refinancing.

10.    <u>Acknowledgments, Representations and Warranties</u>.  In order to induce the Lender to enter into this Agreement, each of the Obligors hereby acknowledges, represents, warrants and agrees as follows:

a.     <u>Default</u>. The Obligors are presently in default on their respective obligations to the Lender under the Loan Documents, have no right to cure the same, and but for the Lender's agreement to forbear as set forth herein, the Lender would be immediately entitled to proceed with enforcement of its rights, remedies and recourse under the Loan Documents and applicable law.

b.     <u>No Defenses; No Claims</u>. The Loan Documents are the valid and binding obligations of the Obligors, to which the Obligors have no defenses or counterclaims.  The Obligors have no causes of action, claims, demands or liabilities of any kind, whatsoever in law or equity, against the Lender, including but not limited to those arising from or related to the Loan, the Loan Documents and/or all enforcement actions taken in connection therewith.  The January 27th Notice and the February 9th Notice were each provided to the Obligors in accordance with the terms of the Loan Documents.

c.     <u>No Waiver</u>. The Lender is not waiving any rights or remedies with respect to the Loan Documents (or the defaults thereunder) or applicable law.

d.     <u>Power and Authority</u>. Each of the Obligors have full power and authority to enter into this Agreement and to incur and perform all obligations and covenants contained

6

herein.  The entry into this Agreement has been validly and effectively approved by the members, managers, directors, officers and/or shareholders of the Borrower and the Mortgagor as may be required under their respective organizational documents and applicable law.

        e.    Effect of Loan Documents.  Except as expressly set forth in this Agreement, each of the Loan Documents continues in full force and effect notwithstanding the execution and delivery of this Agreement. The Obligors hereby reissue, ratify and confirm the enforceability and validity of the Loan Documents and agree that each of the Loan Documents constitutes the legal, valid and binding obligation of the Obligors, enforceable in accordance with their respective terms, except as expressly modified by this Agreement. In addition, the Obligors acknowledge and agree that neither the execution and delivery of this Agreement nor any of the terms, provisions, covenants or agreements contained in this Agreement shall in any manner release, impair, lessen, modify, waive or otherwise affect the liability and obligations of the Obligors under the terms of the Loan Documents, except as expressly set forth herein.

        f.    Corporate Status.  The Borrower and the Mortgagor are duly organized, validly existing, and their respective operations and affairs have been effectively and validly commenced. As of the Effective Date, the Borrower and the Mortgagor are in good standing under the laws of their respective jurisdictions of organization and such other jurisdictions as are required for the Borrower and the Mortgagor to conduct the business in which they are respectively engaged.

        g.    Accuracy of Financial Statements. The financial statements and other records provided by the Obligors to the Lender in connection with the Loan are true, accurate and complete.

        h.    Assurance of Representations, etc. All understandings, representations, warranties and recitals contained or expressed in this Agreement and the Loan Documents are true, accurate, complete and correct in all material respects and no such understanding, representation, warranty or recital fails or omits to state or otherwise disclose any material fact or information necessary to prevent such understanding, representation, warranty or recital from being misleading. The Obligors acknowledge and agree that the Lender has been induced to enter into this Agreement based upon the Lender's justifiable reliance on the truth, accuracy and completeness of all understandings, representations, warranties and recitals contained in this Agreement and the Loan Documents.

        i.    Existing Waygar Financing. The Borrower and the other obligors under the "Creditor Loan" (as defined in the Intercreditor Agreement) are paying as agreed under such credit facility.

        j.    **Understanding of Agreement**. **The Obligors have read this Agreement, understand its contents (including, but not limited to, the confession of judgment provision under Section 15(c) and the jury waiver under Section 31) and have sought or been given the opportunity to seek the advice of counsel before executing and delivering this Agreement.**

    11.    Reaffirmation of Loan Documents.  The Obligors acknowledge their respective obligations under the Loan Documents and agree that their respective obligations shall extend to

7

the terms and conditions set forth in this Agreement. The Obligors' obligations under this Agreement shall be in addition to any obligations of the Obligors under the Loan Documents and, where conflicting or inconsistent provisions or obligations exist, the Loan Documents and this Agreement shall be read together, where possible, to provide the broadest and most encompassing obligations on the Obligors, and shall be construed, interpreted and resolved so as to benefit the Lender.

12.     General Covenants and Agreements. To induce the Lender to forbear as set forth herein, the Obligors jointly and severally covenant and agree to do as follows (said covenants and agreements being in addition to, and not in lieu of, any covenants or agreements contained elsewhere in this Agreement or in the Loan Documents):

a.   Notice of Existence of Default. The Obligors shall promptly advise the Lender of the occurrence of an event that constitutes or after the passage of time could constitute an Event of Default.

b.   Notice of Change in Financial Condition. The Obligors shall promptly advise the Lender of any material adverse change in the financial condition or operations of any of the Obligors including, but not limited to, notice of any action or prospective claim or litigation, including tax deficiencies, which may be asserted against any of the Obligors or the Collateral, and any prospective condemnation, change of zoning, or other action affecting the Collateral.

c.   Due Diligence; Appraisals; Documents and Information. Until all Indebtedness due and owing under the Loan Documents has been satisfied, the Lender shall be entitled to conduct such due diligence with respect to the Obligors and the Collateral as the Lender, in its sole and absolute discretion, deems necessary, including, but not limited to, obtaining UCC, judgment and tax lien reports for the Obligors and the Real Property, obtaining appraisals with respect to the Real Property, and such other due diligence with respect to the Collateral and the Obligors when and as the Lender deems appropriate. The Obligors shall use best faith efforts to assist and cooperate with the Lender in obtaining or conducting any of the due diligence contemplated herein, and further agree that any costs associated with such due diligence shall be included within the definition of "Lender's Expenses" (as that term is defined in Section 2 of this Agreement) and shall be paid for by the Obligors immediately upon the Lender's demand, but in any event, on or before the Forbearance Term Expiration Date. The Obligors shall promptly provide to the Lender upon the Lender's written request copies of all documents and information relating to the Obligors' performance under this Agreement and such other documents and information as the Lender may request in its reasonable discretion.

d.   Insurance. The Obligors shall procure and maintain all insurance coverages required by the Loan Documents, and the Lender shall be named as a loss payee/additional insured on all such policies of insurance. Upon telephonic or written notice from the Lender, the Obligors shall provide the Lender with evidence of insurance coverage including, without limitation, certified copies of the policies and required endorsements, invoices and evidence of payment of same.

e.   Maintenance of the Collateral. The Obligors shall, at their own cost and expense, take all actions as reasonably necessary to maintain the Collateral in good and safe condition.

8

f.   Payment of Taxes, Assessments and Charges. The Obligors covenant and agree to keep the Collateral free and clear from any judgments or liens (other than liens in favor of the Lender) and shall promptly pay all taxes, assessments and charges thereon in accordance with the terms of the Loan Documents.

g.   Covenant Not to Encumber Property.   The Obligors agree that no further encumbrances, including but not limited to any mortgage, security agreement, financing statement, deed of trust, or other lien (including mechanics' liens), shall be placed against any of their assets including, without limitation, the Collateral (other than in favor of the Lender).

h.   SBA Communications, Information and Other Documentation. The Obligors shall provide the Lender with copies of all communications, information and other documentation provided by the Obligors to the SBA or received by the Obligors from the SBA under and in connection with the Loan simultaneously with the Obligors provision of the same to, and/or receipt of the same from, the SBA.

i.   Life Insurance.  The Obligors shall use good faith efforts to obtain as soon as possible, but in any event no later than thirty (30) days from the Effective Date, life insurance on each of the Guarantors satisfactory to the Lender and for the Lender's benefit in the amount (or to the extent satisfactory to the Lender, in the aggregate amount) of Five Million Dollars ($5,000,000) each.

13.   Reaffirmation of Liens Against Collateral. The Obligors represent, warrant and confirm the Lender holds a valid, properly perfected and indefeasible (a) first priority deed of trust lien in, to and against the Virginia Property, (b) first priority security interest in, to and against the Personal Property (with the sole exception of the "Creditor's Priority Collateral" under the Intercreditor Agreement), and (c) second priority mortgage lien in, to and against the Florida Property.

14.   Events of Default.  The occurrence of any of the following shall constitute events of default under this Agreement and additional events of default under the Loan Documents (each, an "**Event of Default**" and collectively, the "**Events of Default**"):

a.   The failure of any of the Obligors to make any of the payments which they are required to make pursuant to this Agreement, including, without limitation, the failure to make a payment in full satisfaction of the Indebtedness on or before the Forbearance Term Expiration Date, time being of the essence.

b.   The failure of any of the Obligors to do anything they are required to do under this Agreement or any of the Loan Documents (other than the Noticed Defaults and the Ownership Change Default).

c.   Any of the Obligors doing anything they are prohibited from doing under this Agreement or any of the Loan Documents.

d.   Any violation or breach by any of the Obligors of any representation, covenant, warranty or obligation contained in this Agreement or any of the Loan Documents (other than the Noticed Defaults and the Ownership Change Default).

9

e.  Any of the Obligors providing the Lender with any information that is not true, accurate and complete, to the best of their knowledge, information and belief.

f.  The occurrence of an event of default under the terms of that certain Forbearance Agreement, dated of even date herewith, by and between the Lender and the Obligors under and in connection with that certain $4,000,000 commercial term loan from the Lender to the Mortgagor.

g.  The commencement of a voluntary or involuntary federal bankruptcy proceeding, state insolvency proceeding or other similar type of proceeding by or against any of the Obligors.

h.  The sale, dissolution, merger, consolidation, liquidation or reorganization of the Borrower or the Mortgagor.

i.  The uninsured death of either of the Guarantors, or the insured death of either of the Guarantors that does not result in the immediate satisfaction of all Indebtedness due and owing under the Loan.

j.  The entry of one or more final judgments, decrees or orders against any of the Obligors.

k.  Any event shall occur which the Lender reasonably deems to impair the Collateral, including, without limitation, the value thereof, or the prospect of repayment of the Loan.

15.  <u>Preservation of Defaults; Forbearance; Rights and Remedies</u>.  Neither any failure nor any delay on the part of the Lender in exercising any right, power or remedy under this Agreement, the Loan Documents or under applicable law shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All of the Lender's rights, powers and remedies may be exercised from time to time and as often as may be deemed expedient. No waiver or forbearance by the Lender as to the Obligors shall waive or release any rights or claims which the Lender may now have or hereafter can have against any other person, firm or individual or which the Lender may have against the Obligors with respect to any other obligations of the Obligors (or any of them) to the Lender. The Lender reserves all rights. Notwithstanding anything contained herein to the contrary, nothing contained in this Agreement shall be construed as creating any obligation for the Lender to take any action for the benefit of the Obligors or as creating any fiduciary or trust relationships between the Lender, on the one hand, and any of the Obligors, on the other hand. Nothing contained in this Agreement shall be deemed as the Lender's agreement to accept anything less than the Indebtedness and all other amounts due to the Lender under the Loan Documents. If an Event of Default hereafter occurs, all Indebtedness shall be immediately due and payable in full without notice or demand and the Lender shall have the following rights and remedies, which are in addition to any other rights and remedies available to the Lender under the Loan Documents and/or applicable law:

a.  <u>Legal Proceedings</u>. The Lender may proceed to enforce this Agreement and the Loan Documents, or the rights of the Lender hereunder and thereunder, by any action or actions at law or in equity or by any other appropriate proceedings, including without limitation, an action for the specific performance of any of the covenants contained in this Agreement or the Loan Documents, or for an injunction against the violation of any of the covenants or agreements in this

10

Agreement or the Loan Documents or in aid of the exercise or execution of any right, remedy or power granted in this Agreement or the Loan Documents or by law, or for the purpose of enforcing payment of the Indebtedness due and owing under this Agreement and the Loan Documents.

b. <u>Set-off</u>. To set-off and appropriate and apply any and all deposits (general or special, time or demand, provisional or final), in any currency, and any other credits, indebtedness or claims, in any currency, in each case whether direct or indirect, filed or contingent, matured or unmatured, at any time held or owing by the Lender to or for the credit or the account of the Obligors, or any part thereof in such amounts as the Lender may elect, against and on account of the liabilities of the Obligors to the Lender under the Loan Documents, and claims of every nature and description arising hereunder, or under any of the Loan Documents, or otherwise, as the Lender may elect, whether or not the Lender has made any demand for payment and although such liabilities and such claims may be contingent or unmatured.

c. **<u>CONFESSION OF JUDGMENT</u>. THE BORROWER AND THE GUARANTORS EACH IRREVOCABLY AUTHORIZE AND EMPOWER ANY ATTORNEY ADMITTED TO PRACTICE BEFORE ANY COURT OF RECORD IN THE UNITED STATES TO APPEAR ON BEHALF OF THE BORROWER AND THE GUARANTORS IN ANY SUCH COURT, IN ONE OR MORE PROCEEDINGS, OR BEFORE ANY CLERK THEREOF, AND TO CONFESS JUDGMENT AGAINST THE BORROWER AND THE GUARANTORS (OR ANY OF THEM), WITHOUT PRIOR NOTICE OR OPPORTUNITY FOR PRIOR HEARING, IN FAVOR OF THE LENDER, FOR THE FULL AMOUNTS THEN OWED TO THE LENDER UNDER THIS AGREEMENT AND THE LOAN DOCUMENTS, PLUS AN ATTORNEYS' FEE EQUAL TO FIFTEEN PERCENT (15%) OF SAID AMOUNTS, PLUS COURT COSTS. IN ADDITION TO ALL OTHER COURTS WHERE JURISDICTION AND VENUE WOULD BE PROPER, THE BORROWER AND THE GUARANTORS CONSENT TO THE JURISDICTION AND VENUE OF THE CIRCUIT COURT OF THE CITY OF RICHMOND, VIRGINIA OR THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, FOR THE ENTRY OF SAID JUDGMENT(S). THE BORROWER AND THE GUARANTORS EACH HEREBY IRREVOCABLY AUTHORIZE AND EMPOWER DOUGLAS D. CALLAWAY AND/OR MICHAEL E. WALSH AND/OR LYNN HARRISON, AND/OR FRANK S. MERRITT, AND/OR INGA D. GREEN AND/OR SCOTT W. FOLEY, ESQUIRE AND/OR ANY OFFICER OF THE LENDER, ANY OF WHOM MAY ACT INDIVIDUALLY OR AS PART OF A GROUP OR COLLECTIVELY, AS THE BORROWER'S AND THE GUARANTORS' ATTORNEY-IN-FACT TO APPEAR IN THE CIRCUIT COURT OF THE CITY OF RICHMOND, VIRGINIA OR IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AND CONFESS JUDGMENT AGAINST THE BORROWER AND THE GUARANTORS (OR ANY OF THEM). IF A COPY OF THIS AGREEMENT, VERIFIED BY AN AFFIDAVIT, SHALL HAVE BEEN FILED IN THE PROCEEDING, IT WILL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY. THE LENDER SHALL BE AUTHORIZED TO APPOINT A SUBSTITUTE ATTORNEY-IN-FACT PURSUANT TO SECTION 8.01-435 OF THE VIRGINIA CODE. THE BORROWER AND THE GUARANTORS EACH WAIVE AND RELEASE ALL ERRORS, DEFECTS, AND IMPERFECTIONS WHATSOEVER IN THE ENTRY OF**

11

**SAID JUDGMENT(S) AND HEREBY AGREE THAT NO WRIT OF ERROR OR OBJECTION OR MOTION OR RULE TO OPEN OR STRIKE SAID JUDGMENT(S) OR APPEAL SHALL BE MADE OR TAKEN THERETO. THE BORROWER AND THE GUARANTORS EACH ALSO WAIVE ANY RIGHT TO NOTICE OR A HEARING PRIOR TO THE ENTRY OF SAID JUDGMENT(S) AND FURTHER WAIVE THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE, OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER AND/OR THE GUARANTORS ANY RIGHT OR PRIVILEGE OF EXEMPTION INCLUDING, BUT NOT LIMITED TO, ANY HOMESTEAD EXEMPTION, STAY OF EXECUTION, OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT OR IMMEDIATE ENFORCEMENT OF A JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT(S) AGAINST THE BORROWER AND THE GUARANTORS (OR ANY OF THEM) PURSUANT TO THE AUTHORITY GRANTED HEREIN SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT(S) ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS, AS OFTEN AS LENDER MAY DEEM NECESSARY OR ADVISABLE. THE JUDGMENT(S) ENTERED IN FAVOR OF THE LENDER AGAINST THE BORROWER AND THE GUARANTORS (OR ANY OF THEM), WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT THE RATE WHICH IS THE HIGHEST RATE OF INTEREST PERMITTED UNDER THE LOAN DOCUMENTS ON THE DATE OF JUDGMENT, OR THE HIGHEST RATE OF INTEREST ALLOWABLE BY LAW, WHICHEVER IS GREATER.**

      d.  <u>Cumulative Remedies</u>. Each right, power and remedy of the Lender as provided for in this Agreement and the Loan Documents, or now or hereafter existing at law or in equity or by statute or otherwise, shall be cumulative and concurrent and shall be in addition to every other such right, power or remedy, and the exercise or beginning of the exercise by the Lender of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise by the Lender of any or all other such rights, powers or remedies.

      e.  <u>Attorneys' Fees; Non-Merger</u>. Should this Agreement or any Loan Document be referred to an attorney for any reason, whether or not suit has been filed or judgment has been confessed, the Obligors shall pay all of the Lender's costs, expenses and fees resulting from such referral, including, without limitation, attorneys' fees. If enforcement of this Agreement results in the Lender obtaining a money judgment against the Obligors (or any of them), said Lender's right to payment and reimbursement of attorneys' fees and costs arising after the entry of such judgment (including without limitation attorneys' fees and costs incurred to collect the judgment, foreclose on the Real Property or liquidate the Personal Property) shall not be extinguished or merged into the judgment but shall survive the judgment as a continuing claim against the Obligors and the Collateral.