**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **PACEM SOLUTIONS INTERNATIONAL, LLC** | |
| Plaintiff, | |
| v. | Civil Action No.: 1:23-cv-1702 (LMB/IDD) |
| **U.S. SMALL BUSINESS ADMINISTRATION,** | |
| -and- | |
| **ISABELLA CASILLAS GUZMAN, IN HER CAPACITY AS ADMINISTRATOR, U.S. SMALL BUSINESS ADMINISTRATION** | |
| Defendants. | |

**PLAINTIFF PACEM SOLUTIONS INTERNATIONAL, LLC'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANTS' OPPOSITION TO SUMMARY JUDGMENT**

Pursuant to Local Rule 7(F)(1) and this Court's Order of May 22, 2024, Plaintiff respectfully submits this "single memorandum containing reply arguments in further support of its [motion for summary judgment] and in opposition to" the motion for summary judgment filed on behalf of Defendants U.S. Small Business Administration ("SBA") and Isabella Guzman, in her capacity as Administrator of the SBA.  Order of May 22, 2024, p. 2.

1

**TABLE OF CONTENTS**

INTRODUCTION          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          3

PART I: OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
        JUDGMENT          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          4

        A. COUNTERSTATEMENT OF UNDISPUTED AND MATERIAL
           FACTS          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          4

        B. DEFENDANTS RELIED ON WRONG STANDARD OF REVIEW . . . .          6

        C. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT . .          9

PART II:  PACEM REPLY IN FURTHER SUPPORT OF SUMMARY
         JUDGMENT          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          11

        A. SBA FALSE EXPLANATION #1: LOAN IN DEFAULT  . . . . . . . . . . . . . .          12

        B. SBA FALSE EXPLANATION #2:  THE PACEM LOAN WAS NEVER
           ELIGIBLE FOR CARES ACTS SUBSIDIES  . . . . . . . . . . . . . . .. . . . . . . . .          14

        C. SBA'S ACTIONS NOT ENTITLED TO DEFERENCE . . . . . . . . . . . . .. . . . .          16

        D. SBA VIOLATED PACEM'S CONSTITUTIONAL RIGHT TO
           PROCEDURAL DUE PROCESS OVER A PERIOD OF FOUR YEARS . .          17

        E. PLAINTIFF IS ENTITLED TO REMAINING SUBSIDY PAYMENTS  . . .          21

        F. ANY AMBIGUITIES SHOULD BE CONSTRUED IN PACEM' FAVOR  . .          28

CONCLUSION          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          30

## INTRODUCTION

Under the standard of review announced by the Supreme Court in *Loper Bright Enterprises et al. v. Raimondo*, 144 S.Ct. 2244 (2024), this Court "must exercise [its] independent judgment in deciding whether [the SBA] has acted within its statutory authority, as the APA requires."  144 S.Ct. at 2273.  As explained below, there "is no genuine dispute as to any material fact," and PACEM "is entitled to judgment as a matter of law."  Fed. R. Civ. P 56(a).  Specifically, the main legal issue in this case is whether or not PACEM's loan was eligible to receive subsidy payments under Section 1112 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), subsection 1112(c)(1)(A) of which provides:

> The [SBA] Administrator shall pay the principal, interest, and any associated fees that are owed on a covered loan in a regular servicing status . . . with respect to a covered loan made before the date of enactment of this Act and not on deferment, for the 6-month period beginning with the next payment due on the covered loan.

Section 1112(a) defines "covered loan" to include "a loan that is . . . guaranteed by the [SBA] Administrator under . . . section 7(a) of the Small Business Act," which PACEM's loan at issue indisputably was.  Section 1112(b) includes this "Sense of Congress":

> It is the sense of Congress that--
> (1) all borrowers are adversely affected by COVID-19;
> (2) relief payments by the Administration are appropriate for all borrowers; and
> (3) in addition to the relief provided under this Act, the Administration should encourage lenders to provide payment deferments, when appropriate, and to extend the maturity of covered loans, so as to avoid balloon payments or any requirement for increases in debt payments resulting from deferments provided by lenders during the period of the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the Coronavirus Disease 2019 (COVID-19).

Notwithstanding this clear indication of Congressional intent, the SBA argues that, "After examining the relevant data, the SBA rationally concluded, based on substantial evidence, that Plaintiff's loan had never in fact been eligible for CARES Act payments—a conclusion with

3

which even Plaintiff's own lender agreed.  The SBA's decision accordingly complies with the APA."  Dkt. 37 at16.  But nothing in the Administrative Record before this Court supports this *post-hoc* rationalization by SBA counsel in this litigation.

The ugly facts for the SBA in this case are that:  (A) the Administrative Record submitted by SBA counsel includes no decision by the SBA that contains the requisite "satisfactory explanation for its actions, including a 'rational connection between the facts found and the choice made'."  *Motor Vehicles Mfgs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (internal citation omitted); and (B) the SBA admits that it violated its own procedural due process regulations by never mailing a written final decision to PACEM – which only compounded the SBA's unrebutted violations of PACEM's constitutional right to procedural due process, including notice and an opportunity to be heard, over a period of four years.

## PART I: OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.  COUNTERSTATEMENT OF UNDISPUTED AND MATERIAL FACTS

With the exception of Paragraphs 22, 23 and 32, Plaintiff does not dispute the accuracy of the statements of fact set forth by Defendants as present within the Administrative Record. Plaintiff does dispute the materiality of the statements related to the history of the PACEM loan, as such is not relevant under the code provisions, statutes, regulations, and standard operating procedures relevant to the application of the CARES Act and only supports a post-hoc decision of the SBA.

Plaintiff specifically disputes the statement set forth in Paragraph 22 that asserts: "Also in May 2020, however, the 1502 report for Plaintiff's loan showed a due date . . . ."  In support of this "fact" Defendant cites AR1.  AR1 however, is not the May 2020 1502; rather it is a compilation of 1502 report data from March of 2020 through June of 2021 that was clearly not in

the possession of the SBA at the time of the May 2020 decision to stop payments as it could not have been created until June 2021 at the earliest.

With regard to Paragraph 23, Defendant misstates the contents of the communication from the SBA to Atlantic Bank.  The SBA did not advise of an "apparent delinquency" rather the SBA states: "It appears that the loan has been misreported and showing delinquency, . . . " AR3.

Paragraph 32 represents that "the SBA notified Plaintiff of the agency's determination that Plaintiff was not eligible for CARES Act subsidy payments on December 23, 2022." AR348-49  This statement is misleading as the "notification" to Plaintiff was an email sent to Plaintiff's counsel that did not satisfy the obligations of the SBA under 13 C.F.R.§114.109.

Based on the arguments put forth by Defendant, Plaintiff offers these additional undisputed facts:

1.	The Administrative Record reveals no steps by the SBA to investigate the PACEM loan until an email of November 16, 2020 to Atlantic Bank five months after it stopped, without explanation or notice, the CARES Act payments on behalf of PACEM. AR100.

2.	On February 12, 2021, PACEM filed Federal Agency Comment Form to engage with the Office National Ombudsman concerning the actions of the SBA related to the PACEM loan and the CARES Act payments.  AR135-136.

3.	By response of May 22, 2021, the Ombudsman advised PACEM for the first time that the loan payments were halted as a result of the SBA's determination that the loan was in default since late April 2020. AR152.

4.	As a final effort to resolve this issue, PACEM filed a Form 95 Claim for Damages on June 28, 2022.  PACEM relayed that the SBA had advised the payments were stopped because the loan was determined to be in default as of late April 2020. AR145-154.

5

5.     By correspondence of November 10, 2022, the SBA contacted Atlantic Union Bank, the originator of the PACEM loan, and advised that the SBA had determined that the PACEM loan was never eligible for payment under the CARES Act.  The SBA cited unspecified violations of 13 C.F.R. §120.524(a)(1-5). AR 326-327.

6.     PACEM was not copied on the November 10, 2022 letter to Atlantic Union Bank. Id.

7.     By email of December 23, 2022 to PACEM outside counsel, SBA representative confirmed the December 12, 2022 phone call with PACEM's outside counsel concerning the resolution of the Form 95 Claim. AR332

8.     The December 23, 2022 email did not address the initial June 2020 decision of the SBA to halt payments to PACEM.  AR332.

9.     The December 23, 2022 email indicated that the "SBA determined that PACEM is ineligible to received Section 1112 payments under the CARES Act given, among other things, PACEM's loan and payment history." AR332.

10.     Defendants admitted that the SBA failed to follow its own regulation that provides "that the SBA 'will notify you or your agent or legal representative in writing by certified or registered mail if it denies your claim.'  13 C.F.R. § 114.109."  Dkt. 37 at 19 footnote 7.

**B.  DEFENDANTS RELIED ON WRONG STANDARD OF REVIEW**

The SBA's argument in support of its Motion for Summary Judgment that the standard of judicial review in this case "is highly deferential, with a presumption in favor of finding the agency action valid," is wrong.  After *Loper Bright Enterprises et al. v. Raimondo*, 144 S.Ct. 2244 (2024), the standard of review for legal issues under the APA -- which are the only issues

relevant to a Motion for Summary Judgment[1] -- is non-deferential:  "Courts must exercise their

independent judgment in deciding whether an agency has acted within its statutory authority, as

the APA requires."  144 S.Ct. at 2273.

Contrary to *Loper*, the SBA claims that:

Under the APA, a court may set aside an agency's final action that is "arbitrary,
capricious, an abuse of discretion, or otherwise not in accordance with law."
*Mezze USA [LLC v. USCIS]*, 2024 WL 128218, at *5 [(E.D. Va. Jan. 11, 2024)]
(quoting 5 U.S.C. § 704).  "Review under this standard is highly deferential, with
a presumption in favor of finding the agency action valid." *Ohio Valley Envtl.
Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009).  And "[d]eference
is due where the agency has examined the relevant data and provided an
explanation of its decision that includes 'a rational connection between the facts
found and the choice made.'" *Id.* (citation and additional quotation marks
omitted).  Likewise, "[a]n agency action will . . . be sustained if it is supported by
'substantial evidence,' or 'such evidence as a reasonable mind might accept as
adequate to support a conclusion.'" *Heuss v. Del Toro*, 2022 WL 598055, at *3
(E.D. Va. Feb. 28, 2022) (Brinkema, J.) (quoting *Platone v. U.S. Dep't of Labor*,
548 F.3d 322, 326 (4th Cir. 2008)).  In short, agency action is valid under the APA
as long as "a rational basis exists for its decision."  *Nat. Res. Def. Council v. EPA*,
16 F.3d 1395, 1400-01 (4th Cir. 1993).

Dkt. 37 at 15-16.

The 4th Circuit opinion quoted by the SBA for a "highly deferential" standard of judicial

review, "with a presumption in favor of finding the agency action valid," *Ohio Valley Envtl.

Coal. v. Aracoma Coal Co.*, 556 F.3d 177 (4th Cir. 2009), relies on *Chevron U.S.A. Inc. v.

Natural Res. Def. Council*, 467 U.S. 837 (1984), which the Supreme Court overruled on June 28,

2024.

In *Loper*, the Supreme Court explained:  "The deference that *Chevron* requires of courts

reviewing agency action cannot be squared with the APA. . . .  *Chevron* is overruled.  Courts

---

[1] Defendants do not dispute PACEM's recitation of the legal standard for the pending cross-
motions:  "Under Civil Rule 56(a), the court 'shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a
matter of law.'  Fed. R. Civ. P 56(a)."  Dkt. 37 at 9.

must exercise their independent judgment in deciding whether an agency has acted within its

statutory authority, as the APA requires."  144 S. Ct. at 2263, 2273.

In *Ohio Valley Envtl. Coal.,* the 4th Circuit relied on *Chevron* for its holding that the Army

Corps of Engineers' interpretation of its authorizing statute is entitled to deference on judicial

review:

> In determining whether the Corps' interpretation is entitled to deference, this
> Court must first look to the language of the authorizing statute.  *Chevron,* 467
> U.S. at 842–43, 104 S.Ct. 2778 (1984).  An agency's reasonable interpretation of a
> statute is entitled to deference, unless Congress has already expressed a clearly
> contrary intent.  *Id.*

*Ohio Valley Envtl. Coal.,* 556 F.3d at 211; *contra Loper*, 144 S.Ct. at 2263, 2273.

Regarding presumptions, the Court in *Loper* explained:

> Presumptions have their place in statutory interpretation, but only to the extent
> that they approximate reality.  *Chevron*'s presumption does not, because '[a]n
> ambiguity is simply not a delegation of law-interpreting power.  *Chevron* confuses
> the two". . . .  Perhaps most fundamentally, *Chevron*'s presumption is misguided
> because agencies have no special competence in resolving statutory ambiguities.
> Courts do.  The Framers, as noted, anticipated that courts would often confront
> statutory ambiguities and expected that courts would resolve them by exercising
> independent legal judgment.

*Loper*, 144 S. Ct. at 2265-66 (internal citation omitted).

Likewise, this Court's decision in *Heuss v. Del Toro*, 2022 WL 598055 (E.D. Va. Feb. 28,

2022) (Brinkema, J.), quoted by the SBA for the rule that "[a]n agency action will . . . be

sustained if it is supported by 'substantial evidence,' or 'such evidence as a reasonable mind

might accept as adequate to support a conclusion'," relies on *Platone v. U.S. Dep't of Labor*, 548

F.3d 322 (4th Cir. 2008), another 4th Circuit opinion that relied on *Chevron.*

In *Platone,* the 4th Circuit affirmed "a ruling of the Department of Labor's Administrative

Review Board ('ARB') denying Stacy Platone whistleblower protection under the Sarbanes–

Oxley Act, 18 U.S.C. § 1514A (2006)," 548 F.3d at 323:

> The ARB's findings of law are reviewed de novo, with due deference accorded by this Court to the ARB's interpretation of § 1514A, and the findings should be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2000). *See also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.* . . . The ARB ruled below that allegations to management under the whistle-blowing provision of the Sarbanes–Oxley Act must be definitively and specifically related to one of the areas accorded protection in § 1514A(a)(1). The Court upheld this conclusion in *Welch [v. Chao],* 536 F.3d 269, 276 n. 2 [(4th Cir. 2008)], where it accorded *Chevron* deference to the ARB's interpretation of § 1514A.

548 F.3d at 326; *contra Loper*, 144 S. Ct. at 2263, 2273.

Finally, the SBA's argument that, "In short, agency action is valid under the APA as long as 'a rational basis exists for its decision.' *Nat. Res. Def. Council v. EPA*, 16 F.3d 1395, 1400-01 (4th Cir. 1993)" must also be viewed in light of the Supreme Court's overruling of *Chevron* in *Loper*.

In short, the SBA's argument that the standard of judicial review in this case "is highly deferential, with a presumption in favor of finding the agency action valid," is wrong. The standard of review in this case is the same non-deferential standard articulated by the Supreme Court in *Loper*: "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." 144 S. Ct. at 2273.

## C. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT

The SBA's argument for Summary Judgment is based on the incorrect standard, as discussed above, and is not supported by the facts in the Administrative Record, as discussed below. Further, the SBA summarily discarded any concerns about the Due Process argument, essentially arguing that PACEM was eventually advised of the reason behind the termination despite the SBA's failure to abide by the statutory requirement that it notify the claimant in writing via certified mail. A non-specific email to the parties attorney is not sufficient to satisfy that requirement. The SBA is unable to prove as a matter of law that the Administrative Record

clearly documents their decision and demonstrates the basis for same. Without such support in the Record and without the level of deference the SBA maintains its "conclusions" should be afforded, the SBA is unable to establish for this court that it met its obligations under the applicable rules and regulations and that its decision was not arbitrary and capricious. For those reasons, its Motion for Summary Judgment must fail.

Despite assertions to the contrary, the original decision of the SBA to discontinue CARES Act subsidy payments to PACEM after the first two payments made by the SBA in or around late May 2020 for April and May, is not supported in the Administrative Record by any contemporaneous "explanation for its action." *Contra Motor Vehicles Mfgs. Ass'n, supra.* Instead of presenting a decision with the requisite "satisfactory explanation for its actions, including a 'rational connection between the facts found and the choice made'," the SBA submitted as one of its "Undisputed Material Facts" that, "in May 2020 . . . the 1502 report for Plaintiff's loan showed a due date for the next payment installment of April 15, 2020. AR 1. That is, according to the 1502 report, Plaintiff had not made its April 15, 2020, payment as of May 2020, meaning that the loan appeared to be delinquent. As a result, the SBA stopped making CARES Act subsidy payments because [the] loan was no longer in regular servicing status. AR 3-4, 132." Dkt. 37 at 10. However, in or around the time of the putative June 2020 decision, there was no 1502 report or collection of reports contained within the Administrative Record. AR1 referenced by Defendant in  support of this proposition could not have existed prior to June of 2021 as evidenced by the dates reported on that form. That is not to say that there was not a 1502 from May of 2020, just that it is not contained within the Administrative Record, the only materials upon which this Court can rely for information related to the facts under review. The Administrative Record includes only those materials:  (a) before the agency;

(b) at the time of its decision. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

Compounding this APA failure, what the SBA now presents to this Court as the SBA's "final determination regarding Plaintiff's eligibility" is a November 10, 2022 letter, inexplicably marked "Privileged & Confidential."  This letter from the Deputy Director of SBA's Office of Credit Risk Management to the Chief Executive Office of Atlantic Union Bank conveyed to Atlantic Union Bank a then 30-months *post hoc* determination by the Office of Credit Risk Management "that this loan was NOT eligible to receive Section 1112 payments."  Dkt. 37  at 17, citing AR 326-28.  The SBA only shared this "final determination" with PACEM for the first time when SBA Counsel filed the Administrative Record on May 31, 2024, more than four years after the SBA's May 2020 decision to discontinue PACEM's CARES Act subsidy payment.

Regarding this *at best* 30-months *post hoc* "final determination," the SBA does not even dispute PACEM's argument that, "The SBA may not rely on *post hoc* rationalizations.  *Cf. Camp v. Pitts*, 411 U.S. 138, 143 (1973)."  Dkt. 34 at 10.   In fact, the SBA acknowledges the same Supreme Court authority cited by PACEM in the first paragraph of the Defendants' "Statement of Undisputed Material Facts":  "The APA confines judicial review of Executive Branch action to the administrative record of proceedings before the pertinent agency.  *See* 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973). . . ."  Dkt. 37  at 5.

**PART II: PACEM'S REPLY IN FURTHER SUPPORT OF SUMMARY JUDGMENT**

The argument put forth by PACEM in its Memorandum in Support of Summary Judgment demonstrates the absence of any contemporaneous support for the June 2020 decision, highlights the ongoing failure of the SBA to provide any explanation for that decision and

eventually results in a contrived, *post-hoc* explanation for the failure to pay the remaining loan payments.

While Defendants defend both the SBA's initial basis for denial – the loan was allegedly in default – as well as the SBA's subsequent basis for denial – the loan was never eligible for the Cares Act subsidy – throughout its Memorandum, neither argument is supported by the statutory and regulatory standards cited by Defendants in their brief or by the Administrative Record.

## A.  SBA FALSE EXPLANATION #1: LOAN IN DEFAULT

The Government argues that PACEM was on notice from May of 2021 that the reason the loan was determined to be ineligible was because the "loan has been in default since late April 2020,"AR155.  An evaluation of how the SBA "determined" that the loan was in default demonstrates the fallacy of their argument.

Under the CARES Act, the SBA  was to "pay the principal, interest, and any associated fees that are owed on a covered loan in a regular servicing status" for "the 6-month period beginning with the next payment due." 15 U.S.C. § 9011(c)(1)(A)(i). Dkt. 37 at 4-5.While "regular servicing" is not defined by the SBA, lenders "must service 7(a) . . . loans in their portfolio no less diligently than their non-SBA portfolio, and in a commercially reasonable manner, consistent with prudent lending standards, and in accordance with Loan Program Requirements." 13 C.F.R. §120.535(a).  The same standard applies to the lender in the pursuit of liquidation and debt collection litigation for 7(a) loans. 13 C.F.R. §120.535(b).

The SBA argument continues that the SBA relied on lenders to accurately report whether loans were in regular servicing status, that it was incumbent on the lender to "immediately notify the SBA that it had placed a loan in liquidation status and immediately return the payment." SBA Procedural Not. 5000-20020 §A.2.b. Dkt. 37 at 5 The SBA than argues:

Although the statute does not define "regular servicing status," the applicable SBA procedural notice interprets the term to exclude from eligibility "any loan that has been moved from 'regular servicing' into 'liquidation' status, or any loan that *should have been* moved pursuant to SBA Loan Program Requirements from 'regular servicing' into 'liquidation' status ***prior to the first payment due date covered by [the CARES Act]***." SBA Procedural Not. 5000-20020 § A.2.b (Apr. 16, 2020) (emphasis added), *available at* https://perma.cc/RH7Z-XLUU (last visited July 31, 2024); AR 164.

Dkt. 37 at 5 (emphasis added)

When the facts of the PACEM loan are measured against these requirements and obligations it is evident that the determination that the PACEM loan was not eligible is contrary to the very regulations relied upon by the SBA.

As evidenced by the fact that the SBA paid the April and May 2020 payments, when PACEM was accepted in the CARES Act subsidy program, *the next payment due* was the April 2020 payment. Therefore, as the loan was not reported to be "in default" until after the April 2020 payment was missed, the loan was appropriately in "regular servicing" prior to that time, or in other words, "prior to the first payment due date covered by the CARES Act." PACEM was not in default "prior to the first payment due date" and the payment "missed" was the first payment covered by the CARES Act or in other words, the SBA's responsibility.

Further, the position put forth by the SBA – "a mandatory monthly report from the lender to the SBA reflected that the Plaintiff has missed a loan payment[2], meaning that the loan no longer qualified for the CARES Act subsidy," (Dkt. 37 at 2) is wholly without support in the

---

[2] The chart of 1502 reports contained within the Administrative Record at AR01 starts with the report date of March 31, 2020 which indicates that the loan is current. This court can take judicial notice that the numerical code of "1" in the GSS column indicates that the loan is current. The numerical code of "2" means that the loan is "31-60 days delinquent". This report shows that as of March 31, 2020, the loan was up to date and could not be considered anything other than "in regular servicing". It was only when the Government failed to make the first CARES Act payment for April in a timely manner did the Bank identify the payment as delinquent. SBA GSS codes can be found at https://www.sba.gov/document/sba-form-1502-sba-form-1502-instructions.

cited regulations.  The SBA acknowledged that "regular servicing" is not defined.  If the SBA intended for any loan that was not "current" on payments to be considered outside "regular servicing," it would have so stated.  There is no legal or factual explanation for the SBA's determination that a lender who did not default and liquidate a loan based on a single late payment was servicing the PACEM loan in a less than "commercially reasonable manner, consistent with prudent lending standards, and in accordance with Loan Program Requirements." 13 C.F.R. §120.535(a).  The SBA cannot justify this determination *ispe dixit*. Without a factual and legal basis supported and documented in the Administrative Record, the SBA's decision to discontinue payments to PACEM is arbitrary and capricious.

### B.  SBA FALSE EXPLANATION #2: THE PACEM LOAN WAS NEVER ELIGIBLE FOR CARES ACT SUBSIDIES

The SBA made clear from the introductory paragraphs of its Memorandum that it wants this Court to accept at face value that the PACEM loan was a "bad" loan.  SBA posits that because the loan had undergone multiple modifications and that the principle had not been paid down during the initial or extended term of the loan, the SBA's actions related to this loan are justified under the APA.  However, as discussed above, Section 1112(b) of the CARES Act makes it clear that the program was considered to provide relief for "all borrowers", not just those with pristine servicing records.

Further, none of that loan history – amendments, terms, extension, etc. – was known to the SBA in May of 2020 nor was it required to be reported to the SBA in connection with qualification for the CARES Act.  While the lender had immediate access to that information, the only qualifying standard for eligibility for CARES Act subsidies was that the loan be in "regular servicing status." 15 C.F.R. §9011(c)(1)(A)i.  The SBA's extended discussion of  the history of

the loan is nothing more than a red herring thrown out by the SBA to justify its post-hoc

decision. The SBA explains that its "final decision in this case [that the PACEM loan never

qualified for CARES Act subsidies] in no way hinged on the apparent May 2020 delinquency,

but rather was based on the entire history of Plaintiff's Loan." Dkt. 37 at 21.

Although the SBA advised Atlantic Bank that their servicing was found to be in violation

of 1 or more of the many, nonspecific bases identified within 13 C.F.R. §120.524(a)(1-

5)(AR326-327) it is anything but clear what specifically the bank did, or failed to do, what

specific set of circumstances they should have responded to and at what point in time this failure

to act occurred.  Defendant references the full history of this loan back to its date of inception but

fails to pinpoint the time, place, and manner where the lender's servicing diverted from

"commercially reasonable," "prudent lending standards" or how it violated the Loan Program

Requirements.  Clearly the standards as applied to the lender provided for subjective decision

making based on the circumstances of individual borrowers and loans.  If the SBA required the

lender to undertake specific acts when faced with specific situations, it would have spelled out

with significant clarity within the regulations and Standard Operating Procedures to which the

7(a) lenders were held, precisely how lenders were to act.  The Defendant has simply failed to

identify with any specificity how the loan did not qualify for CARES Act subsidies nor does the

Administrative Record provide any clarity on the issue, either before the May 2020 decision or

subsequently.

The acceptance by the successor bank of the SBA's "conclusion" is not legally

determinative.  There are many reasons why a bank might "agree" with its regulatory agency in

order to put an end to a conflict with the repayment of a minimal amount of money as opposed to

opening itself up to further investigation by the SBA potentially resulting in significant financial

penalties to that institution and possibly destroying its relationship with the SBA. Notably, the Administrative Record is silent as to any investigation conducted concerning the actions of the bank. Any information related to the results of that investigation proffered by SBA should not be considered in this matter as the information is outside the Record.

### C.  SBA'S ACTIONS NOT ENTITLED TO DEFERENCE

As discussed at length in the Standard of Review above, the SBA cited the improper standard with regard to the deference afforded the agency's actions.  Under the recently adopted standard in *Loper*, it is the obligation of this Court to strictly evaluate the leap-of-faith conclusions put forth by the SBA to justify its decision that the PACEM loan never qualified for CARES Act subsidies.  Specifically, the SBA maintains that the lender failed to service the loan in a "commercially reasonable manner, consistent with prudent lending standards, and in accordance with Loan Program Requirements." 13 C.F.R. §120.535(a).  There is nothing in the Administrative Record to support this conclusion, only the loan documents themselves that contain the underlying facts but reveal nothing about any deliberative process undertaken by the SBA.

If issuing a loan amendment or a term extension required a loan to be removed from "regular servicing," the SBA could and should have defined such action.  If the extension of "interest only" payments veered outside "prudent lending standards," that would also be clear from relevant regulations, guidelines, or Standard Operating Procedures.  The SBA wants this court to accept that the history of this loan, when considered against these vague and nonspecific standards, warranted the decision by the SBA that the loan was "never eligible" for CARES Act subsidies.  It is unknown from the Administrative Record if the SBA itself ever pinpointed exactly when the lender deviated from "commercially reasonable," "prudent lending standards'

16

or perhaps violated the Loan Program Requirements.  The Administrative Record is devoid of

any analysis of the loan history; it contains only the conclusion that those norms were violated.

See specifically the November 10, 2022 SBA letter to Atlantic Union Bank wherein the SBA

provided a recitation of the full history of the loan and indicated that "such action would

constitute a violation of 13 C.F.R. §120.524(a)(1-5)." AR326-327.[3] There were six amendments

to this loan.  The SBA could have and in fact, was required to, identify the specific point in time

when the lender violated 13 C.F.R. §120.524(a) and further identified which of the subparts (1-5)

was specifically involved.  Without such clarity within the Administrative Record, this Court can

reasonably and properly conclude that the decision of the SBA was arbitrary and capricious and

must be overturned.

### D.  SBA VIOLATED PACEM'S CONSTITUTIONAL RIGHT TO PROCEDURAL DUE PROCESS OVER A PERIOD OF FOUR YEARS

SBA's final paragraph in its "Statement of Undisputed Material Facts" asserts that:  "The

SBA notified Plaintiff of the agency's determination that Plaintiff was not eligible for CARES

Act subsidy payments on December 23, 2022.  AR 348-49."  Dkt. 37  at 13.  In a subsequent

footnote, the SBA admits that it failed to follow its own procedural due process rule:

> Although Plaintiff does not dispute that it received notice of this denial of its SF-95, it nonetheless argues that the SBA violated the APA because it did not also send written notice by certified or registered mail.  *See* Pl. Br. 14-17.  To be sure, a regulation does provide that the SBA "will notify you or your agent or legal representative in writing by certified or registered mail if it denies your claim." 13 C.F.R. § 114.109.  That was not done in this case because, at the time, COVID-related restrictions on in-office presence limited SBA employees' ability to perform such tasks.  In any event, this omission is no basis for relief in this case. As this Court has recognized, "[t]he APA also includes the same kind of 'harmless-error' rule that courts ordinarily apply in civil cases," which "requires the party asserting error to demonstrate prejudice from the error." *Downey v. U.S. Dep't of the Army*, 110 F. Supp. 3d 676, 686 (E.D. Va. 2015) (Brinkema, J.)

---

[3] It is key to note that this November 10, 2022 letter is the ONLY reference in the Administrative Record concerning any conclusion by the SBA that the loan was never eligible for CARES Act subsidies.

(cleaned up), *aff'd*, 685 F. App'x 184 (4th Cir. 2017); *see Avail Vapor, LLC v. U.S. Food & Drug Admin.*, 55 F.4th 409, 419 (4th Cir. 2022) ("[I]n reviewing agency action, 'due account shall be taken of the rule of prejudicial error,' which is an administrative law 'harmless error rule.'" (citation and internal citation omitted)). Plaintiff does not—and cannot—show any prejudice from being notified that its SF-95 was denied by email rather than mail. This can most effectively be illustrated by the fact that, if the Court were to remand on this basis, all that would happen is the SBA would mail Plaintiff the same denial—as even Plaintiff appears to acknowledge. *See* Pl. Br. 18, 24-25.

Dkt. 37 at 19 footnote 7. PACEM's three-part reply to footnote 7 follows.

First, PACEM does not "acknowledge" that, "if the Court were to remand on this basis,

all that would happen is the SBA would mail Plaintiff the same denial." PACEM argued that,

"While the SBA's failure to provide notification to PACEM of their decision in conformance

with 14 C.F.R. § 114.109 can be cured if this court returns this matter to the agency for further

action, the SBA cannot demonstrate to this court that any decision to halt the subsidy payments

was anything other than arbitrary and capricious." Dkt. 34 at 18. Then, PACEM explained that,

"If that were the only issue raised by PACEM's complaint and put before this Court, it would be

a reasonable outcome of this matter for the Court to return this matter to the Agency to allow it to

take steps to comply with the notification requirement. . . . However, that is not the only issue

raised in this matter and the other issues are fatal to any ability of the Agency to provide a

'rational and reasoned' explanation for a denial of the claim." Dkt. 34 at 24-25. This is not an

"acknowledgment" of what the SBA suggests, *i.e.*, "the fact that, if the Court were to remand on

this basis, all that would happen is the SBA would mail Plaintiff the same denial." Dkt. 37 at 19

footnote 7. Second, "the same denial" to which the SBA refers was an e-mail from SBA litigation

counsel to PACEM's outside counsel on December 23, 2022. AR 348-349. The entire substance

of that e-mail was:

> SBA has formally denied the claim made by PACEM International Solutions,
> LLC ("PACEM") in their Form 95, Federal Tort Claims Act, 28 U.S.C. §2672 (a).
> . . . PACEM's claim was for the payment four [sic] CARES Act Section 1112

> subsidy payments that it claimed had not been credited to the above-referenced loan number from September – December 2020.  After reviewing all of the documents submitted by PACEM, reviewing the loan itself and communicating with the lender, Atlantic Union Bank, SBA determined that PACEM is ineligible to receive Section 1112 payments under the CARES Act given, among other things, PACEM's loan and payment history.

AR 349.  Even if the substance of this e-mail had been conveyed "in writing by certified or registered mail" as required by 13 C.F.R. § 114.109, it still would not include the requisite "satisfactory explanation for its actions, including a 'rational connection between the facts found and the choice made'."  *Motor Vehicles Mfgs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (internal citation omitted).  Accordingly, SBA's suggestion that, "Plaintiff does not—and cannot—show any prejudice from being notified that its SF-95 was denied by email rather than mail" is *at best* a disingenuous "red herring," masking both:  (a) the SBA's violation of PACEM's constitutional right to "due process" under the 5th Amendment of the U.S. Constitution; and (b) the SBA's violation of the APA's notice requirement as explained by the U.S. Supreme Court in *Motor Vehicles Mfgs. Ass'n*:  a "satisfactory explanation for its actions, including a 'rational connection between the facts found and the choice made'."  There is simply no such "satisfactory explanation" in the Administrative Record.

For both of these violations, one constitutional and one statutory, PACEM is entitled to Summary Judgment by this Court that the SBA's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §706(2)(A).

Third, the SBA's suggestion that its violation of the U.S. Constitution and/or of the U.S. Supreme Court's requirement under the APA for a "satisfactory explanation for its actions, including a 'rational connection between the facts found and the choice made'," is "harmless-

19

error" is patently false. The SBA violated PACEM's constitutional right to procedural due process "by stopping the payments, without notice or explanation in June of 2020. . . . By the time PACEM received any explanation -- albeit one contrary to the information contained within the loan documentation – the bank had determined the loan to be in default in January 2021, months after the six SBA subsidy payments should have been made, and forced PACEM to refinance with a new lender." Dkt. 34 at 14. The evidence of the SBA forcing PACEM to refinance, a harm that the SBA does not dispute, is chronicled in paragraphs 26-28 of the SBA's "Statement of Undisputed Material Facts." Dkt. 37 at 11-12.

Notwithstanding the SBA's failure to follow its own procedural due process rules and contrary to the non-deferential APA standard of review announced by the Supreme Court in *Loper, supra*, the SBA argues that its "determination that Plaintiff's loan did not qualify for CARES Act subsidy payments easily satisfies the APA's deferential standard of review." Dkt. 37 at 16. Based on the non-deferential APA standard of review announced by the Supreme Court in *Loper*, the Administrative Record before this Court establishes that PACEM's loan did qualify for CARES Act subsidy payments, as evidenced by the SBA's indisputable payment of the first two of six CARES Act subsidy payments. Defendants concede this material fact in paragraph 18 of their "Statement of Undisputed Material Facts": "Following passage of the CARES Act, which imposed the six-month loan payment subsidy discussed above, the SBA made two interest-only loan payments pursuant to the Fifth Amendment on Plaintiff's behalf in April and May 2020. AR2, 67, 90." Dkt. 37 at 10.

Shortly after the Supreme Court issued its *Loper* decision, the Court issued another APA decision in *Corner Post, Inc., v. Board of Governors of the Federal Reserve System*, 144 S.Ct. 2440 (2024), in which the Court ruled that for an injured person seeking judicial review of

20

agency action under Section 702 of the APA (like PACEM in this case), "An APA plaintiff does not have a complete and present cause of action until she suffers an injury from final agency action, so the statute of limitations does not begin to run until she is injured." 144 S.Ct. at 2450. In his concurring opinion, Justice Kavanaugh addressed the remedy known as "vacature," the availability of which remedy the majority opinion assumed but declined to decide[4]:

> The APA authorizes any person who has been "adversely affected or aggrieved" by a "final agency action" to obtain judicial review in federal district court. 5 U.S.C. §§702, 704. In an APA suit, the district court "shall" "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." §706(2)(A).

*Corner Post*, Justice Kavanaugh Concurring Opinion, 144 S.Ct. at 2461.

Accordingly, this Court should grant Summary Judgment in favor of PACEM, deny the SBA's Summary Judgment Motion, "set aside" the SBA's 30-month *post hoc* "final determination regarding Plaintiff's eligibility" as the SBA would not have that "final determination" applied to PACEM, and order the SBA to make the four additional CARES Act loan subsidy payments that it should have made in June through September 2020, including principal and interest to which PACEM is entitled under the CARES Act.[5]

### E. PLAINTIFF IS ENTITLED TO REMAINING SUBSIDY PAYMENTS

In Opposition to Plaintiff's Motion for Summary Judgment and request for relief, the SBA raised several arguments against relief for PACEM in the event this Court found that the decision of the SBA did not satisfy the required standards. None of those arguments are a bar to recovery for PACEM.

---

[4] 144 S.Ct. at 2450, footnote 2 ("We took this case only to decide how §2401(a)'s statute of limitations applies to APA claims. We therefore assume without deciding that vacature is available under the APA.").

[5] PACEM reserves its right to claim "attorneys' fees, costs, and expenses and other relief as available under the Equal Access to Justice Act," and "other and further relief as this Court deems just and proper," including pre-judgment and post-judgment interest. PACEM Complaint for Declaratory and Injunctive Relief, p. 13.

1. **Plaintiff is Seeking Equitable Relief, Not Damages**

After securing dismissal of PACEM's count for Mandamus on the basis that a remedy was available under the APA, the SBA now argues that PACEM is not entitled to the only remedy it seeks. The SBA argues that the payment of the outstanding loan payments would constitute monetary "damages" and such are not permitted under the APA. Dkt. 37 at 22. This position is contradicted by the very case law Defendant cites in support of this argument.

Plaintiff agrees that the waiver of sovereign immunity in the APA is limited:

> There are two limitations on the waiver of sovereign immunity found in the APA. First, the waiver is limited to actions seeking review of a "final agency action <u>for</u> which there is no other adequate remedy in a court." 5 U.S.C. § 704 (emphasis added). Second, the waiver is limited to actions seeking relief "other than money damages." 5 U.S.C. § 702. . . .

*Price v. Gates*, No. 2:10CV216, 2010 WL 11527456, at *3 (E.D. Va. Nov. 30, 2010), <u>aff'd sub nom. *Price v. Panetta*</u>, 674 F.3d 1335 (Fed. Cir. 2012).

Defendants argue that seeking the disbursement of loan payments is a thinly veiled attempt to secure "money damages" and cites several cases to support why such recovery is not permitted under the APA. This argument is specifically contradicted by the follow-on language in the *Price* opinion cited by Defendant:

> The second limitation is triggered by an action seeking "compensation for the damage sustained by [a] failure of the Federal Government to pay as mandated."

*Price v. Gates*, No. 2:10CV216, 2010 WL 11527456, at *3 (E.D. Va. Nov. 30, 2010), <u>aff'd sub nom.</u> *Price v. Panetta*, 674 F.3d 1335 (Fed. Cir. 2012). The US Supreme Court discussed this concept directly in *Bowen v. Massachusetts*, 487 US 879, 108 S.Ct. 2722 (1988). PACEM's action at bar is not "…a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce the

statutory mandate itself, which happens to be one for the payment of money." *Bowen v. Massachusetts*, 487 US at 900, 108 S. Ct. at 2735.

If this Court accepts the arguments raised by PACEM, the SBA was mandated to make those loan payments and therefore, PACEM seeks not money damages, but the equitable remedy of directing SBA to make the payments to which PACEM is entitled, as permitted under the APA and relevant case law.

Any damages suffered by PACEM as a result of the actions of the SBA are separate and apart from the loan payments as discussed at length above. The payment of the loan amount will only return PACEM to the position it would have been in had the SBA upheld its obligations. PACEM is entitled to these payments. Contrary to Defendant's assertions, this Court has jurisdiction to issue an order compelling the SBA to make the last four subsidy payments.

### 2. Plaintiff is Entitled to Injunctive Relief

Although the SBA claims that "injunctive relief against the SBA is statutorily barred because, 'In establishing the SBA, Congress exempted the SBA Administrator and her property from any 'attachment, injunction, garnishment, or other similar process, mesne or final.' 15 U.S.C. § 634(b)(1)," (Dkt. 37 at 24) nothing in Defendants' Memorandum suggests that Congress intended to exempt the SBA from the "injunctive decree" to which PACEM is entitled under the APA, Section 702 of which provides in full:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That *any*

> *mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.* Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C § 702 (emphasis added).  Moreover, when this Court granted Defendants' Partial Motion to Dismiss PACEM's Mandamus Count, the April 25, 2024 Order included this bottom-line ruling:  "Because the APA serves as an adequate remedy for plaintiff to attain relief, defendants' Partial Motion to Dismiss [Dkt. No. 15] is GRANTED, and it is hereby ORDERED that Count III (Mandamus) be and is DISMISSED WITH PREJUDICE."  Dkt. 20 at 2.

In light of this Court's prior ruling, it is disingenuous for Defendants now to argue "that injunctive relief against the SBA is statutorily barred."  This Court should grant injunctive relief pursuant to both Section 702 of the APA and this Court's prior ruling that, "the APA serves as an adequate remedy for plaintiff to attain relief."  Dkt. 20 at 2.  The Mandamus Count of PACEM'S Complaint concluded with this text:  "Plaintiff PACEM is entitled mandamus relief ordering the Defendant Administrator to administer and process the Plaintiff's four unpaid loan subsidy payments as required by the terms of the CARES Act."  Complaint (Dkt. No. 1), ¶50; *see id.*, ¶3 ("this Court has jurisdiction to review agency action under 5 U.S.C. § 702, which provides, in part:  'A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof'.").

Both of the cases that Defendants cite as authority for Defendants' argument that, "injunctive relief against the SBA is statutorily barred," are distinguishable.  The case of *J.C. Driskill v. Abdnor*, 901 F.2d 383 (4th Cir. 1990), was a tort action that did not involve claims

under the APA.  In that case, the U.S. Court of Appeals for the 4th Circuit affirmed the decision of

the District Court, which had "concluded that it had no jurisdiction over plaintiffs' claims," 901

F.3d at 384, affirming the District Court holding that, "Section 634(b)(1) precludes the

imposition of an equitable lien on any funds belonging to the SBA or [SBA Administrator James]

Abdnor."  *Id*. at 386.

The second case cited by Defendants for authority that "injunctive relief against the SBA

is statutorily barred," is *Nielson v. Miller*, 2021 WL 1968292, an opinion of the U.S. District

Court for the Western District of Virginia, Charlottesville Division, that is not reported in Fed.

Supp.  Like *J.C. Driskill*, this case did not involve claims under the APA.  It was a breach of

contract claim that had been removed to federal court after a finding by the Albemarle County

Circuit Court that "the SBA was a necessary party."  The U.S. District Court dismissed the

claims against the SBA because "Nielson's claim against the SBA does not fall within the limited

waiver of the SBA's sovereign immunity articulated in § 634(b)(1)."  2021 WL 1968292, at *3.

The U.S. District Court then held:  "Because it lacks subject matter jurisdiction over the

remaining claims and parties, the Court will remand this action to state court for further

proceedings."  *Id*. at *4.

Neither *J.C. Driskill* nor *Nielson*, the only two cases upon which Defendants rely as

authority for their argument that, "injunctive relief against the SBA is statutorily barred," involve

judicial review under the APA.  One involves tort claims; the other involves a contractual dispute

between private parties.  They are thus distinguishable on both the law and on the facts from the

claims presented in this case.

### 3.  Plaintiff Is Not Out of Time to Seek Relief

Defendant argues that even if the SBA violated the APA in failing to pay the PACEM loan payments under the CARES Act, PACEM is foreclosed from receipt of any additional payments as funding for the CARES Act loan program was exhausted as of September 2021.[6] Defendant cites multiple cases to support this argument however each of those cases concerned a situation where the government *had not* assumed an obligation for payment prior to the expiration of the funding period.  The PACEM situation is distinguishable in that the SBA assumed the obligation to pay six loan payments on behalf of PACEM and in fact, made two of the six obligated payments, prior to stopping without reason, warning or even notification in June of 2020.  Despite Defendants' assertion, funds remain available for obligations that were incurred during the funding period and should remain available through September of 2026.

> When the defined period of availability for an appropriation account ends, any remaining funds in the appropriation account expire. Expired funds are no longer available for incurring new obligations, because the period of availability has ended (31 U.S.C. §1552). For five fiscal years following the expiration of appropriated funds, the funds may still be available for the payment of obligations properly incurred during the period of availability. 31 U.S.C. §1553.

Expiration and Cancellation of Unobligated Funds,
https://crsreports.congress.gov/product/pdf/IF/IF12329

Defendants represent that the funding for 7(a) loans was exhausted as of September 21, 2021. SBA Procedural Not. 5000-823852. (Dkt. 37 at 25),   While that procedural note indicates that a loan approved *after* the funds were exhausted will not be paid, it is silent as to any open obligations that existed prior to the exhaustion of funds.  Under 31 USC §1552 and §1553, funds

---

[6] This Court can take judicial notice of the existence of the Judgment Fund available to Federal agencies for the payment of obligations when agency funds are not available.  Defendant does not assert that funds would not be available through that fund to cover the outstanding loan payments. https://fiscal.treasury.gov/judgment-fund/.

remain available to meet obligations that are incurred during the period of availability, such as the PACEM loan.

Starting in November 2020, both the lender and PACEM undertook extensive efforts to resolve this issue with the SBA.. AR4  After unsuccessful attempts, PACEM reached out to the SBA Ombudsman on February 12, 2021. AR161-162, 134.  That response was delayed until May 7, 2021 (AR132) and only forwarded to PACEM on May 19, 2021. AR156  This was PACEM's first notification that the May 2020 payment was reported as delinquent. Thereafter on June 18, 2021, PACEM attempted to secure documentation related to the loan through a FOIA request as the bank had advised PACEM that they never reported the loan to be in default. AR287-288. On July 20, 2021, PACEM contacted Jioon Kim, Director of SBA's Financial Program Operations in an attempt to correct the "administrative error" related to the loan status. AR248-249. The various responses to the June 18, 2021 FOIA request yielded conflicting and ultimately, useless responses (AR294-295, 296, 307-311) and no response was received from Mr. Kim. Despite the best efforts of both the bank and PACEM, the SBA could not, or would not, address the question of the loan's status with either the bank or PACEM at any time prior to December of 2022.

The SBA wants this court to accept that in June of 2020 it stopped payments because it determined there was a single late loan payment.  This Court cannot ignore, however, the fact that the SBA knew in November 2020 that "it appears the loan has been misreported…." (AR3) yet exhibited no sense of responsibility to work with either the bank or PACEM to resolve the matter.  Even now, the SBA is relying on a report printed after June 3 of 2021 to support a decision it purportedly made in June of 2020. AR1 The SBA cannot avoid responsibility for this loan because it initially could not offer a valid explanation for its actions and then slow-walked

further evaluation and ignored multiple communications from PACEM until it concocted a post-hoc basis for a different explanation for its failure to continue the payments.

### F.  ANY AMBIGUITIES SHOULD BE CONSTRUED IN PACEM'S FAVOR

PACEM submits that Section 1112 of the CARES Act is unambiguously satisfied by the uncontested material facts in the Administrative Record of this case.  In April of 2020, PACEM's lender advised PACEM:  "just got notice that SBA will be covering payments starting with the April payment."  The SBA's 30-months later *post-hoc* rationalization that, "this loan was NOT eligible to receive Section 1112 payment" (AR 326), which was never shared with PACEM until SBA counsel filed the Administrative Record on May 31, 2024, should be rejected by this Court as "impermissible '*post hoc* rationalization'," pursuant to Supreme Court's guidance in *Department of Homeland Security v. Regents of the University of California*, 140 S.Ct.1891 (2020):  "Because Secretary Nielsen chose to elaborate on the reasons for the initial rescission rather than take new administrative action, she was limited to the agency's original reasons, and her explanation 'must be viewed critically' to ensure that the rescission is not upheld on the basis of impermissible 'post hoc rationalization'."  140 S. Ct. at 1909, quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

While PACEM respectfully submits that Section 1112 contains no ambiguities, the SBA has essentially misconstrued Section 1112 to include a delegation of legislative power to the SBA as if Section 1112 includes the following italicized words:  "The SBA Administrator shall pay the principle, interest, and any associated fees that are owed on a covered loan in a regular servicing status *unless the SBA, after initiating subsidy payments under this Act determines that such a loan should not have been eligible to receive Section 1112 payment*."  Congress delegated no such power to the SBA.

To the extent there is any ambiguity in the CARES Act related to the power that Congress delegated to the SBA, such ambiguity should be construed in favor of PACEM.  U.S. Const., Amend. X; *New York v. United States*, 505 U.S. 144, 157 (1992) ("The question is not what power the Federal Government ought to have but what powers in fact have been given by the people." (internal citation omitted)); *cf. United States v. Heth*, 7 U.S. (3 Cranch) 399, 413 (1806) (Paterson, J.) ("words of a statute, if dubious, ought in cases of the present kind to be taken most strongly against the law makers").

In his April 1996 article, "The Forgotten Preamble: Introduction to the Bill of Rights Gives More Meaning to the Tenth Amendment," Georgetown University Adjunct Professor of Law Joseph Schmitz explained how the Preamble of 1789 Bill of Rights explains the purpose of the Bill of Rights as "in order to prevent misconstructions or abuses of its power," *i.e.*, abuses of the powers delegated by the Constitution to the Federal Government.  In this light, Professor Schmitz suggests:

> Whenever federal courts and agencies are forced to "legislate" by construing legal ambiguities, they should utilize the final Article of the Bill of Rights – "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people" – as an interpretive rule to construe ambiguities against the proffering party, *i.e.*, against Congress  (*See United States v. Heth*, 1806.) . . . .  [A] Tenth Amendment rule of construction would provide a practical safeguard against federal encroachments on powers that neither the states nor the people have ever delegated to the national government.

Consistent with Professor Schmitz' 1996 suggestion, quoted above, Justice Gorsuch explained in his June 28, 2024, *Loper* concurring opinion:  "*Chevron* deference sits in tension with many traditional legal presumptions and interpretive principles, representing nearly the *inverse* of the rules of lenity, *nemo iudex*, and *contra preferentem*."  144 S.Ct. at 2286, n. 5.  Now

that the Supreme Court has overruled *Chevron* in *Loper*, this District Court should apply *contra preferentem* to construe any ambiguities in Section 1112 of the CARES Act in favor of PACEM.[7]

## CONCLUSION

The SBA made a decision in June of 2020 that is not supported by any contemporaneous information within the record. To cover its tracks, the SBA undertook a 2 ½ year "investigation" of their June 2020 decision and came to a completely different conclusion - the loan was never eligible for the CARES Act subsidies. Neither decision is supported by the facts when applied to the relevant contract, code, regulations, or Standard Operation Procedure. The SBA created this program, established the requirements to qualify and now, *post hoc*, is attempting to modify those requirements to avoid finishing paying a rightful obligation.  The SBA should not be permitted to change the rules after the damage is done to justify their unsupported actions.  For the reasons put forth, PACEM's Motion for Summary Judgment should be granted, Defendants' Motion for Summary Judgment should be denied, and this Court should order the SBA to complete the payments originally authorized under the CARES Act on behalf of PACEM.


Dated:  August 14, 2024                    Respectfully submitted,
                                           PACEM Solution International LLC
                                           By Counsel


                                           /s/ _____
                                           Milton C. Johns, VSB No. 42305

---

[7] "It is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the constitutional question may be avoided." *Johnson v. Robison*, 415 U.S. 361, 367 (1974); *cf. National Ass'n of Immigration Judges v. Neal*, 693 F.Supp.3d 549, 575 (EDVA 2023) (Brinkema, J.) ("To avoid this serious constitutional question, the Supreme Court has held that 'where Congress intends to preclude' any Article III 'judicial review of constitutional claims[,] its intent to do so must be clear.' *Webster v. Doe*, 486 U.S. at 603, . . . . citing *Johnson v. Robison*, . . . ."); *Patchakl v. Jewell*, 109 F.Supp.3d 152, 160 n. 5 (DDC 2015) ("To construct the statute otherwise would raise serious concerns about its constitutionality, and, in such a case, I heed the 'cardinal principle' of statutory interpretation and choose 'a construction of the statute . . . by which the (constitutional) question(s) may be avoided.' See *Johnson v. Robison*, 415 U.S. 361, 367.").

**Executive Law Partners PLLC**
11130 Fairfax Blvd., Suite 303
Fairfax, VA  22030
T: (571) 500-1010
F: (571) 408-8102
mjohns@xlppllc.com